# EXHIBIT D

## AMENDED AND RESTATED REVOLVING NOTE

**$3,500,000.00**

May 2 , 2005
New York, New York

      **FOR VALUE RECEIVED, UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal office at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") promises to pay to the order of **CATHAY BANK, NEW YORK REGION** (the "Bank") at the Bank's office, 40-14 Main Street, Flushing, New York 11354, the principal sum of **THREE MILLION FIVE HUNDRED THOUSAND and 00/100 ($3,500,000.00) DOLLARS,** or, so much thereof as shall have actually been advanced and/or readvanced by the Bank to or on behalf of the Borrower pursuant to the Credit Agreement, together with interest on the unpaid principal amount outstanding from time to time as hereinafter set forth and all other obligations of the Borrower to the Bank under the Credit Agreement, in lawful money of the United States of America, on or before **May 31, 2005** (the "Expiration Date").

      The Borrower promises also to pay the Bank interest monthly on the Payment Date, computed on the basis of actual days outstanding during the month in a year of 360 days: (a) from the date the Advance is made until such principal amount is paid in full on the Expiration Date (whether by acceleration or otherwise) at the Interest Rate equal at all times to seven-eighths of one percent (0.875%) above the Wall Street Journal Prime Rate, any change in the Interest Rate shall take effect simultaneously with the corresponding change in the Prime Rate; and (b) from the maturity of each Advance until paid or after and during the continuance of an Event of Default (as defined in the Credit Agreement), at the Default Rate per annum which shall be five (5%) percent above the applicable Interest Rate.

      Notwithstanding anything to the contrary contained herein, in no event shall the total of all charges payable under this Note and the Credit Agreement which are or could be held to be in the nature of interest, exceed the maximum rate permitted to be charged by applicable law. Should the Bank receive any payment which is or would be in excess of that permitted to be charged under any such applicable law, such payment shall have been, and shall be deemed to have been, made in error and shall automatically be applied to reduce the principal balance outstanding on this Note.

      This Note has been delivered by the Borrower to the Bank and shall be deemed to be a contract made under the laws of the State of New York and for all purposes shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflicts of laws.

      The Borrower and the Guarantor expressly waive any presentment, demand, protest or notice in connection with this Note, now or hereafter, required by applicable law. No failure to exercise, and no delay in exercising any rights hereunder on the part of the Bank shall operate as a waiver of such rights.

1

The Borrower and the Guarantor hereby expressly and unconditionally waive, in connection with any suit, action or proceeding brought by the Bank on this Note, any and every right they may have to (a) injunctive relief, (b) a trial by jury, (c) interpose any counterclaim therein and (d) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit the Borrower from instituting or maintaining a separate action against the Bank with respect to any asserted claim.

This Note is secured by any and all of the Guaranty, Security and Collateral at any time granted to the Bank pursuant to Sections 3.9 and 3.10 of the Credit Agreement.

This Note is the Note referred to in, and is entitled to the benefits of, the Credit Agreement, dated September 15, 2000, which was subsequently modified from time to time (as the same may be further amended, extended, supplemented or otherwise modified from time to time, the "Credit Agreement") to which reference is made hereinabove. Capitalized terms used herein without definition, shall have the meanings set forth in the Credit Agreement.

The Advances and all payments on account of principal and interest hereof shall be recorded by the Bank, and, prior to any transfer hereof, endorsed on the grid annexed hereto which is part of this Note. The entries on the records of the Bank (including any appearing on this Note) shall be *prima facie* evidence of amounts outstanding hereunder.

Upon the occurrence of an Event of Default, the unpaid balance of the principal amount of this Note, together with all accrued but unpaid interest thereon, may become, or may be declared to be due and payable immediately in the manner, upon the conditions and with the effect provided in the Credit Agreement.

The Borrower and the Guarantor hereby agree to pay and keep the Bank harmless from any liability for the expenses arising in connection with the enforcement by the Bank of any of its rights under this Note or the Credit Agreement.

This Note amends, restates and replaces in its entirety, but not in payment of the Amended and Restated Revolving Note, dated May 1, 2003 in the principal sum of $3,500,000.00.

(Corporate Seal)

Attest:

SANDY LIANG, Secretary

BORROWER:

UNITED ALUMINUM DOOR INC.

By:

WAYNE TAM, Treasurer

2

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF QUEENS           )

     On the ~2nd~ day of ~~April~~ *May*, in the year 2005,  before me, the undersigned, personally appeared WAYNE TAM,  personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

SEE YUN CHAN
Notary Public - State of New York
No. 01CH6100642
Qualified in Queens County
My Commission Expires Oct. 20, 2007

                        Notary Public

## SCHEDULE I

## SCHEDULE OF ADVANCES/PAYMENTS

| Date | Advances | Payment | Unpaid Principal Balance | Name of Person Making Notation |
|------|----------|---------|--------------------------|-------------------------------|
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |
|      |          |         |                          |                               |

# EXHIBIT E

# GENERAL SECURITY AGREEMENT

Date:   September  *15* , 2000

| |
|---|
| Name<br>UNITED ALUMINUM DOOR INC., a New York corporation |
| Address<br>267 Vandervoort Avenue, Brooklyn, New York 11211 |
| Chief Executive Office (if different from Business address)<br>  |
| Lending Office, Department or Division<br>CATHAY BANK, FLUSHING OFFICE |
| Address<br>40-14/16 Main Street, Flushing, New York 11354 |

AGREE AS FOLLOWS:

1.     **Security Interest**.

Debtor hereby grants to Secured Party a security interest (Security Interest) in all property of the following types, wherever located and whether now owned or hereafter owned or acquired by Debtor, whether or not affixed to realty, in all Proceeds and Products thereof in any form, in all parts, accessories, attachments, special tools, additions, replacements, substitutions and accessions thereto or therefor, and in all increases or profits received therefrom, including, WITHOUT LIMITATION, all property described in any schedule from time to time delivered by Debtor to Secured Party: Equipment; Fixtures; Inventory; Accounts; Chattel Paper; Documents; Instruments; and General Intangibles (Collateral).

2.     **Indebtedness Secured**.

The Security Interest secures payment of any and all indebtedness (Indebtedness) of Debtor to Secured Party, whether now existing or hereafter incurred, of every kind and character, direct or indirect, and whether such Indebtedness is from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred, including, without limitation: (a) Indebtedness not yet outstanding, but contracted for, or with respect to which any other commitment by Secured Party exists: (b) all interest provided in any instrument, document, or agreement (including this Security Agreement) which accrues on any Indebtedness until payment of such Indebtedness in full; (c) any moneys payable as hereinafter provided; (d) any debts owed or to be owed by Debtor to others which Secured Party has obtained, or may obtain, by assignment or otherwise.

3.     **Representations and Warranties of Debtor**.

Debtor represents and warrants, and, so long as this Security Agreement is in effect, shall be deemed continuously to represent and warrant that: (a) Debtor is the owner of the Collateral free of all security interests or other encumbrances, except the Security Interest and except as specified in an appropriate schedule hereto; (b) Debtor is authorized to enter into this Security Agreement; (c) any and all trade names, division names, assumed names or other names under which Debtor transacts any part of its business are specified in an appropriate schedule hereto; and Debtor's records concerning the Collateral are kept at one of the addresses specified above; (d) each Account, General Intangible and Chattel Paper constituting Collateral is genuine and enforceable in accordance with its terms against the party obligated to pay it (Account Debtor); and no Account Debtor has any defense, setoff, claim or counterclaim against Debtor which can be asserted against Secured Party, whether in any proceeding to enforce the Collateral or otherwise; (e) the amounts represented from time to time by Debtor to Secured Party as owing by each Account Debtor or by all Account Debtors will be and are the correct amounts actually and unconditionally owing by such Account Debtor or Debtors individually and in the aggregate, except for normal cash discounts where applicable; (f) each Instrument and each Document constituting Collateral is genuine and in all respects what it purports to be; and (g) any Collateral which is a Fixture is affixed to real property at Debtor's address specified above or as specified in an appropriate schedule hereto, and such real property is owned by Debtor or by the person or persons named in such schedule and is encumbered only by the mortgages listed in such schedule.

4.    **Covenants of Debtor.**

So long as this Security Agreement is in effect, Debtor:  (a) will defend the Collateral against the claims and demands of all other parties, including, without limitation, defenses, setoffs, claims and counterclaims asserted by any Account Debtor against Debtor or Secured Party, except, as to Inventory, purchasers and lessees in the ordinary course of Debtor's business; will keep the Collateral free from all security interests or other encumbrances, except the Security Interest and except as specified in an appropriate schedule hereto; and will not sell, transfer, lease, assign, deliver or otherwise dispose of any Collateral or any interest therein without the prior written consent of Secured Party, except that, until the occurrence of an event of default as specified in paragraph 10 hereof, Debtor may sell or lease Inventory in the ordinary course of Debtor's business; (b) will furnish to Secured Party financing statements in such form and at such intervals as Secured Party shall request; will keep, in accordance with generally accepted accounting principal consistently applied, accurate and complete books and records, including, without limitation, records concerning the Collateral; at Secured Party's request, will mark any and all such books and records to indicate the Security Interest; will permit Secured Party or its agents to inspect the Collateral and to audit and make extracts from or copies of such books and records an any of Debtor's ledgers, reports, correspondence or other books and records; and will duly account to Secured Party's satisfaction, at such time or times as Secured Party may require, for any of the Collateral; (c) will deliver to Secured Party upon demand, all Documents and all Chattel Paper (duly indorsed to Secured Party) constituting, representing, representing or relating to the Collateral, or any part hereof, and any schedules, invoices, shipping documents, delivery receipts, purchase orders, contracts or other documents representing or relating to the Collateral or any part thereof; (d) will notify Secured Party promptly in writing of any change in Debtor's business address or chief executive office, any change in the address at which records concerning the Collateral are kept and any change in Debtor's name, identity or corporate or other structure; (e) will not, without Secured Party's written consent, make or agree to make any alteration, modification or cancellation of, substitution for, or credits, adjustments or allowances on, Accounts, General Intangibles or Chattel Paper constituting Collateral; will furnish to Secured Party, on request, all credit and other information respecting the financial condition of any Account Debtor; and will notify Secured Party promptly of any default by any Account Debtor in payment or other performance of obligations with respect to any Collateral; (f) will keep the Collateral in

good condition and repair; and will not use the Collateral in violation of any provisions of this security Agreement, of any applicable statute, regulation or ordinance or of any policy insuring the Collateral; (g) will pay all taxes, assessments and other charges of every nature which may be imposed, levied or assessed against Debtor or any of Debtor's assets, prior to the date of attachment of any penalties or liens with respect thereto (other than liens attaching prior to payment becoming due, if payment is made when due), provided, however, Debtor shall not be required to pay any such tax, assessment or other charge so long as its validity is being contested in good faith by appropriate proceedings diligently conducted; (h) will insure the Collateral against risks, in coverage, form and amount, and by insurer, satisfactory to Secured Party, and, at Secured Party's request, will cause each policy to be payable to Secured Party as a named insured or loss payee, as its interest may appear, and deliver each policy or certificate of insurance to Secured Party; (i) will prevent the Collateral or any part thereof from being or becoming any accession to other goods not covered by this Security Agreement; (j) in connection herewith, will execute and deliver to Secured Party such financing statement, assignments and other documents and do such other things relating to the Collateral and the Security Interest as Secured Party may request, and pay all costs of title searches and filing financing statements, assignments and other documents in all public offices requested by Secured Party; and will not, without the prior consent of Secured Party, file or authorize or permit to be filed in any public office any financing statement naming Debtor as debtor and not naming Secured Party as secured party; (k) will not place the Collateral in any warehouse which may issue a negotiable document with respect thereto; and (l) if Secured Party in its sole discretion and at any time or from time to time determines that the liquidation value of the Collateral has become inadequate, will immediately on demand (i) deliver to Secured Party additional collateral of a kind and value satisfactory to Secured Party, or (ii) make payments of Indebtedness, sufficient to cause the relationship of the liquidation value of Collateral to Indebtedness (including Indebtedness for which a commitment to lend exists) to become satisfactory to Secured Party.

5.      **Verification of Collateral.**

        Secured Party shall have the right to verify all or any Collateral in any manner and through any medium Secured Party may consider appropriate, and Debtor agrees to furnish all assistance and information and perform any acts which Secured Party may require in connection therewith and to pay all of Secured Party's costs therefore.

6.      **Notification and Payments.**

        Before or after the occurrence of an Event of Default. Secured Party may notify all or any Account Debtors of the Security Interest and may also direct such Account Debtors to make all payments on Collateral to Secured Party. All payments on and from Collateral received by Secured Party directly or from Debtor shall be applied to the Indebtedness in such order and manner and at such time as Secured Party shall, in its sole discretion, determine. Secured Party may demand of Debtor in writing, before or after notification to Account Debtors and without waiving in any manner the Security Interest, that any payments on and from the Collateral received by Debtor: (i) shall be held by Debtor in trust for Secured Party in the same medium in which received; (ii) shall not be commingled with any assets of Debtor; and (iii) shall be delivered to Secured Party in the form received, properly indorsed to permit collection, not later than the next business day following the day of their receipt; and Debtor shall comply with such demand. Debtor shall also promptly notify Secured Party of the return to or repossession br Debtor of Goods underlying any Collateral, and Debtor shall hold the same in trust for Secured Party and shall dispose of the same as Secured Party directs.

7.      **Registered Holder of Collateral.**

If any Collateral consists of investment securities, Debtor authorizes Secured Party to transfer the same or any part thereof into its own name or that of its nominee so that Secured Party or its nominee may appear of record as the sole owner thereof; provided, that so long as no event of default has occurred Secured Party shall deliver promptly to Debtor all notices, statements or other communications received by it or its nominee as such registered owner, and upon demand and receipt of payment of necessary expenses thereof, shall give to Debtor or its designee a proxy or proxies to vote and take all action with respect to such securities. After the occurrence of any event of default, Debtor waives all rights to be advised of or to receive any notices, statements or communications received by Secured Party or its nominee as such record owner, and agrees that no proxy or proxies given by Secured Party to Debtor or its designee as aforesaid shall thereafter be effective.

8.    **Income from and Interest on Collateral Consisting of Instruments.**

(a)    Until the occurrence of an event of default, Debtor reserves the right to receive all income from or interest on the Collateral consisting of Instruments, and if Secured Party receives any such income or interest prior to such event of default, Secured Party shall pay the same promptly to debtor.

(b)    Upon the occurrence of an event of default, Debtor will not demand or receive any income from or interest on such Collateral, and if Debtor receives any such income or interest without any demand by it, same shall be held by Debtor in trust for Secured Party in the same medium in which received, shall not be commingled with any assets of Debtor and shall be delivered to Secured Party in the form received, properly indorsed to permit collection, not later than the next business day following the day of its receipt. Secured Party may apply the net cash receipts from such income or interest to payment of any of the Indebtedness, provided that Secured Party shall account for and pay over to debtor any such income or interest remaining after payment in full of the Indebtedness.

9.    **Increases, Profits, Payments or Distributions.**

(a)    Whether or not an event of default has occurred, Debtor authorizes Secured Party: (i) to receive any increase in or profits on the Collateral (including, without limitation, any stock issued as a result of any stock split or dividend, any capital distribution and the like), and to hold the same as part of the Collateral; and (ii) to receive any payment or distribution on the Collateral upon redemption by, or dissolution and liquidation of, the issuer, to surrender such Collateral or any part thereof in exchange therefor and to hold the net cash receipts from any such payment or distribution as part of the Collateral.

(b)    If Debtor receives any such increase, profits, payments or distributions, Debtor will receive and deliver same promptly to Secured Party on the same terms and conditions set forth in paragraph 8(b) hereof respecting income or interest, to be held by Secured Party as part of the Collateral.

10.    **Event of Default.**

(a)    Any of the following events or conditions shall constitute an event of default hereunder: (i) nonpayment when due, whether by acceleration or otherwise, of principal of any interest on any Indebtedness, or default by Debtor in the performance of any obligation, term or condition of this Security Agreement or any other agreement between Debtor and Secured Party; (ii) death or judicial declaration of incompetency of Debtor, if an individual; (iii) the filing by or against Debtor of a request or petition for liquidation, reorganization, arrangement, adjustment of debts, adjudication as a bankrupt,

relief as a debtor or other relief under the bankruptcy, insolvency or similar laws of the United States or any state or territory thereof or any foreign jurisdiction, now or hereafter in effect; (iv) the making of general assignment by Debtor for the benefit of creditors; the appointment of a receiver or trustee for Debtor or for any assets of Debtor, including, without limitation, the appointment of or taking possession by a "custodian", as defined in the federal Bankruptcy Code; the making of any, or sending notice of any intended, bulk sale; or the institution by or against Debtor of any other type of insolvency proceeding (under the federal Bankruptcy Code or otherwise) or of any formal or informal proceeding for the dissolution or liquidation of, settlement of claims against or winding up of affairs of, Debtor; (v) the sale, assignment, transfer or delivery of all or substantially all of the assets of Debtor; the cessation by Debtor as a going business concern; the entry of judgment against Debtor, other than a judgment for which Debtor is fully insured, if ten days thereafter such judgment is not satisfied, vacated, bonded or stayed pending appeal; or if Debtor is generally not paying Debtor's debts as such debts become due; (vi) the occurrence of any event described in paragraph 10(a) (ii), (iii), (iv) or (v) hereof with respect to any endorser, guarantor or any other party liable for, or whose assets or any interest therein secures, payment of any Indebtedness (Third Party), or the occurrence of any such event with respect to any general partner of Debtor, if Debtor is a partnership; (vii) if any certificate, statement, representation, warranty or audit heretofore or hereafter furnished by or on behalf of Debtor or any third Party, pursuant to or in connection with this Security Agreement , or otherwise (including, without limitation, representations and warranties contained herein) , or as an inducement to Secured Party to extend any credit to or to enter into this or any other agreement with Debtor, proves to have been false in any material respect at the time as of which the facts therein set forth were stated or certified, or to have omitted any substantial contingent or unliquidated liability or claim against Debtor or any such Third Party; or, if upon the date of execution of this Security Agreement, there shall have been any materially adverse change in any of the facts disclosed by any such certificate, statement, representation, warranty or audit, which change shall not have been disclosed in writing to Secured Party at or prior to the time of such execution; (viii) nonpayment by Debtor when due of any indebtedness for borrowed money owing to any third party, or the occurrence of any event which could result in acceleration of payment of any such indebtedness; or (ix) the reorganization, merger or consolidation of Debtor (or the making of any agreement therefor) without the prior written consent of Secured Party.

(b)    Secured Party , at its sole election, may declare all or any part of any Indebtedness not payable on demand to be immediately due and payable without demand or notice of any kind upon the happening of any event default (other than an event of default under either paragraph 10(a)(iii) or (iv) hereof), or if Secured Party in good faith believes that the prospect of payment of all or any part of the Indebtedness or performance of Debtor's obligations under this Security Agreement or any other agreement now or hereafter in effect between Debtor and Secured Party is impaired. All or any part of any Indebtedness not payable on demand shall be immediately due and payable without demand or notice of any kind upon the happening of one or more events of default under paragraph 10 (a)(iii) or (iv) hereof. The provisions of this paragraph are not intended in any way to affect any rights of Secured Party with respect to any Indebtedness which may now or hereafter be payable on demand.

(c)    Secured Party's rights and remedies with respect to the Collateral shall be those of a Secured Party under the Uniform commercial Code and under any other applicable law, as the same may from time to time be in effect, in addition to those rights granted herein and in any other agreement now or hereafter in effect between Debtor and Secured Party. Upon the existence or occurrence of an event of default, Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place or places designated by Secured Party, and Secured Party may use and operate the Collateral.

(d)    Without in any way requiring notice to be given in the following time and manner. Debtor agrees that any notice by Secured Party of sale, disposition or other intended action hereunder or in connection herewith, whether required by the Uniform Commercial Code or otherwise, shall constitute reasonable notice to Debtor if such notice is mailed by regular or certified mail, postage prepaid, at least five (5) days prior to such action, to either of Debtor's addresses specified above or to any other address which Debtor has specified in writing to Secured Party as the address to which notices hereunder shall be given to Debtor.

(e)    Debtor agrees to pay on demand all costs and expenses incurred by Secured Party in enforcing this Security Agreement, in realizing upon or protecting any Collateral and in enforcing and collecting any Indebtedness or any guaranty thereof, including, without limitation, if Secured Party retains counsel for advice, suit, appeal, insolvency or other proceeding under the federal Bankruptcy Code or otherwise, or for any of the above purpose, the actual attorneys' fees incurred by Secured Party. Payment of all sums hereunder is secured by the Collateral.

11.    **Miscellaneous**.

(a)    Debtor hereby authorizes Secured Party, at Debtor's expense, to file such financing statement or statements relating to the Collateral without Debtor's signature thereon as Secured Party at its option may deem appropriate, and appoints Secured Party as Debtor's attorney-in-fact (without requiring Secured Party) to execute any such financing statement or statements in Debtor's name and to perform all other acts which Secured Party deems appropriate to perfect and continue the Security Interest and to protect preserve and realize upon the Collateral. This power of attorney shall not be affected by the subsequent disability or incompetence of Debtor.

(b)    Secured Party may demand, collect and sue on any of the Accounts.  Chattel Paper, Instruments and General Intangibles (in either Debtor's or Secured party's name at the latter's option); may enforce, compromise, settle or discharge such Collateral without discharging the Indebtedness or any part thereof; and may indorse Debtor's name on any and all checks, commercial paper, and any other Instruments pertaining to or constituting Collateral.

(c)    (i) As further security for payment of the Indebtedness, Debtor hereby grants to Secured Party a Security Interest in and lien on any and all property of Debtor which is or may hereafter be in the possession or control of Secured Party in any capacity or of any third party acting on its behalf including, without limitation, all deposit and other accounts and all moneys owed or to be owed by Secured Party to Debtor, and with respect to all of such property, Secured Party shall have the same rights hereunder as it has with respect to the Collateral; (ii) Without limiting any other right of Secured Party, whenever Secured Party has the right to declare any Indebtedness to be immediately due and payable (whether or not it has so declared).  Secured Party at its sole election may set off against the Indebtedness any and all moves then or thereafter owed to Debtor by Secured Party in any capacity, whether or not the Indebtedness or the obligation to pay such moneys owed by Secured Party is then due, and Secured Party shall be deemed to have exercised such right of set off immediately at the time of such election even though any charge therefor is made or entered on Secured Party's record subsequent thereto.

(d)    Upon Debtor's failure to perform any of its duties hereunder, Secured Party may, but shall not be obligated to, perform any or all such duties, including, without limitation, payment of taxes assessments, insurance and other charges and expenses as herein provided, and Debtor shall pay an amount equal to the cost thereof to Secured Party on demand by Secured Party.  Payment of all moneys hereunder shall be secured by the Collateral.

(e)    Unless any instrument, document, or agreement evidencing any Indebtedness expressly provides a rate for the accrual of interest after such Indebtedness becomes due, the rate at which interest on such Indebtedness shall accrue after such Indebtedness becomes due, whether by reason of default or otherwise and until such Indebtedness is paid in full, shall be the rate provided in such instrument document, or agreement which is in effect immediately prior to such Indebtedness becoming due.

(f)    No course of dealing between debtor and Secured Party and no delay or omission by Secured Party in exercising any right or remedy hereunder or with respect to any Indebtedness shall operate as a waiver thereof or of any other right or remedy, and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy. Secured Party may remedy any default, by Debtor hereunder or with respect to any Indebtedness in any reasonable manner without waiving the default remedied and without waiving any other prior or subsequent default by Debtor. All rights and remedies of Secured party hereunder are cumulative.

(g)    Secured Party shall have no obligation to take, and Debtor shall have the sole responsibility for taking, any and all steps to preserve rights against any and all prior parties to any Instrument or Chattel Paper constituting Collateral whether or not in Secured Party's possession. Secured Party shall not be responsible to Debtor for loss or damage resulting from Secured Party's failure to enforce or collect any such Collateral or to collect any moneys due to become due thereunder. Debtor waives protest of any Instrument constituting Collateral at any time held by Secured Party on which Debtor is in any way liable and waives notice of any other action taken by Secured party.

(h)    Debtor authorizes Secured Party, without notice or demand and without affecting Debtor's obligations hereunder, from time to time: (i) to exchange, enforce or release any collateral or any part thereof (other than the Collateral) taken from any party for payment of the Indebtedness or any part thereof; (ii) to release, substitute or modify any obligation of any endorser, guarantor or other party in any way obligated to pay the Indebtedness or any part thereof, or any party who has given any security, mortgage or other interest in any other collateral as security for the payment of the Indebtedness of any part thereof; (iii) upon the occurrence of any event of default as hereinabove provided, to direct the order or manner of disposition of the Collateral and any and all other collateral and the enforcement of any and all endorsements, guaranties and other obligations relating to the Indebtedness or any part thereof, as Secured Party, in its sole discretion, may determine; and (iv) to determine how, when and what application of payments and credits, if any, shall be made on the Indebtedness or any part thereof.

(i)    The rights and benefits of Secured Party hereunder shall, if Secured Party so directs, inure to any party acquiring any interest in the indebtedness or any part thereof.

(j)    Secured Party and Debtor as used herein shall include the heirs, executors or administrators, or successors or assigns of those parties.

(k)    If more than one Debtor executes this Secured Agreement, the term "Debtor" shall include

each as well as all of them and their obligations, warranties and representations hereunder shall be joint and several.

(l)    No modification, rescission, waiver, release or amendment of any provision of this Security Agreement shall be made, except by a written agreement subscribed by Debtor and by a duly authorized officer of Secured Party.

(m)    This Security Agreement and the transaction evidenced hereby shall be construed under the laws of New York State, as the same may from time to time be in effect.

(n)    All terms, unless otherwise defined in this Security Agreement, shall have the definitions set forth in the Uniform Commercial Code adopted in New York State, as the same may from time to time be in effect.

(o)    Debtor hereby irrevocably appoints Secured Party the Debtor's agent with full power, in the same manner, to the same extent and with the same effect as if debtor were to do the same: to receive and collect all mail addressed to Debtor; to direct the place of delivery thereof to any location designated by Secured Party; to open such mail; to remove all contents therefrom; to retain all contents thereof constituting or relating to the Collateral; and to perform all other acts which Secured Party deems appropriate to protect, preserve and realize upon the Collateral.    The agency hereby created is unconditional and shall not terminate until all of the Indebtedness is paid in full until all commitments by Secured Party to lend funds to Debtor have expired or been terminated.  This power of attorney shall not be affected by the subsequent disability or incompetence of debtor.

(p)    This Security Agreement is and is intended to be a continuing Security Agreement and shall remain in full force and effect until the officer in charge of the Lending Office.  Department or Division of Secured Party indicated above shall actually receive from Debtor written notice of its discontinuance; provided, however, this Security Agreement shall remain in full force and effect thereafter until all of the Indebtedness outstanding, or contracted or committed for (whether or not outstanding), before the receipt of such notice by Secured Party, and extensions or renewals thereof  (Whether made before or after receipt of such notice), together with interest accruing thereon after such notice, shall be finally and irrevocably paid in full.  If, after receipt of all or any part of the Indebtedness, Secured Party is for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible setoff, or a diversion of trust funds, or for any other reason, this Security Agreement shall continue in full force notwithstanding any contrary action which may have been taken by Secured Party in reliance upon such payment, and any such contrary action so taken shall be without prejudice to Secured Party's rights under this Security Agreement and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

(Corporate Seal)

Attest:

DEBTOR:

UNITED ALUMINUM DOOR INC.

_____
SANDY LIANG, Secretary

By:    _____
WAH WOON TAM, President

SCHEDULE

1. Other encumbrances, if any (Paragraph 3a, 4a):

2. Other names under which Debtor transacts business (Paragraph 3c):

3. (a) Fixtures affixed to real property (Paragraph 3g):

   (b) Owner of such real property (Paragraph 3g):

   (c) Mortgages on real property (Paragraph 3g):

4. Additional schedules describing Collateral, if any, follow hereafter (Paragraph 1)

## Uniform Commercial Code — FINANCING STATEMENT — Form UCC-1

JULIUS BLUMBERG, INC. N. Y. C. 10013

IMPORTANT — Read instructions on back before filling out form

| This FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code. | No. of Additional Sheets Presented: | 3. ☐ The Debtor is a transmitting utility. |
|---|---|---|

1. Debtor(s) (Last Name First) and Address(es): | 2. Secured Party(ies) Name(s) and Address(es) | 4. For Filing Officer: Date, Time, No. Filing Office

United Aluminum Door Inc.
267 Vandervoort Avenue
Brooklyn, New York 11211

Cathay Bank, Flushing Office
40-14/16 Main Street
Flushing, New York 11354

5. This Financing Statement covers the following types (or items) of property:

See Schedule A attached hereto and made a part hereof.

6. Assignee(s) of Secured Party and Address(es)

7. ☐ The described crops are growing or to be grown on:*
☐ The described goods are or are to be affixed to:*
☐ The lumber to be cut or minerals or the like (including oil and gas) is on:*
*Describe Real Estate Below)

☐ Products of the Collateral are also covered.

8. Describe Real Estate Here: | ☐ This statement is to be indexed in the Real Estate Records: | 9. Name of a Record Owner

| No. & Street | Town or City | County | Section | Block | Lot |
|---|---|---|---|---|---|

10. This statement is filed without the debtor's signature to perfect a security interest in collateral (check appropriate box)
☐ under a security agreement signed by debtor authorizing secured party to file this statement, or
☐ which is proceeds of the original collateral described above in which a security interest was perfected, or
☐ acquired after a change of name, identity or corporate structure of the debtor, or ☐ as to which the filing has lapsed, or already subject to a security interest in another jurisdiction:
☐ when the collateral was brought into the state, or ☐ when the debtor's location was changed to this state.

UNITED ALUMINUM DOOR INC.                    CATHAY BANK, FLUSHING OFFICE

By _____                By _____
Signature(s) of Debtor(s) President          Signature(s) of Secured Party(ies)
WAH WOON TAM,                                PIN TAI, General Manager
(1) Filing Officer Copy-Numerical
(5/82)    STANDARD FORM - FORM UCC-1 — Approved by Secretary of State of New York

## SCHEDULE A

machinery, equipment, furniture and fixtures of the Debtor, whether ow owned or hereafter acquired and wherever located, of every kind . . angible, including, but not limited to, the balance of every deposit :r existing, of the Debtor with the Secured Party and any other claim of the 'ured Party, now or hereafter existing, and all money, accounts receivable, -5, goods, instruments, securities, documents, chattel paper, other property, rights and interests of the Debtor, and shall include the proceeds, products and accessions of and to any thereof.


DEBTOR:              UNITED ALUMINUM DOOR INC.


SECURED PARTY:  CATHAY BANK
                FLUSHING OFFICE

## Uniform Commercial Code — FINANCING STATEMENT — Form UCC-1

JULIUS BLUMBERG, INC. N. Y. C. 10013

**IMPORTANT — Read instructions on back before filling out form**

| This FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code. | No. of Additional Sheets Presented: | 3. ☐ The Debtor is a transmitting utility. |
|---|---|---|
| 1. Debtor(s) (Last Name First) and Address(es): | 2. Secured Party(ies) Name(s) and Address(es) | 4. For Filing Officer: Date, Time, No. Filing Office |

1. Debtor(s):

United Aluminum Door Inc.
267 Vandervoort Avenue
Brooklyn, New York 11211

2. Secured Party:

Cathay Bank, Flushing Office
40-14/16 Main Street
Flushing, New York 11354

5. This Financing Statement covers the following types (or items) of property:

See Schedule A attached hereto and made a part hereof.

6. Assignee(s) of Secured Party and Address(es)

☐ Products of the Collateral are also covered.

7. ☐ The described crops are growing or to be grown on: *
☐ The described goods are or are to be affixed to: *
☐ The lumber to be cut or minerals or the like (including oil and gas) is on: *
*(Describe Real Estate Below)

8. Describe Real Estate Here:    ☐ This statement is to be indexed in the Real Estate Records:    9. Name of a Record Owner

| No. & Street | Town or City | County | Section | Block | Lot |
|---|---|---|---|---|---|

10. This statement is filed without the debtor's signature to perfect a security interest in collateral (check appropriate box)
☐ under a security agreement signed by debtor authorizing secured party to file this statement, or
☐ which is proceeds of the original collateral described above in which a security interest was perfected, or
☐ acquired after a change of name, identity or corporate structure of the debtor, or ☐ as to which the filing has lapsed, or already subject to a security interest in another jurisdiction:
☐ when the collateral was brought into the state, or ☐ when the debtor's location was changed to this state.

UNITED ALUMINUM DOOR INC.

By _____
WAH WOON TAM Signature(s) of Debtor(s) **President**

CATHAY BANK, FLUSHING OFFICE

By _____
Signature(s) of Secured Party(ies)
PIN TAI, General Manager

(1) Filing Officer Copy-Numerical
(5/82)    **STANDARD FORM - FORM UCC-1** — Approved by Secretary of State of New York

## SCHEDULE A

All personal property, machinery, equipment, furniture and fixtures of the Debtor, whether now or hereafter existing or now owned or hereafter acquired and wherever located, of every kind of description, tangible or intangible, including, but not limited to, the balance of every deposit account, now or hereafter existing, of the Debtor with the Secured Party and any other claim of the Debtor against the Secured Party, now or hereafter existing, and all money, accounts receivable, inventory, goods, instruments, securities, documents, chattel paper, other property, rights and interests of the Debtor, and shall include the proceeds, products and accessions of and to any thereof.

DEBTOR:    UNITED ALUMINUM DOOR INC.

SECURED PARTY: CATHAY BANK
        FLUSHING OFFICE

# EXHIBIT F

## CASH COLLATERAL AND PLEDGE AGREEMENT

Date:                    September    15     , 2000

Account No.:              _____

     This is an agreement (the "Agreement") between **CATHAY BANK, FLUSHING OFFICE** (the "Bank") and **UNITED ALUMINUM DOOR INC.**, a New York corporation, having its principal place of business at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower").

     The Bank is making a revolving credit facility (the "Credit Facility") to the Borrower on the date hereof, which is evidenced by the Borrower's Revolving Note (the "Note"). Simultaneously with the delivery by the Borrower of the Note to the Bank, the Borrower has signed a Credit Agreement (the "Credit Agreement"). The Borrower who signed the Credit Agreement shall fulfill the terms and conditions which are made in the Credit Agreement to secure the payment and performance of all of the Borrower's obligations set forth therein and of all other obligations and liabilities of the Borrower to the Bank, whether now existing or hereafter created, whether consisting of principal, interest, fees, charges, costs, fixed or contingent (the obligations evidenced by the Credit Agreement and all such other obligations and liabilities hereinafter separately and collectively, the "Obligations").

     Pursuant to the Obligations under this Agreement, the Borrower is depositing with and assigning and pledging to the Bank the above-referenced bank accounts and all other accounts of the Borrower maintained with the Bank (the "Cash") and the Cash and all interest, profits and other distributions therefrom and all proceeds of lease, sale, exchange, payment or other realization thereon (hereinafter separately and collectively, the "Collateral").

**The parties hereto agree as follows:**

1.    <u>Pledge and Grant of Security Interest</u>.

     (a)    To secure the full and punctual payment and performance of the Obligations, the Borrower hereby assigns and pledges to the Bank, and grants to the Bank a first and continuing security interest in the Collateral. The Borrower is simultaneously herewith delivering to and depositing with the Bank the Cash, which the Bank agrees to deposit in an account maintained with the Bank until the earlier of (i) the date upon which the indebtedness secured by the Note becomes immediately due and payable by reason of a default thereunder or (ii) the date that the Collateral or the remaining portion thereof is released.

     (b)    The Bank shall have, with respect to the Collateral, in addition to the rights and remedies herein set forth, all of the rights and remedies available to a secured party under applicable law and under the Uniform Commercial Code

1

as in effect in the State of New York (the "UCC") as if such rights and remedies were fully set forth herein.

2.    <u>Right of Set-Off.</u>

In addition to its rights and interests as hereinafter set forth, the Bank, at its option, may at any time and from time to time, with or without notice to the Borrower, appropriate and apply to the payment or reduction in whole or in part of the Obligations on and after the Expiration Date (as defined in the Credit Agreement), any and all moneys, securities, commercial paper, certificates of deposit, stocks, bonds, notes or other assets or security in any form whatsoever now or hereafter on deposit with or otherwise held by the Bank to the credit of or belonging to the Borrower, it being understood and agreed that the Bank shall not be obligated to assert or enforce any rights or the security interest hereunder or to take any action in reference thereto. Any cash held by the Bank as Collateral and all cash proceeds received by the Bank in respect of interest or other distributions from, payment of, collection from, sale or exchange of, or other realization upon, all or any part of the Collateral may, in the sole discretion of the Bank, continue to be held by the Bank as part of the Collateral or may then and/or at any time thereafter, be applied in whole or in part by the Bank in payment of the due and payable Obligations, in such order as the Bank shall desire. The Bank, in its sole discretion, at any time and from time to time, may release or relinquish its rights, remedies or the security interest hereunder as to any particular item of the Collateral without thereby affecting or invalidating its rights, remedies and security interest hereunder as to any other item of the Collateral.

3.    <u>Representations and Warranties of the Borrower.</u>

The Borrower represents and warrants to the Bank, which representations and warranties shall be deemed to have been reaffirmed upon delivery to and deposit with the Bank of each additional and/or substituted item of the Collateral, that:

    (a)    the execution, delivery and performance by the Borrower of this Agreement and the pledge of the Collateral hereunder do not contravene (i) any applicable law or regulation or (ii) any agreement by which the Borrower is bound;

    (b)    this Agreement is the legal, valid, and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms;

    (c)    no consent or approval of any person, corporation, governmental body, regulatory authority or other entity, is or will be necessary for the execution, delivery and performance of this Agreement or, to the best of the Borrower's knowledge, the exercise by the Bank of any rights with respect to the Collateral or for the pledge and assignment of and the grant of a security interest in the Collateral to the Bank;

2

(d)    there are no pending or threatened actions or proceedings before any court, judicial body, administrative agency or arbitrator which may materially, adversely affect the Collateral;

(e)    the Borrower has full power and authority to pledge and assign the Collateral to the Bank in accordance with the terms of this Agreement; and

(f)    except for the pledges and security interests granted to the Bank previously and hereunder, the Borrower owns each item of the Collateral free and clear of any other security interest, pledge, claim, lien, charge, hypothecation, assignment, offset or encumbrance.

4.    <u>Change of The Agreement</u>.

This Agreement may not be changed except by an agreement in writing signed by the Borrower and the Bank. The rights of the Borrower under this Agreement are personal and may not be assigned or transferred.

**IN WITNESS WHEREOF,** this Agreement has been duly executed and delivered on the day and year first above written.

(Corporate Seal)

Attest:

BORROWER:

UNITED ALUMINUM DOOR INC.

_____    By:    _____
SANDY LIANG, Secretary                               JEN-HAO MAO, Treasurer

3

# EXHIBIT G

{00339189.DOC;1}

## ASSIGNMENT OF ACCOUNT RECEIVABLE

**UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal place of business at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Assignor"), in consideration of One Dollar ($1.00) lawful money of the United States of America, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has sold, assigned, transferred and set over and by this Assignment does sell, assign, transfer and set over onto **CATHAY BANK, FLUSHING OFFICE,** having its principal place of business at 40-14/16 Main Street, Flushing, New York 11354 (the "Assignee") to its own proper use and benefit, and, as collateral security for its indebtedness to the Assignee now or hereafter existing pursuant to that certain Credit Agreement by and between the Borrower and the Bank dated the even date herewith (as further amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), and does hereby grant the Assignee a security interest in all the Assignor's right, title and interest in and to all its interest in the accounts receivable, notes receivable, open accounts pending, security agreements, mortgages, leases and rentals, and judgments (collectively the "Accounts"), whether now in existence or created from time to time hereafter during the period this Agreement remains in effect.

The execution of this Agreement shall by itself, without the necessity of further formality of writing, constitute the creation of a security interest in all of the Accounts, and the underlying contract rights, all present and future general intangibles, chattel paper, the cash and non-cash the Assignor on the Assignee's books as security for any indebtedness or obligations which the Assignor may now have or hereafter owe to the Assignee, whether fixed or contingent or whether related to the assignment of such Accounts herein.

The Assignor covenants that (i) upon demand of the Assignee, it will have all the accounts receivable and other monies hereby assigned paid over to the Assignee promptly; (ii) it will, whenever requested by the Assignee, write letters to each of the Assignor's agents and representatives into whose hands or control may come any accounts receivable, earnings and money hereby assigned, informing each such addressee of this Assignment and instructing such addressee to remit promptly to the Assignee all accounts receivable, earnings and money hereby assigned

1

which may come into the addressee's hands or control and to continue to make such remittances until such time as the addressee may receive written notice or instructions to the contrary direct from the Assignee; and (iii) it will instruct each such addressee to acknowledge directly to the Assignee receipt of the Assignor's letter of notification and the instructions.

It is expressly agreed that anything herein contained to the contrary notwithstanding, the Assignee shall have no obligation or liability under any agreement by reason of or arising out of this Assignment nor shall the Assignee be required or obligated in any manner to perform or fulfill any obligations of the Assignor under or pursuant to any agreement or to make any payment or to make any inquiry as to the nature or sufficiency of any payment received by it or to present or file any claim, or to take any other action to collect or enforce the payment of any amounts which may have been assigned to it or to which it may be entitled hereunder at any time.

The Assignor does hereby constitute the Assignee the Assignor's true and lawful attorney, irrevocably, with full power (in the name of the Assignor) to ask, require, demand, receive, compound and give acquittance for any and all monies, claims, property and rights hereby assigned, to endorse any checks or other instruments or orders in connection therewith, to file any claims or to take any action or institute any proceedings which to the Assignee may seem to be necessary or advisable.

The powers and authority granted to the Assignee herein have been given for a valuable consideration and are hereby declared to be irrevocable.

The Assignor agrees that at any time and from time to time, upon the written request of the Assignee, the Assignor will promptly and duly execute and deliver any and all such further instruments and documents as the Assignee may deem desirable in obtaining the full benefits of this Assignment and of the rights and powers herein granted.

The Assignor does hereby warrant and represent that it has not assigned or pledged, and hereby covenants that, without the prior written consent thereto of the Assignee, so long as this Assignment shall remain in effect, it will not assign or pledge the whole or any part of the rights, title and interest hereby assigned to anyone other than the Assignee and it will not take or omit to take any action, the taking or omission of which might result in an alteration or impairment of said rights or this Assignment.

2

This Assignment shall continue until the Assignor pays off, satisfy or discharge its obligations or debts with the Assignee. The terms and provisions of the Uniform Commercial Code, as adopted in New York, are incorporated herein by reference, for such statute shall, to the extent that it is not inconsistent with the assignment of the Accounts, determine the Assignee's respective rights and obligation herein.

This Assignment shall be governed by the substantive laws of the State of New York and may not be amended or changed except by an instrument in writing executed by both the Assignor and the Assignee.

The Assignor hereby appoints the Assignee its attorney-in-fact for the purpose of executing and filing any financing statements or papers of similar purpose or effect relating to this Assignment.

**IN WITNESS WHEREOF**, the Assignor has caused this Assignment to be duly executed this 15th day of September, 2000.

(Corporate Seal)

Attest:

_____
SANDY LIANG, Secretary

ASSIGNOR:

UNITED ALUMINUM DOOR INC.

By:    _____
JEN-HAO MAO, Treasurer

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

On the 15th day of September, in the year 2000 before me, the undersigned, personally appeared JEN-HAO MAO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

KWAN YU TAM
Notary Public - State of New York
No. 01TA6043428
Qualified in Queens County
My Commission Expires June 13, 20 02

3

# EXHIBIT H

# CERTIFIED CORPORATE RESOLUTION

## OF

## UNITED ALUMINUM DOOR INC.

The undersigned, Secretary of **UNITED ALUMINUM DOOR INC.** (the "Corporation"), **DOES HEREBY CERTIFY THAT:**

1.    At a meeting of the Board of Directors of the above mentioned Corporation, duly called and held on the $2$ nd day of May, 2005,  at which a quorum was present and acting throughout, the Board of Directors unanimously adopted the following resolution, which has not been modified or rescinded and is in full force and effect on the date of this Certificate:

"**RESOLVED**, that the Corporation execute and deliver to Cathay Bank, New York Region (the "Bank"): (a) the Fourth Modification of Credit Agreement (the "Modification Agreement") to extend the term of the existing revolving credit facility in the aggregate amount of $3,500,000.00 (the "Credit Facility") to May 31, 2005, and modify the terms of the Guaranty of Payment, and (b) the Amended and Restated Revolving Note conditioned on the payment of said sum, with interest thereon (the "Amended Note"); that the Modification Agreement and the Amended Note be in such form and contain such interest rate or rates, time of payment and such other terms, provisions, conditions, stipulations and agreements as the officers of the Corporation executing the same may deem proper and advisable;  and  that Wayne Tam, President of the Corporation, be, and he hereby is,  authorized, empowered and directed to perform all acts and do all things  on behalf of the Corporation and to execute, attested by  the Secretary, Sandy Liang, and deliver the Modification Agreement, the Amended  Note and such other papers and documents evidencing, creating governing or securing the Credit Facility as he  may deem proper, necessary or advisable to consummate the transactions contemplated by the Credit Facility, and to affix the seal of the Corporation thereto."

2.    Neither the Certificate of Incorporation of the Corporation nor its By-laws contain any special requirement as to the number of directors required to pass such resolution.

3.    The Certificate of Incorporation of the Corporation does not require any vote or consent of shareholders to authorize the borrowing of the Credit Facility.

4.    The undersigned further certifies that the following persons are the shareholders of the Corporation:

| Name | Percentage of Shares |
|------|----------------------|
| Wah Woon Tam a/k/a Wayne Tam | 45.6 % |

1

Sandy Liang                                      31.18 %

Jen-Hao Mao                                      13.19 %

Kuo Wing Liu                                     10 %

5.    The undersigned further certifies that the following persons are officers of the Corporation referred to in the foregoing resolution with the capacity set opposite their names, and that the signatures set opposite such names are their signatures:

| Name | Office | Signature |
|------|--------|-----------|
| Wayne Tam | President | |
| Sandy Liang | Secretary | |

6.    This Certificate is made and delivered in order to induce the Bank to accept the Modification Agreement and the Amended Note, and continuously extend the Credit Facility referred to in the foregoing resolution to the Corporation.

**IN WITNESS WHEREOF**, the undersigned has hereto affixed her hand and the seal of the Corporation this          day of May, 2005.

(Corporate Seal)



SANDY LIANG, Secretary

STATE OF NEW YORK      )

COUNTY OF  QUEENS      )

On the 2nd day of  May in the year 2005 before me, the undersigned, personally appeared SANDY LIANG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

SEE YUN CHAN
Notary Public - State of New York
CH6101...
Quee...
...Expire...2...67

# EXHIBIT I

## COMPLIANCE AGREEMENT

In consideration of extending a credit facility in the principal amount of $3,500,000.00 (the "Credit Facility") from Cathay Bank, New York Region (the "Bank") to United Aluminum Door Inc. (the "Borrower"), the undersigned do hereby represent and agree as follows:

1.    Upon the request of the Bank and its attorneys, the undersigned agree to:

(a)    furnish and execute any documents reasonably required by the Bank to verify the truth and accuracy of any information provided by the Borrower in connection with the Credit Facility, including but not limited to income, employment, deposit, loan authorization and verification, financial statement, income tax return, and contract and settlement statement for the sale of other properties;

(b)    execute any document that should have been signed at or before the closing; re-execute any document that was signed at or before the closing; and execute any document that was incorrectly drafted and signed at the closing, including, but not limited to, correction credit agreement, correction revolving note and other correction instruments; and

(c)    furnish any documents required by, and comply with any conditions, work and/or certifications set forth in the Bank's commitment.

2.    The undersigned represent and agree that all requests by the Bank or its attorneys will receive the full cooperation of and compliance by the undersigned within **seven (7) days** of the making of the requests, and the obligations hereunder shall survive the closing.

3.    Failure of the undersigned to comply with the representations and agreements hereunder shall constitute a default under the Credit Agreement, as amended, the Amended and Restated Revolving Note, the Guaranty of Payment and all the related loan documents executed at the closing (collectively the "Loan Documents"), and shall entitle the Bank to any and all of the remedies available upon default under the Loan Documents.

Dated:    May 2    , 2005

BORROWER:

UNITED ALUMINUM DOOR INC.

By:    _____
WAYNE TAM, President

GUARANTOR:

VERY-TACT INTERNATIONAL, INC.

By: _____
WAYNE TAM,    President


ARCHIVISIONS, INC.

By: _____
WAYNE TAM,    President


_____
WAH WOON TAM a/k/a
WAYNE TAM

_____
JEN-HAO MAO

_____
SANDY LIANG

_____
KUO WIN LIU

# EXHIBIT J

## AFFIDAVIT AND ESTOPPEL CERTIFICATE
(Corporate Borrower)

STATE OF NEW YORK     )
                              ) ss.:
COUNTY OF QUEENS     )

WAYNE TAM, being duly sworn, deposes and says:

THAT I am the President of United Aluminum Door Inc. (the "Corporation"), the borrower of a revolving credit facility in the principal amount of $3,500,000.00 (the "Credit Facility") from Cathay Bank, New York Region (the "Bank") pursuant to the Credit Agreement, as amended (collectively the "Credit Agreement"), which is evidenced by the Amended and Restated Revolving Note, dated the even date hereof, made by the Borrower in favor of the Bank in the principal amount of $3,500,000.00 (the "Note").

THAT the Corporation is a corporation duly established and existing in good standing under the laws of the State of New York, and has its principal place of business at 267 Vandervoort Avenue, Brooklyn, New York 11211.

THAT there has been no reduction in the income of the Corporation and the undersigned through business operation, employment or otherwise from that set forth in the Credit Facility application.

THAT there is no federal tax claim or lien assessed or filed against the Corporation, and no demand has been made upon the Corporation by the Internal Revenue Service for any taxes due in the United States.

THAT the Corporation has never been adjudicated a bankrupt or filed a petition in bankruptcy.

THAT there is no litigation, pending or threatened, against the Corporation or its officers individually, nor judgment entered against the Corporation or its officers individually unpaid or unsatisfied of record entered in any court of the United States.

THAT the tax identification number of the Corporation listed below is accurate and correct.

THAT there are no defenses or offsets to the Credit Agreement or to the Note, and that all provisions of the Credit Agreement and the Note are in full force and effect.

THAT this affidavit is made to induce the Bank to extend the Credit Facility to the Corporation, knowing that the Bank will rely on the statements hereinabove made.

Corporation Tax I.D. No.

13-3431754

WAYNE TAM

Sworn to before me this
2nd day of May, 2005

Notary Public

LEE YUN CHAN
Notary Public - State of New York
CH61
Quee

# EXHIBIT K

## SUBORDINATION AGREEMENT

**UNITED ALUMINUM DOOR INC.** (hereinafter called the "Borrower"), a corporation incorporated under the laws of the State of New York and doing business at 267 Vandervoort Avenue, in the City of Brooklyn, and State of New York 11211, is now indebted to the undersigned in the principal sum of **ONE MILLION and 00/100 (US$1,000,000.00) UNITED STATES DOLLARS;** and the Borrower may hereafter from time to time become indebted to the undersigned in further amounts.

The undersigned Creditor of BORROWER is **SUMMIT ENGINEERING LIMITED**, with an address at 1202 12th Floor Malaysia Building, 50 Gloucester Road, Wanchai, Hong Kong.

*Subordination*

In order to induce CATHAY BANK, FLUSHING OFFICE (hereinafter called the "Bank"), at any time or from time to time, at its option, to make loans or extend credit or other accommodation or benefit to or for account of the Borrower, with or without security, or to purchase or extend credit upon any instrument or writing in respect of which the Borrower may be liable in any capacity, or to grant such renewals or extensions of any thereof as the Bank may deem advisable, the undersigned hereby agrees that the undersigned will not ask, demand, sue for, take or receive from the Borrower, by set off or in any other manner, the whole or any part of any moneys, principal or interest, now or hereafter owing by the Borrower to the undersigned, nor any security therefor, unless and until all indebtedness of the Borrower to the Bank, whether now existing or hereafter arising, direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, and whether arising directly between the Borrower and the Bank or acquired outright, conditionally or as collateral security from another by the Bank, shall have been paid with interest.

*Subrogation*

The undersigned agrees that, in the event of any distribution, division or application, partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any part of the assets of the Borrower or the proceeds thereof, to creditors of the Borrower, or upon any indebtedness of the Borrower, by reason of the liquidation, dissolution or other winding up of the Borrower or the Borrower's business, or any sale, receivership, insolvency or bankruptcy proceeding, or assignment for the benefit of creditors, or any proceeding by or against the Borrower for any relief under any bankruptcy or insolvency law or laws relating to the relief of debtors, readjustment of indebtedness, reorganizations, compositions or extensions, then and in any such event any payment or distribution of any kind or character, either in cash, securities or other property, which shall be payable or deliverable upon or with respect to any or all indebtedness of the Borrower to the undersigned shall be paid or delivered directly to the Bank for application on any indebtedness, due or not due, of the Borrower to the Bank until such indebtedness to the Bank shall have first been fully paid and satisfied. The undersigned irrevocably authorized and empowers the Bank to demand, sue for, collect and receive every such payment or distribution and give acquittance therefor and to file claims and take such other proceedings, in the Bank's own name or in the name of the undersigned or otherwise, as the Bank deem necessary or advisable for the enforcement of this agreement; and the undersigned agrees to execute and deliver to the Bank such powers of attorney, assignments or other instruments as may be requested by the Bank in order to enable the Bank to enforce any and all claims upon or with respect to any or all indebtedness of the Borrower to the undersigned, and to collect and receive any and all

payments or distributions which may be payable or deliverable at any time upon or with respect to any such indebtedness of the Borrower to the undersigned.

*Receipt from the Borrower*

Should any payment or distribution or security or proceeds thereof be received by the undersigned on account of said indebtedness of the Borrower to the undersigned prior to the satisfaction of all of said indebtedness of the Borrower to the Bank, the undersigned will forthwith deliver the same to the Bank in precisely the form received (except for the endorsement or assignment of the undersigned where necessary), for application on any indebtedness, due or not due, of the Borrower to the Bank, and, until so delivered, the same shall be held in trust by the undersigned as property of the Bank. In the event of the failure of the undersigned to make any such endorsement or assignment, the Bank, or any of its officers or employees, are hereby irrevocably authorized to make the same.

*Non-assignment*

The undersigned agrees not to assign or transfer to others any claim the undersigned has or may have against the Borrower while any indebtedness of the Borrower to the Bank remains unpaid, unless such assignment or transfer is made expressly subject to this agreement. This agreement shall extend to and bind the respective successors, assigns, heirs, executors and administrators of the parties hereto, and the covenants of undersigned and Borrower respecting subordination of the claims of undersigned in favor of Bank shall extend to, include and be enforceable by any transferee or endorsee of Bank of any of its claim or claims.

*Continuing Agreement*

This is a continuing agreement of subordination and the Bank may continue, without notice to the undersigned, to extend credit or other accommodation or benefit and loan moneys to or for the account of the Borrower on the faith hereof until written notice of revocation of this agreement shall be lodged with the Bank by the undersigned at the Flushing Office of the Bank located at 40-14/16 Main Street, Flushing, New York 11354. Such notice of revocation, shall not affect this agreement in relation to any obligations or liabilities of the Borrower then existing or any obligations or liabilities created thereafter pursuant to any previous commitment of the Bank to the Borrower, or any extensions or renewals of any such obligations or liabilities, and as to all such obligations and liabilities and extensions or renewals thereof, this agreement shall continue effective until the same shall have been fully discharged with interest.

It is agreed that the Bank, at any time and from time to time, either before or after any such notice of revocation, may enter into such agreement or agreements with the Borrower as the Bank may deem proper extending the time of payment of or renewing or otherwise altering the terms of all or any of the obligations of the Borrower to the Bank or affecting the security underlying any or all of such obligations, or may exchange, sell or surrender or otherwise deal with any such security, or may release any balance of funds of the Borrower with the Bank, without notice to the undersigned, and without in any way impairing or affecting this agreement thereby.

The undersigned consents and agrees that all obligations and liabilities of the Borrower to the Bank shall be deemed to have been made or incurred at the request of the undersigned and in reliance upon this agreement, and the undersigned further agrees that in the event that the Borrower is a

2

partnership this agreement shall not be affected by any change which shall arise from accession of one or more partners to the Borrower or from the death or retirement of any partner or partners of the Borrower.

*Waiver*

No waiver shall be deemed to be made by the Bank of any of its rights hereunder unless the same shall be in writing signed on behalf of the Bank, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Bank or the obligations of the undersigned to the Bank in any other respect at any other time.

*Evidence of Subordination*

Borrower and undersigned both agree that any existing evidence of indebtedness of Borrower to the undersigned or any subsequent evidence of any such existing or future indebtedness shall contain or be stamped with a statement referring to the existence of this agreement.

*Waiver of Statute of Limitations*

The obligation of Borrower and undersigned hereunder shall continue irrespective of, and Borrower and undersigned hereby waive, so far as the law permits, any existing or any future statute of limitations applicable to this agreement or applicable to the enforcement of indebtedness and liability of the Borrower, and any collateral therefor or guarantees thereof.

Notice of acceptance of this agreement is hereby waived, and this agreement shall be immediately binding upon the undersigned, and the executors, administrators, successors and assigns of the undersigned.

This Subordination Agreement has been duly authorized by the Board of Directors of the undersigned; and if necessary by the stockholders of the undersigned.

This agreement shall be construed according to the laws of the State of New York.

IN WITNESS WHEREOF, this instrument has been signed and sealed on this 30th day of September, 2001.

SUMMIT ENGINEERING LIMITED
The Creditor Corporation

*For and on behalf of*
**SUMMIT ENGINEERING LIMITED**
鴻 峰 工 程 有 限 公 司

ATTEST: _____

By: _____
                    *Authorized Signature(s)*

Name: SO Katherine
Title: Chartered Secretary

Name: LI Fat Chung
Title: Authorized Person

(Corporate Seal)

ACKNOWLEDGEMENT

We hereby acknowledge receipt of a copy of the foregoing Subordination Agreement; and agree that we will not pay any indebtedness owing by us to said **SUMMIT ENGINEERING LIMITED** except as in the foregoing agreement provided. In the event of a breach by either said **SUMMIT ENGINEERING LIMITED** or ourselves of any of the provisions of the foregoing agreement, all of our obligations and liabilities to the Bank shall, without notice or demand, become immediately due and payable unless the Bank shall otherwise elect.

UNITED ALUMINUM DOOR INC.,
The Borrower

Name: _____

SUMMIT ENGINEERING LIMITED
The Creditor Company subordinating debt

*For and on behalf of*
**SUMMIT ENGINEERING LIMITED**
鴻 峰 工 程 有 限 公 司

By: _____
                    *Authorized Signature(s)*
Name: LI Fat Chung
Title: Authorized Person

# EXHIBIT L

# CERTIFIED CORPORATE RESOLUTION

## OF

## SUMMIT ENGINEERING LIMITED

The undersigned, Secretary of **SUMMIT ENGINEERING LIMITED** (the "Corporation"), **DOES HEREBY CERTIFY THAT:**

1.    By a Written Resolution of Directors of the above mentioned Corporation, duly signed on the 30th day of September, 2001, in which the Board of Directors unanimously adopted the following resolution, which has not been modified or rescinded and is in full force and effect on the date of this Certificate:

**RESOLVED,** that the Corporation execute and deliver to CATHAY BANK, FLUSHING OFFICE (the "Bank"), a Subordination Agreement in the amount of $1,000,000.00; and that Anda Ventures Limited, Chairman of the Corporation, and Stable Corporate Services Limited, Secretary of Corporation, be and each of them hereby is authorized and directed for and in the name and on behalf of the Corporation, to execute and deliver the Subordination Agreement, as they may deem proper and advisable, and to affix the seal of the Corporation thereto.

**RESOLVED FURTHER,** that appearing below is the name of the authorized person of the Corporation, along with his genuine and authentic specimen signature, who is authorized signatory on behalf of the Corporation and who is authorized and empowered to take any and all necessary and appropriate actions in relation to the Subordination Agreement contemplated thereby.

**Authorized Person**                                    **Signature**

LI Fat Chung

*For and on behalf of*
STABLE CORPORATE SERVICES LIMITED
恒 產 拉 專 顧 問 有 限 公 司
*Authorized Signature(s)*

Name: Stable Corporate Services Limited
Title: Company Secretary

Company No. : 708457

**SUMMIT ENGINEERING LIMITED**

鴻峰工程有限公司

---

**WRITTEN RESOLUTION OF THE BOARD OF DIRECTORS** made pursuant to Article 15 of the Articles of Association of the abovenamed Company:-

---

<u>SUBORDINATION AGREEMENT</u>

Resolved that the Corporation execute and deliver to CATHAY BANK, FLUSHING OFFICE (the "Bank"), a Subordination Agreement in the amount of $1,000,000.00; and that Anda Ventures Limited, Chairman of the Corporation, and Stable Corporate Services Limited, Secretary of Corporation, be and each of them hereby is authorized and directed for and in the name and on behalf of the Corporation, to execute and deliver the Subordination Agreement, as they may deem proper and advisable, and to affix the seal of the Corporation thereto

Further resolved that appearing below is the name of the authorized person of the Corporation, along with his genuine and authentic specimen signature, who is authorized signatory on behalf of the Corporation and who is authorized and empowered to take any and all necessary and appropriate actions in relation to the Subordination Agreement contemplated thereby.

| **Authorized Person** | **Signature** |
|---|---|
| LI Fat Chung | |

Dated: 30 September 2001

For and on behalf of
ANDA VENTURES LIMITED

.........................................................
Authorized Signature(s)

---
Anda Ventures Limited

For and on behalf of
BEAUFORT ALTERNATIVE LIMITED

.........................................................
Authorized Signature(s)

---
Beaufort Alternative Limited