# EXHIBIT T

## NEGATIVE PLEDGE AGREEMENT

**THIS AGREEMENT,** dated as of ~~August~~ *September* *15* , 2000 is entered into between **WAH WOON TAM a/k/a WAYNE TAM,** residing at 90 West Broadway, 5th Floor, New York, New York 10007 (hereinafter called the "Guarantor") to **CATHAY BANK, FLUSHING OFFICE,** having its principal place of business at 40-14/16 Main Street, Flushing, New York 11354 (hereinafter, together with its successors and assigns hereunder called the "Bank").

## W I T N E S S E T H:

**WHEREAS, UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal place of business at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") intends to borrow from the Bank a revolving credit facility in the aggregate principal sum of **ONE MILLION FIVE HUNDRED THOUSAND and 00/100 ($1,500,000.00) DOLLARS** (the "Credit Facility") pursuant to that certain Credit Agreement dated September *15* , 2000, between the Borrower and the Bank (as may further be amended, supplemented or otherwise modified from time to time, collectively the "Credit Agreement"); and

**WHEREAS,** one such condition is that the Guarantor not to grant, or suffer the existence, of any security interests, mortgages, pledges, liens or like encumbrances (collectively the "Encumbrances") to, or by, any individual, partnership, company, corporation, trust, association, Governmental Authority (i.e. the Federal Government, any foreign government, any state or municipal government or any subdivision thereof, and any bureau, department, authority, agency or similar entity of any of the foregoing) or other entity (collectively the "Persons").

**NOW, THEREFORE,** in consideration of any such credit extensions, and for other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:

1.     The Guarantor will not, except as provided in Section 2 below, directly or indirectly, so long as he is obligated to the Bank under the Credit Agreement create, or permit any encumbrance to exist, on or against or with respect to any of his now owned personal and real properties as listed in Schedule A (the "Property"). **Any breach of this Agreement shall constitute an Event of Default under the Credit Agreement.**

2.     Notwithstanding anything to the contrary contained in Section 1, above, the following Encumbrances are permitted:

(a)     Deposits or pledges to secure bids, tenders, contracts (other than contracts for the payment of money), leases, statutory obligations, surety and appeal bonds and other like obligations arising in the ordinary course of the business of the Guarantor.

1

(b)    The Encumbrances incidental to the conduct of the Guarantor's business or ownership of the respective present and future Property which were not incurred in connection with any borrowing or the obtaining of advances of credit and which do not in the aggregate prejudice nor materially detract from the rights of the Bank pursuant to the negative covenant created by this Agreement or the value of the present and future Property of the Guarantor,  and which do not materially impair the use thereof in the operation of the Guarantor's business.

(c)    The Encumbrances created after the date hereof or existing on the Property or assets acquired after the date hereof and created otherwise than in contemplation of such acquisition, but only if any such Encumbrance is created with the prior written consent of the Bank.

(d)    The Encumbrances placed upon tangible Property or assets hereinafter acquired to secure a portion of the purchase price thereof, provided that any such Encumbrance shall not encumber any other Property of the Guarantor.

3.    Effective immediately upon breach hereof, whether the Bank has or has not knowledge of such breach, the Bank shall have a security interest in, or mortgage on, all of the Guarantor's Property, including without limitation, the Guarantor's  Equipment, Inventory, accounts, General Intangibles (as those terms are defined in the Uniform Commercial Code of New York) and to the fullest extent permitted by the applicable laws, real property interests.  In such event the Guarantor will take any and all action as the Bank may deem necessary or desirable to perfect or record such security interest or mortgage. The Bank is authorized to file this Agreement as a financing statement and/or to execute financing statements in the Guarantor's name. Such security interest or mortgage shall secure all obligations of the Guarantor  to the Bank under the Credit Agreement, and the Bank shall have all rights and remedies of a secured creditor, with respect to personalty, or a mortgagee with respect to realty.

4.    The Guarantor shall promptly notify the Bank in writing of the existence, or likely existence, of any Encumbrance not permitted in Section 2, above, providing the Bank with full information regarding such Encumbrance. The furnishing of such information shall not constitute a cure of such Encumbrance as constituting a breach of this Agreement and an Event of Default under the Credit Agreement.

5.    This Agreement shall be binding upon the Guarantor  and shall inure to the benefit of the Bank and its successors and assigns.

6.    This Agreement shall be interpreted and governed by the laws of the State where the Property is located or where proper jurisdiction may be obtained, including, but not limited to, the State of New York, as the same may from time to time be in effect.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the date first written above.

BANK:

CATHAY BANK, FLUSHING OFFICE

By: _____

PIN TAI, General Manager

GUARANTOR:

_____

WAH WOON TAM   a/k/a
WAYNE TAM

3

## SCHEDULE A

1.    90 West Broadway #5A, New York, New York 10007
      Block          Lot          , County of New York

2.    2227 Route 55, White Lake, New York
      Block          Lot          , County of

# EXHIBIT U

{00339189.DOC;1}

## PARTIAL GUARANTY OF PAYMENT

**THIS GUARANTY**, made as of this _2nd_ day of May, 2005, by **JEN-HAO MAO**, residing at 96 Schermerhorn #5C, Brooklyn, New York 11201 (hereinafter called the "Guarantor") to **CATHAY BANK, NEW YORK REGION**, having its principal office at 40-14 Main Street, Flushing, New York 11354 (hereinafter, together with its successors and assigns hereunder called the "Bank");

### W I T N E S S E T H :

**WHEREAS, UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal office at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") is indebted to the Bank for a revolving credit facility in the aggregate principal sum of **THREE MILLION FIVE HUNDRED THOUSAND and 00/100 ($3,500,000.00) DOLLARS** (the "Credit Facility") pursuant to the Credit Agreement dated September 15, 2000, between the Borrower and the Bank, which was subsequently modified from time to time (as the same may be further amended, extended, supplemented or otherwise modified from time to time, the "Credit Agreement"), which Credit Facility is evidenced by the Amended and Restated Revolving Note, May _2nd_, 2005 , made by the Borrower to the Bank in the principal sum of $3,500,000.00 (the "Note"), a copy of which is attached hereto and made a part hereof; and

**WHEREAS**, the Bank is willing to make the Credit Facility to the Borrower only if the Guarantor executes and delivers this Guaranty to the Bank of the Debt (as herein defined) in the manner hereinafter provided.

**NOW, THEREFORE**, in consideration of good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce the Bank to make the Credit Facility to the Borrower, the Guarantor hereby guarantees, absolutely and unconditionally, to the Bank the prompt and complete payment of the Debt and covenants and agrees with the Bank as follows:

The term "Debt" as used in this Guaranty shall mean all principal, interest, additional interest and other sums of any nature whatsoever which may or shall become due and payable pursuant to the provisions of the Note, the Credit Agreement or any other document now or hereafter executed and delivered in connection therewith.

The term "Principal Balance" as used in this Guaranty, shall mean the aggregate outstanding principal balance of the Note from time to time.

The term "Guaranteed Portion of the Principal Balance" as used in this Guaranty, shall mean the lesser of (a) **$3,150,000.00**, or (b) the entire outstanding Principal Balance.

The Guarantor agrees that no portion of any sums applied, from time to time, in reduction of the outstanding Principal Balance shall be deemed to have been applied in reduction of the

1

Guaranteed Portion of the Principal Balance until such time as the portion of the outstanding Principal Balance (other than the Guaranteed Portion of the Principal Balance) has been paid in full, it being the intention hereof that the Guaranteed Portion of the Principal balance shall be the last portion of the Principal Balance to be paid and that this Guaranty shall remain in full force and effect and shall not be deemed discharged until the earlier to occur of (a) the date upon which the entire Debt has been paid in full or (b) the date upon which all of the obligations and liabilities of the Guarantor hereunder have been fully performed and discharged by the Guarantor in accordance with the provisions of this Guaranty.

The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

The Guarantor hereby consents that from time to time, before or after any default by the Borrower, with or without further notice to or assent from the Guarantor, any security at any time held by or available to the Bank for any obligation of the Borrower, or any security at any time held by or available to the Bank for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Debt, may be exchanged, surrendered or released and any obligation of the Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and the Bank may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of the Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to the Borrower, and generally deal with the Borrower or any such security or other person or guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

In addition to its rights and interests as hereinabove set forth, the Bank, at its option, may at any time and from time to time, with or without notice to the Guarantor, appropriate and apply to the payment or reduction in whole or in part of the Debt, on and after the Expiration Date (as set forth in the Credit Agreement), and all moneys, securities, commercial paper, certificates of deposit, stocks, bonds, notes or other assets or security in any form whatsoever now or hereafter on deposit with or otherwise held by the Bank to the credit of or belonging to the Guarantor (hereinafter referred to as the "Collateral"), it being understood and agreed that the Bank shall not be obligated to assert or enforce any rights or the security interest hereunder or to take any action in reference thereto. Any cash held by the Bank as collateral and all cash proceeds received by the Bank in respect of interest or other distributions from, payment of, collection from, sale or exchange of, or other realization upon, all or any part of the Collateral may, in the discretion of the Bank, continue to be held by the Bank as part of the Collateral or may then and/or at any time thereafter, be applied in whole or in part by the Bank in payment of the Debt, in such order as the Bank shall desire. The Bank, in its discretion, at any time and from time to time, may release or relinquish its rights, remedies or the security interest hereunder as to any particular item of the Collateral without thereby affecting or invalidating its rights, remedies and security interest hereunder as to any other item of

the Collateral.

All monies available to the Bank for application in payment or reduction of the Debt may be applied by the Bank in such manner and in such amounts and at such time or times and in such order and priority as the Bank may see fit to the payment or reduction of such portion of the Debt as the Bank may elect.

The Guarantor hereby waives (a) notice of acceptance of this Guaranty and of the making of the Credit Facility by the Bank to the Borrower; (b) presentment and demand for payment of the Debt or any portion thereof; (c) protest and notice of dishonor or default to the Guarantor or to any other person or party with respect to the Debt or any portion thereof; and (d) all other notices to which the Guarantor might otherwise be entitled.

This is a guaranty of payment and not of collection and the Guarantor further waives any right to require that any action be brought against the Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of the Bank in favor of the Borrower or any other person or party.

Each reference herein to the Bank shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the Guarantor, all of whom shall mean the "Guarantor or either of them".

No delay on the part of the Bank in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the Guarantor shall be deemed to be a waiver of the obligation of the Guarantor or of the right of the Bank to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which given.

Notwithstanding any payments made by the Guarantor pursuant to the provisions of this Guaranty, the Guarantor shall have no right of subrogation in and to the Credit Agreement, the Note or any other security held by or available to the Bank for the Debt or the payment thereof until all sums due to the Bank pursuant to the Credit Agreement and the Note have been paid in full to the Bank.

This is a continuing guaranty and shall remain in full force and effect (even though from time to time no Debt may be outstanding) until written notice of its termination signed by the Guarantor shall have been delivered to the Bank, but such termination shall in no way release, modify, or affect the liability of the Guarantor hereunder as to any and all Debts existing at the time such notice shall have been received by the Bank and as to such renewals and extensions of such then existing Debt or any parts thereof as the Bank may thereafter pursuant to the provisions hereof from time to time (and as often as the Bank may desire) in its sole discretion elect to grant to the Borrower, and as to such Debt and such renewals and extensions all of the provisions of this Guaranty shall be as

3

operative and effective as if such notice of termination had never been given. The death of the Guarantor shall in no way modify or affect any of the provisions of this Guaranty and the same shall continue in full force and effect to the same extent as if the Guarantor had continued alive; but the personal representative(s) of the Guarantor may at any time give to the Bank the same notice of termination which the Guarantor might have given if alive and such notice shall have the same effect (and no more) as if the Guarantor were then alive and had given such notice at the time it was actually given by his personal representative(s).

This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The Guarantor agrees to submit to personal jurisdiction in the City and State of New York in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the Guarantor hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the Guarantor in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Guarantor by registered mail to or by personal service at the last known addresses of the Guarantor, whether such addresses be within or without the jurisdiction of any such court.

The Guarantor hereby irrevocably submits to the non-exclusive jurisdiction of the Federal and State courts in the City and State of New York. Nothing herein shall affect the right of the Bank to bring any action or proceeding against the Guarantor in the courts of any other jurisdiction in which he has assets or a place of business or in any other courts of competent jurisdiction.

**The Guarantor hereby waives, to the fullest extent permitted by applicable law, any right he may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Guaranty or the transactions contemplated hereby in which the Bank shall be an adverse party, and the Guarantor, in addition, waives the right to interpose any defense based upon any statute of limitations or any claim of laches and any set-off or counterclaim of any nature or description in any such litigation.**

The Guarantor shall submit to the Bank, as soon as practicable, but in any event within **30 days** before the Expiration Date of the Credit Facility, the updated and signed copy of the personal financial statement and the signed copy of the most currently filed personal income tax return within **15 days** after filing in each year.

4

**IN WITNESS WHEREOF**, this Guaranty of Payment has been duly executed as of the day and year first above written.

GUARANTOR:

JEN-HAO MAO

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF   QUEENS   )

On the *2nd* day of May, in the year 2005, before me, the undersigned, personally came JEN-HAO MAO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

SEE YUN CHAN
Notary Public - State of New York
No. CH61093
Qualified in Queens County
My Commission Expires       2007

5

# EXHIBIT V

## NEGATIVE PLEDGE AGREEMENT

**THIS AGREEMENT,** dated as of September   15   , 2000 is entered into between **JEN-HAO MAO,** residing at 96 Schermerhorn #5C, Brooklyn, New York 11201 (hereinafter called the "Guarantor") to **CATHAY BANK, FLUSHING OFFICE,** having its principal place of business at 40-14/16 Main Street, Flushing, New York 11354 (hereinafter, together with its successors and assigns hereunder called the "Bank").

## W I T N E S S E T H:

**WHEREAS, UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal place of business at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") intends to borrow from the Bank a revolving credit facility in the aggregate principal sum of **ONE MILLION FIVE HUNDRED THOUSAND and 00/100 ($1,500,000.00) DOLLARS** (the "Credit Facility") pursuant to that certain  Credit Agreement dated September 15   , 2000, between the Borrower and the Bank  (as may further be amended, supplemented or otherwise modified from time to time, collectively the "Credit Agreement"); and

**WHEREAS,** one such condition is that the Guarantor not to grant, or suffer the existence, of any security interests, mortgages, pledges, liens or like encumbrances (collectively the "Encumbrances") to, or by, any individual, partnership, company, corporation, trust, association, Governmental Authority (i.e. the Federal Government, any foreign government, any state or municipal government or any subdivision thereof, and any bureau, department, authority, agency or similar entity of any of the foregoing) or other entity (collectively the "Persons").

**NOW, THEREFORE,** in consideration of any such credit extensions, and for other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:

1.    The Guarantor  will not, except as provided in Section 2 below, directly or indirectly, so long as he is obligated to the Bank under the Credit Agreement create, or permit any encumbrance to exist, on or against or with respect to any of his now owned  personal and real properties as listed in Schedule A (the "Property").  **Any breach of this Agreement shall constitute an Event of Default under the Credit Agreement.**

2.    Notwithstanding anything to the contrary contained in Section 1, above, the following Encumbrances are permitted:

(a)    Deposits or pledges to secure bids, tenders, contracts (other than contracts for the payment of money), leases, statutory obligations, surety and appeal bonds and other like obligations arising in the ordinary course of the business of the Guarantor.

1

(b)     The Encumbrances incidental to the conduct of the Guarantor's business or ownership of the respective present and future Property which were not incurred in connection with any borrowing or the obtaining of advances of credit and which do not in the aggregate prejudice nor materially detract from the rights of the Bank pursuant to the negative covenant created by this Agreement or the value of the present and future Property of the Guarantor, and which do not materially impair the use thereof in the operation of the Guarantor's business.

(c)     The Encumbrances created after the date hereof or existing on the Property or assets acquired after the date hereof and created otherwise than in contemplation of such acquisition, but only if any such Encumbrance is created with the prior written consent of the Bank.

(d)     The Encumbrances placed upon tangible Property or assets hereinafter acquired to secure a portion of the purchase price thereof, provided that any such Encumbrance shall not encumber any other Property of the Guarantor.

3.     Effective immediately upon breach hereof, whether the Bank has or has not knowledge of such breach, the Bank shall have a security interest in, or mortgage on, all of the Guarantor's Property, including without limitation, the Guarantor's Equipment, Inventory, accounts, General Intangibles (as those terms are defined in the Uniform Commercial Code of New York) and to the fullest extent permitted by the applicable laws, real property interests. In such event the Guarantor will take any and all action as the Bank may deem necessary or desirable to perfect or record such security interest or mortgage. The Bank is authorized to file this Agreement as a financing statement and/or to execute financing statements in the Guarantor's name. Such security interest or mortgage shall secure all obligations of the Guarantor to the Bank under the Credit Agreement, and the Bank shall have all rights and remedies of a secured creditor, with respect to personalty, or a mortgagee with respect to realty.

4.     The Guarantor shall promptly notify the Bank in writing of the existence, or likely existence, of any Encumbrance not permitted in Section 2, above, providing the Bank with full information regarding such Encumbrance. The furnishing of such information shall not constitute a cure of such Encumbrance as constituting a breach of this Agreement and an Event of Default under the Credit Agreement.

5.     This Agreement shall be binding upon the Guarantor and shall inure to the benefit of the Bank and its successors and assigns.

6.     This Agreement shall be interpreted and governed by the laws of the State where the Property is located or where proper jurisdiction may be obtained, including, but not limited to, the State of New York, as the same may from time to time be in effect.

2

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the date first written above.

BANK:

CATHAY BANK, FLUSHING OFFICE

By: _____

PIN TAI, General Manager

GUARANTOR:

_____

JEN-HAO MAO

## SCHEDULE A

1.    96 Schermerhorn #5C, Brooklyn, New York 11201
      Block          Lot          , County of Kings

2.    1205 Seifert Road, Bushkill, Pennsylvania 18964
      Block          Lot          , County of

4

# EXHIBIT W

## PARTIAL GUARANTY OF PAYMENT

**THIS GUARANTY,** made as of this _2nd_ day of May, 2005, by **SANDY LIANG,** residing at 24 Eugene Street, Melville, New York 11747 (hereinafter called the "Guarantor") to **CATHAY BANK, NEW YORK REGION,** having its principal office at 40-14 Main Street, Flushing, New York 11354 (hereinafter, together with its successors and assigns hereunder called the "Bank");

### W I T N E S S E T H :

**WHEREAS, UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal office at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") is indebted to the Bank for a revolving credit facility in the aggregate principal sum of **THREE MILLION FIVE HUNDRED THOUSAND and 00/100 ($3,500,000.00) DOLLARS** (the "Credit Facility") pursuant to the Credit Agreement dated September 15, 2000, between the Borrower and the Bank, which was subsequently modified from time to time (as the same may be further amended, extended, supplemented or otherwise modified from time to time, the "Credit Agreement"), which Credit Facility is evidenced by the Amended and Restated Revolving Note, May , 2005 , made by the Borrower to the Bank in the principal sum of $3,500,000.00 (the "Note"), a copy of which is attached hereto and made a part hereof; and

**WHEREAS,** the Bank is willing to make the Credit Facility to the Borrower only if the Guarantor executes and delivers this Guaranty to the Bank of the Debt (as herein defined) in the manner hereinafter provided.

**NOW, THEREFORE,** in consideration of good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce the Bank to make the Credit Facility to the Borrower, the Guarantor hereby guarantees, absolutely and unconditionally, to the Bank the prompt and complete payment of the Debt and covenants and agrees with the Bank as follows:

The term "Debt" as used in this Guaranty shall mean all principal, interest, additional interest and other sums of any nature whatsoever which may or shall become due and payable pursuant to the provisions of the Note, the Credit Agreement or any other document now or hereafter executed and delivered in connection therewith.

The term "Principal Balance" as used in this Guaranty, shall mean the aggregate outstanding principal balance of the Note from time to time.

The term "Guaranteed Portion of the Principal Balance" as used in this Guaranty, shall mean the lesser of (a) **$3,150,000.00**, or (b) the entire outstanding Principal Balance.

The Guarantor agrees that no portion of any sums applied, from time to time, in reduction of the outstanding Principal Balance shall be deemed to have been applied in reduction of the

1

Guaranteed Portion of the Principal Balance until such time as the portion of the outstanding Principal Balance (other than the Guaranteed Portion of the Principal Balance) has been paid in full, it being the intention hereof that the Guaranteed Portion of the Principal balance shall be the last portion of the Principal Balance to be paid and that this Guaranty shall remain in full force and effect and shall not be deemed discharged until the earlier to occur of (a) the date upon which the entire Debt has been paid in full or (b) the date upon which all of the obligations and liabilities of the Guarantor hereunder have been fully performed and discharged by the Guarantor in accordance with the provisions of this Guaranty.

The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

The Guarantor hereby consents that from time to time, before or after any default by the Borrower, with or without further notice to or assent from the Guarantor, any security at any time held by or available to the Bank for any obligation of the Borrower, or any security at any time held by or available to the Bank for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Debt, may be exchanged, surrendered or released and any obligation of the Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and the Bank may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of the Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to the Borrower, and generally deal with the Borrower or any such security or other person or guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

In addition to its rights and interests as hereinabove set forth, the Bank, at its option, may at any time and from time to time, with or without notice to the Guarantor, appropriate and apply to the payment or reduction in whole or in part of the Debt, on and after the Expiration Date (as set forth in the Credit Agreement), and all moneys, securities, commercial paper, certificates of deposit, stocks, bonds, notes or other assets or security in any form whatsoever now or hereafter on deposit with or otherwise held by the Bank to the credit of or belonging to the Guarantor (hereinafter referred to as the "Collateral"), it being understood and agreed that the Bank shall not be obligated to assert or enforce any rights or the security interest hereunder or to take any action in reference thereto. Any cash held by the Bank as collateral and all cash proceeds received by the Bank in respect of interest or other distributions from, payment of, collection from, sale or exchange of, or other realization upon, all or any part of the Collateral may, in the discretion of the Bank, continue to be held by the Bank as part of the Collateral or may then and/or at any time thereafter, be applied in whole or in part by the Bank in payment of the Debt, in such order as the Bank shall desire. The Bank, in its discretion, at any time and from time to time, may release or relinquish its rights, remedies or the security interest hereunder as to any particular item of the Collateral without thereby affecting or invalidating its rights, remedies and security interest hereunder as to any other item of

2

the Collateral.

All monies available to the Bank for application in payment or reduction of the Debt may be applied by the Bank in such manner and in such amounts and at such time or times and in such order and priority as the Bank may see fit to the payment or reduction of such portion of the Debt as the Bank may elect.

The Guarantor hereby waives (a) notice of acceptance of this Guaranty and of the making of the Credit Facility by the Bank to the Borrower; (b) presentment and demand for payment of the Debt or any portion thereof; (c) protest and notice of dishonor or default to the Guarantor or to any other person or party with respect to the Debt or any portion thereof; and (d) all other notices to which the Guarantor might otherwise be entitled.

This is a guaranty of payment and not of collection and the Guarantor further waives any right to require that any action be brought against the Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of the Bank in favor of the Borrower or any other person or party.

Each reference herein to the Bank shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the Guarantor, all of whom shall mean the "Guarantor or either of them".

No delay on the part of the Bank in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the Guarantor shall be deemed to be a waiver of the obligation of the Guarantor or of the right of the Bank to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which given.

Notwithstanding any payments made by the Guarantor pursuant to the provisions of this Guaranty, the Guarantor shall have no right of subrogation in and to the Credit Agreement, the Note or any other security held by or available to the Bank for the Debt or the payment thereof until all sums due to the Bank pursuant to the Credit Agreement and the Note have been paid in full to the Bank.

This is a continuing guaranty and shall remain in full force and effect (even though from time to time no Debt may be outstanding) until written notice of its termination signed by the Guarantor shall have been delivered to the Bank, but such termination shall in no way release, modify, or affect the liability of the Guarantor hereunder as to any and all Debts existing at the time such notice shall have been received by the Bank and as to such renewals and extensions of such then existing Debt or any parts thereof as the Bank may thereafter pursuant to the provisions hereof from time to time (and as often as the Bank may desire) in its sole discretion elect to grant to the Borrower, and as to such Debt and such renewals and extensions all of the provisions of this Guaranty shall be as

3

operative and effective as if such notice of termination had never been given. The death of the Guarantor shall in no way modify or affect any of the provisions of this Guaranty and the same shall continue in full force and effect to the same extent as if the Guarantor had continued alive; but the personal representative(s) of the Guarantor may at any time give to the Bank the same notice of termination which the Guarantor might have given if alive and such notice shall have the same effect (and no more) as if the Guarantor were then alive and had given such notice at the time it was actually given by her personal representative(s).

This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The Guarantor agrees to submit to personal jurisdiction in the City and State of New York in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the Guarantor hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the Guarantor in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Guarantor by registered mail to or by personal service at the last known addresses of the Guarantor, whether such addresses be within or without the jurisdiction of any such court.

The Guarantor hereby irrevocably submits to the non-exclusive jurisdiction of the Federal and State courts in the City and State of New York. Nothing herein shall affect the right of the Bank to bring any action or proceeding against the Guarantor in the courts of any other jurisdiction in which she has assets or a place of business or in any other courts of competent jurisdiction.

**The Guarantor hereby waives, to the fullest extent permitted by applicable law, any right she may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Guaranty or the transactions contemplated hereby in which the Bank shall be an adverse party, and the Guarantor, in addition, waives the right to interpose any defense based upon any statute of limitations or any claim of laches and any set-off or counterclaim of any nature or description in any such litigation.**

The Guarantor shall submit to the Bank, as soon as practicable, but in any event within **30 days** before the Expiration Date of the Credit Facility, the updated and signed copy of the personal financial statement and the signed copy of the most currently filed personal income tax return within **15 days** after filing in each year.

**IN WITNESS WHEREOF,** this Guaranty of Payment has been duly executed as of the day and year first above written.

GUARANTOR:

_____

SANDY LIANG

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF  QUEENS    )

On the 2nd day of May, in the year 2005 before me, the undersigned, personally came SANDY LIANG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

HE YUN CHAN
blic - State of New York
CH6000
Queens
07

5

# EXHIBIT X

## NEGATIVE PLEDGE AGREEMENT

**THIS AGREEMENT,** dated as of September    15    , 2000 is entered into between **SANDY LIANG,** residing at 24 Eugene Street, Melville, New York 11747 (hereinafter called the "Guarantor") to **CATHAY BANK, FLUSHING OFFICE,** having its principal place of business at 40-14/16 Main Street, Flushing, New York 11354 (hereinafter, together with its successors and assigns hereunder called the "Bank").

### WITNESSETH:

**WHEREAS, UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal place of business at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") intends to borrow from the Bank a revolving credit facility in the aggregate principal sum of **ONE MILLION FIVE HUNDRED THOUSAND and 00/100 ($1,500,000.00) DOLLARS** (the "Credit Facility") pursuant to that certain Credit Agreement dated September    15    , 2000, between the Borrower and the Bank  (as may further be amended, supplemented or otherwise modified from time to time, collectively the "Credit Agreement"); and

**WHEREAS,** one such condition is that the Guarantor not to grant, or suffer the existence, of any security interests, mortgages, pledges, liens or like encumbrances (collectively the "Encumbrances") to, or by, any individual, partnership, company, corporation, trust, association, Governmental Authority (i.e. the Federal Government, any foreign government, any state or municipal government or any subdivision thereof, and any bureau, department, authority, agency or similar entity of any of the foregoing) or other entity (collectively the "Persons").

**NOW, THEREFORE,** in consideration of any such credit extensions, and for other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:

1.    The Guarantor  will not, except as provided in Section 2 below, directly or indirectly, so long as she is obligated to the Bank under the Credit Agreement create, or permit any encumbrance to exist, on or against or with respect to any of his now owned  personal and real properties as listed in Schedule A (the "Property"). **Any breach of this Agreement shall constitute an Event of Default under the Credit Agreement.**

2.    Notwithstanding anything to the contrary contained in Section 1, above, the following Encumbrances are permitted:

(a)    Deposits or pledges to secure bids, tenders, contracts (other than contracts for the payment of money), leases, statutory obligations, surety and appeal bonds and other like obligations arising in the ordinary course of the business of the Guarantor.

1

(b)    The Encumbrances incidental to the conduct of the Guarantor's business or ownership of the respective present and future Property which were not incurred in connection with any borrowing or the obtaining of advances of credit and which do not in the aggregate prejudice nor materially detract from the rights of the Bank pursuant to the negative covenant created by this Agreement or the value of the present and future Property of the Guarantor,  and which do not materially impair the use thereof in the operation of the Guarantor's business.

(c)    The Encumbrances created after the date hereof or existing on the Property or assets acquired after the date hereof and created otherwise than in contemplation of such acquisition, but only if any such Encumbrance is created with the prior written consent of the Bank.

(d)    The Encumbrances placed upon tangible Property or assets hereinafter acquired to secure a portion of the purchase price thereof, provided that any such Encumbrance shall not encumber any other Property of the Guarantor.

3.    Effective immediately upon breach hereof, whether the Bank has or has not knowledge of such breach, the Bank shall have a security interest in, or mortgage on, all of the Guarantor's Property, including without limitation, the Guarantor's  Equipment, Inventory, accounts, General Intangibles (as those terms are defined in the Uniform Commercial Code of New York) and to the fullest extent permitted by the applicable laws, real property interests.  In such event the Guarantor will take any and all action as the Bank may deem necessary or desirable to perfect or record such security interest or mortgage. The Bank is authorized to file this Agreement as a financing statement and/or to execute financing statements in the Guarantor's name. Such security interest or mortgage shall secure all obligations of the Guarantor  to the Bank under the Credit Agreement, and the Bank shall have all rights and remedies of a secured creditor, with respect to personalty, or a mortgagee with respect to realty.

4.    The Guarantor shall promptly notify the Bank in writing of the existence, or likely existence, of any Encumbrance not permitted in Section 2, above, providing the Bank with full information regarding such Encumbrance. The furnishing of such information shall not constitute a cure of such Encumbrance as constituting a breach of this Agreement and an Event of Default under the Credit Agreement.

5.    This Agreement shall be binding upon the Guarantor  and shall inure to the benefit of the Bank and its successors and assigns.

6.    This Agreement shall be interpreted and governed by the laws of the State where the Property is located or where proper jurisdiction may be obtained, including, but not limited to, the State of New York, as the same may from time to time be in effect.

2

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the date first written above.

BANK:

CATHAY BANK, FLUSHING OFFICE

By: _____

PIN TAI, General Manager

GUARANTOR:

_____
SANDY LIANG

3

## SCHEDULE A

1.    93-15 74th Place, Woodhaven, New York
      Block          Lot          , County of Queens

2.    24 Eugene Street, Melville, New York 11747
      Block          Lot          , County of

# EXHIBIT Y

## PARTIAL GUARANTY OF PAYMENT

THIS GUARANTY, made as of this *2nd* day of May, 2005, by KUO WIN LIU, residing at _575 Summit St., Englewood Cliff, NJ 07632_ (hereinafter called the "Guarantor") CATHAY BANK, NEW YORK REGION, having its principal office at 40-14 Main Street, Flushing, New York 11354 (hereinafter, together with its successors and assigns hereunder called the "Bank");

### WITNESSETH:

WHEREAS, UNITED ALUMINUM DOOR INC., a New York corporation, having its principal office at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") is indebted to the Bank for a revolving credit facility in the aggregate principal sum of **THREE MILLION FIVE HUNDRED THOUSAND and 00/100 ($3,500,000.00) DOLLARS** (the "Credit Facility") pursuant to the Credit Agreement dated September 15, 2000, between the Borrower and the Bank, which was subsequently modified from time to time (as the same may be further amended, extended, supplemented or otherwise modified from time to time, the "Credit Agreement"), which Credit Facility is evidenced by the Amended and Restated Revolving Note, May *2nd*, 2005, made by the Borrower to the Bank in the principal sum of $3,500,000.00 (the "Note"), a copy of which is attached hereto and made a part hereof; and

WHEREAS, the Bank is willing to make the Credit Facility to the Borrower only if the Guarantor executes and delivers this Guaranty to the Bank of the Debt (as herein defined) in the manner hereinafter provided.

NOW, THEREFORE, in consideration of good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce the Bank to make the Credit Facility to the Borrower, the Guarantor hereby guarantees, absolutely and unconditionally, to the Bank the prompt and complete payment of the Debt and covenants and agrees with the Bank as follows:

The term "Debt" as used in this Guaranty shall mean all principal, interest, additional interest and other sums of any nature whatsoever which may or shall become due and payable pursuant to the provisions of the Note, the Credit Agreement or any other document now or hereafter executed and delivered in connection therewith.

The term "Principal Balance" as used in this Guaranty, shall mean the aggregate outstanding principal balance of the Note from time to time.

The term "Guaranteed Portion of the Principal Balance" as used in this Guaranty, shall mean the lesser of (a) **$350,000.00**, or (b) the entire outstanding Principal Balance.

The Guarantor agrees that no portion of any sums applied, from time to time, in reduction of the outstanding Principal Balance shall be deemed to have been applied in reduction of the

1

Guaranteed Portion of the Principal Balance until such time as the portion of the outstanding Principal Balance (other than the Guaranteed Portion of the Principal Balance) has been paid in full, it being the intention hereof that the Guaranteed Portion of the Principal Balance shall be the last portion of the Principal Balance to be paid and that this Guaranty shall remain in full force and effect and shall not be deemed discharged until the earlier to occur of (a) the date upon which the entire Debt has been paid in full or (b) the date upon which all of the obligations and liabilities of the Guarantor hereunder have been fully performed and discharged by the Guarantor in accordance with the provisions of this Guaranty.

The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

The Guarantor hereby consents that from time to time, before or after any default by the Borrower, with or without further notice to or assent from the Guarantor, any security at any time held by or available to the Bank for any obligation of the Borrower, or any security at any time held by or available to the Bank for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Debt, may be exchanged, surrendered or released and any obligation of the Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and the Bank may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of the Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to the Borrower, and generally deal with the Borrower or any such security or other person or guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

In addition to its rights and interests as hereinabove set forth, the Bank, at its option, may at any time and from time to time, with or without notice to the Guarantor, appropriate and apply to the payment or reduction in whole or in part of the Debt, on and after the Expiration Date (as set forth in the Credit Agreement), and all moneys, securities, commercial paper, certificates of deposit, stocks, bonds, notes or other assets or security in any form whatsoever now or hereafter on deposit with or otherwise held by the Bank to the credit of or belonging to the Guarantor (hereinafter referred to as the "Collateral"), it being understood and agreed that the Bank shall not be obligated to assert or enforce any rights or the security interest hereunder or to take any action in reference thereto. Any cash held by the Bank as collateral and all cash proceeds received by the Bank in respect of interest or other distributions from, payment of, collection from, sale or exchange of, or other realization upon, all or any part of the Collateral may, in the discretion of the Bank, continue to be held by the Bank as part of the Collateral or may then and/or at any time thereafter, be applied in whole or in part by the Bank in payment of the Debt, in such order as the Bank shall desire. The Bank, in its discretion, at any time and from time to time, may release or relinquish its rights, remedies or the security interest hereunder as to any particular item of the Collateral without thereby affecting or invalidating its rights, remedies and security interest hereunder as to any other item of

the Collateral.

All monies available to the Bank for application in payment or reduction of the Debt may be applied by the Bank in such manner and in such amounts and at such time or times and in such order and priority as the Bank may see fit to the payment or reduction of such portion of the Debt as the Bank may elect.

The Guarantor hereby waives (a) notice of acceptance of this Guaranty and of the making of the Credit Facility by the Bank to the Borrower; (b) presentment and demand for payment of the Debt or any portion thereof; (c) protest and notice of dishonor or default to the Guarantor or to any other person or party with respect to the Debt or any portion thereof; and (d) all other notices to which the Guarantor might otherwise be entitled.

This is a guaranty of payment and not of collection and the Guarantor further waives any right to require that any action be brought against the Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of the Bank in favor of the Borrower or any other person or party.

Each reference herein to the Bank shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the Guarantor, all of whom shall mean the "Guarantor or either of them".

No delay on the part of the Bank in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the Guarantor shall be deemed to be a waiver of the obligation of the Guarantor or of the right of the Bank to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which given.

Notwithstanding any payments made by the Guarantor pursuant to the provisions of this Guaranty, the Guarantor shall have no right of subrogation in and to the Credit Agreement, the Note or any other security held by or available to the Bank for the Debt or the payment thereof until all sums due to the Bank pursuant to the Credit Agreement and the Note have been paid in full to the Bank.

This is a continuing guaranty and shall remain in full force and effect (even though from time to time no Debt may be outstanding) until written notice of its termination signed by the Guarantor shall have been delivered to the Bank, but such termination shall in no way release, modify, or affect the liability of the Guarantor hereunder as to any and all Debts existing at the time such notice shall have been received by the Bank and as to such renewals and extensions of such then existing Debt or any parts thereof as the Bank may thereafter pursuant to the provisions hereof from time to time (and as often as the Bank may desire) in its sole discretion elect to grant to the Borrower, and as to such Debt and such renewals and extensions all of the provisions of this Guaranty shall be as

3

operative and effective as if such notice of termination had never been given. The death of the Guarantor shall in no way modify or affect any of the provisions of this Guaranty and the same shall continue in full force and effect to the same extent as if the Guarantor had continued alive; but the personal representative(s) of the Guarantor may at any time give to the Bank the same notice of termination which the Guarantor might have given if alive and such notice shall have the same effect (and no more) as if the Guarantor were then alive and had given such notice at the time it was actually given by his personal representative(s).

This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The Guarantor agrees to submit to personal jurisdiction in the City and State of New York in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the Guarantor hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the Guarantor in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Guarantor by registered mail to or by personal service at the last known addresses of the Guarantor, whether such addresses be within or without the jurisdiction of any such court.

The Guarantor hereby irrevocably submits to the non-exclusive jurisdiction of the Federal and State courts in the City and State of New York. Nothing herein shall affect the right of the Bank to bring any action or proceeding against the Guarantor in the courts of any other jurisdiction in which he has assets or a place of business or in any other courts of competent jurisdiction.

**The Guarantor hereby waives, to the fullest extent permitted by applicable law, any right he may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Guaranty or the transactions contemplated hereby in which the Bank shall be an adverse party, and the Guarantor, in addition, waives the right to interpose any defense based upon any statute of limitations or any claim of laches and any set-off or counterclaim of any nature or description in any such litigation.**

The Guarantor shall submit to the Bank, as soon as practicable, but in any event within **30 days** before the Expiration Date of the Credit Facility, the updated and signed copy of the personal financial statement and the signed copy of the most currently filed personal income tax return within **15 days** after filing in each year.

4

**IN WITNESS WHEREOF**, this Guaranty of Payment has been duly executed as of the day and year first above written.

GUARANTOR:

KUO WIN LIU

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF QUEENS       )

On the 2 nd day of May, in the year 2005 before me, the undersigned, personally came KUO WIN LIU, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

XXIE YUN CHAN
Notary Public - State of New York
CH6100502
Queens
My Commission Expires ... 2007

5

# EXHIBIT Z

# CATHAY BANK

**BY: UPS NEXT DAY MAIL**

July 6, 2005

Mr. Wayne Tam
President
United Aluminum Door, Inc.
267 Vandervoort Avenue
Brooklyn, NY 11211

**Re: Short-Term Extension of Credit Facility for $3,500,000**

Dear Mr. Tam,

We advise you that you were in default under the Fourth Modification of Credit Agreement dated May 2, 2005 by reason of your failure to submit a complete copy of the CPA reviewed consolidated financial statements within 120 days after the fiscal year ended September 30, 2004. We are unable to renew the credit facility, but agree to extend the credit facility for an additional six months until November 30, 2005 when all outstanding under the credit facility must be repaid in full.

This letter is without prejudice to, and fully and specifically reserves, any and all of the rights and remedies of the Lender, at law and otherwise.

This letter shall not entitle you to any further notice, whether in connection with the aforesaid default or in connection with any other default, or noncompliance or otherwise.

Please sign and return this letter together with the attached extension agreement to indicate your understanding and acceptance of the foregoing.

We are pleased to be of assistance.


Yours sincerely,

CATHAY BANK
New York Region



By: _____          By: _____
Name: Peggy Chan                        Name: Pin Tai
Title:  First Vice President & Manager   Title:  Senior Vice President
                                                & Division Manager

40-14 Main Street, Flushing, New York 11354  •  Telephone (718) 886-5225  •  Facsimile (718) 961-9640

Accepted and agreed to
this _____ day of July, 2005

**Borrower: United Aluminum Door, Inc.**

By: _____
Name: Wayne Tam
Title:  President

**Guarantors:**

_____
Wayne Tam a/k/a Wah-Woon Tam

_____
Jen-Hao Mao

_____
Sandy Liang

_____
Kuo Win Liu

Very Tact International Inc.

By: _____
Name: Wayne Tam
Title:  President

Archivisions, Inc.

By: _____
Name: Wayne Tam
Title:  President