Philip T. Simpson, Esq. (PS-9707)
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
1345 Avenue of the Americas
New York, New York 10105-0143
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
CATHAY BANK,

                       Plaintiff,

   -against-

UNITED ALUMINUM DOOR INC., VERY-TACT
INTERNATIONAL, INC., ARCHIVISIONS, INC.,
WAH WOON TAM a/k/a WAYNE TAM, JEN-
HAO MAO, SANDY LIANG, KUO WIN LIU,

                       Defendants.
-----------------------------------------------------------------X

Civil Action No.: 07 CV 4152 (DC) (MHD)

ECF CASE

**COMPLAINT**

Plaintiff, by its attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C., alleges as follows:

### JURISDICTION

1.     This Court has original subject matter jurisdiction based on diversity of citizenship, 28 U.S.C. §1332, in that this action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.     Plaintiff Cathay Bank is a California corporation with its principal place of business at 800 West 6th Street, Los Angeles, California 90017.

{00293535.DOC;4}

3. Upon information and belief, defendant United Aluminum Door, Inc. is a New York corporation with offices at 267 Vandervoort Avenue, Brooklyn, New York 11211 (hereinafter referred to as "United Aluminum" or "Borrower").

4. Upon information and belief, defendant Very-Tact International, Inc. is a New York corporation with offices at 267 Vandervoort Avenue, Brooklyn, New York 11211 (hereinafter referred to as "Very-Tact").

5. Upon information and belief, defendant Archivisions, Inc. is a New York corporation with offices at 267 Vandervoort Avenue, Brooklyn, New York 11211 (hereinafter referred to as "Archivisions").

6. Upon information and belief, defendant Wah Woon Tam a/k/a Wayne Tam is an individual residing at 90 West Broadway, 5th Floor, New York, New York 10007 (hereinafter referred to as "Wayne Tam").

7. Upon information and belief, defendant Jen-Hao Mao is an individual residing at 96 Schermerhorn Street, #5C, Brooklyn, New York 11201.

8. Upon information and belief, defendant Sandy Liang is an individual residing at 24 Eugene Street, Melville, New York 11747.

9. Upon information and belief, defendant Kuo Win Liu is an individual residing at 575 Summit Street, Englewood Cliffs, New Jersey 07632 (defendants Very-Tact, Archivisions, Wayne Tam, Jen-Hao Mao, Sandy Liang, and Kuo Win Liu are sometimes referred to together as "Guarantors").

10.     This action arises out of business transacted by defendants within the State of New York.

## FACTUAL ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

11.     On May 2, 2005, United Aluminum and plaintiff entered into an Amended and Restated Revolving Note and a Fourth Modification of a Credit Agreement and Revolving Note that they originally entered into on September 15, 2000 (said documents are hereinafter referred to together as the "Modified Credit Agreement"). Copies of the Original Credit Agreement and Revolving Note are attached hereto as EXHIBITS A and B, respectively. Copies of the Fourth Modification of Credit Agreement and Amended and Restated Revolving Note are attached hereto as EXHIBITS C and D, respectively.

### United Aluminum

12.     Pursuant to said Modified Credit Agreement, plaintiff made available to United Aluminum a revolving credit facility in the principal amount of $3,500,000.00, and United Aluminum promised to pay to plaintiff, on or before May 31, 2005, the sum of $3,500,000.00, or so much thereof as was actually advanced and/or readvanced by plaintiff to or on behalf of United Aluminum, together with interest on the unpaid outstanding principal balance as calculated in accordance with the provisions of the Modified Credit Agreement (hereinafter the "Indebtedness").

13.     United Aluminum had previously entered into a General Security Agreement, dated September 15, 2000, granting plaintiff a security interest in, *inter alia*, all of United Aluminums' equipment, fixtures, inventory, accounts, chattel paper, documents,

instruments and general intangibles, as collateral in order to secure the Indebtedness. A copy of the General Security Agreement is attached hereto as EXHIBIT E.

14.  United Aluminum had also previously entered into a Cash Collateral and Pledge Agreement, dated September 15, 2000, granting plaintiff a security interest in, *inter alia*, all accounts of United Aluminum maintained with plaintiff. Additionally, United Aluminum had entered into an Assignment of Account Receivable, dated September 15, 2000, grating plaintiff a security interest in, *inter alia*, all of its accounts receivable, "whether now in existence or created from time to time hereafter during the period this [Credit] Agreement remains in effect." A copy of the Cash Collateral and Pledge Agreement is attached hereto as EXHIBIT F. A copy of the Assignment of Account Receivable is attached hereto as EXHIBIT G.

15.  Plaintiff duly perfected these security interests by filing Uniform Commercial Code Financing Statements.

16.  In connection with the Modified Credit Agreement, the shareholders of United Aluminum entered into a Certified Corporate Resolution, dated May 2, 2005, resolving to execute and deliver to plaintiff (a) the Fourth Modification of Credit Agreement and (b) the Amended and Restated Revolving Note upon the terms therein set forth. A copy of the Certified Corporate Resolution is attached hereto as EXHIBIT H.

17.  In connection with the Modified Credit Agreement, United Aluminum also delivered to plaintiff a Compliance Agreement, whereby United Aluminum agreed, *inter alia*, to furnish and execute any documents reasonably required by plaintiff, and an Affidavit and Estoppel Certificate, affirming, *inter alia*, that the Credit Facility application was truthful, both dated May 2, 2005. Copies of Compliance Agreement and Affidavit and Estoppel Certificate are attached hereto as EXHIBITS I and J, respectively.

18. Additionally, United Aluminum had previously furnished to plaintiff a Subordination Agreement and accompanying Certified Corporate Resolution of Summit Engineering Limited, both dated September 30, 2001, collectively subordinating and subrogating United Aluminum's debts to Summit Engineering Ltd. to those of plaintiff in the amount of $1,000,000.00. Copies of the Subordination Agreement and Certified Corporate Resolution are attached hereto as EXHIBITS K and L, respectively.

19. The Original Credit Agreement, incorporated by reference into the Fourth Modification of Credit Agreement, states that:

> [United Aluminum] shall pay all expenses of the [plaintiff] incurred in connection with the enforcement of this Agreement and collection and enforcement of the Note, including, without limitation, the fees and expenses of any counsel, consultants or advisors for [plaintiff].

See, EXHIBIT A, at § 7.2 (iv).

20. The Amended and Restated Revolving Note provides that "The Borrower and the Guarantor hereby agree to pay and keep the Bank harmless from any liability for the expenses arising in connection with the enforcement by the Bank of any of its rights under this Note or the Credit Agreement." See, EXHIBIT D, at p. 2.

### Very-Tact

21. In connection with the Modified Credit Agreement, defendant Very-Tact had previously entered into a General Security Agreement, dated September 15, 2000, granting plaintiff a security interest in, *inter alia*, all of Very-Tact's equipment, fixtures, inventory, accounts, chattel paper, documents, instruments and general intangibles, as collateral in order to secure the Indebtedness. A copy of the General Security Agreement and the attendant UCC-1 are attached hereto as EXHIBIT M.

22. Plaintiff duly perfected these security interests by filing Uniform Commercial Code Financing Statements.

23. In connection with the Modified Credit Agreement, Very-Tact delivered to plaintiff a Guaranty of Payment, dated May 2, 2005, guaranteeing payment of the Indebtedness. A copy of the Guaranty of Payment is attached hereto as EXHIBIT N.

24. This Guaranty of Payment provides that:

> The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

See, EXHIBIT N, at p. 2.

25. Furthermore, the shareholders of Very-Tact entered into a Certified Corporate Resolution, dated May 2, 2005, resolving to execute and deliver to plaintiff the Guaranty of Payment "to guaranty the payment and performance of all the obligations under the [Credit Agreement]." A copy of the Certified Corporate Resolution is attached hereto as EXHIBIT O.

### Archivisions

26. In connection with the Modified Credit Agreement, defendant Archivisions delivered to plaintiff a General Security Agreement, dated May 2, 2005, granting plaintiff a security interest in, *inter alia*, all of Archivisions' inventory, goods and merchandise, as collateral in order to secure the Indebtedness. A copy of the General Security Agreement and the attendant UCC-1 are attached hereto as EXHIBIT P.

27. Paragraph 10(e) of this General Security Agreement provides that:

> Debtor agrees to pay on demand all costs and expenses incurred by Secured Party in enforcing this Security Agreement, in realizing upon or protecting any Collateral and in enforcing and collecting any Indebtedness or any guaranty thereof, including, without limitation, if Secured Party retains counsel for advice, suit, appeal, insolvency or other proceeding under the federal Bankruptcy Code or otherwise, or for any of the above purposes, the actual attorneys' fees incurred by Secured Party. Payment of all sums hereunder is secured by the Collateral.

28. Plaintiff duly perfected this security interests by filing Uniform Commercial Code Financing Statements.

29. In connection with the Modified Credit Agreement, Archivisions also delivered to plaintiff a Guaranty of Payment, dated May 2, 2005, guaranteeing payment of the Indebtedness. A copy of the Guaranty of Payment is attached hereto as EXHIBIT Q.

30. This Guaranty of Payment provides that:

> The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

See, EXHIBIT Q, at p. 2.

31. Furthermore, the shareholders of Archivisions entered into a Certified Corporate Resolution, dated May 2, 2005, resolving to execute and deliver to plaintiff the Guaranty of Payment "to guaranty the payment and performance of all the obligations under the [Credit Agreement]." A copy of the Certified Corporate Resolution is attached hereto as EXHIBIT R.

### Wayne Tam

32. In connection with the Modified Credit Agreement, defendant Wayne Tam delivered to plaintiff a Partial Guaranty of Payment, dated May 2, 2005, guaranteeing payment of the Indebtedness to the extent of the lesser of (a) $3,150,000.00 of the principal balance, or (b) the entire principal balance. A copy of the Partial Guaranty of Payment is attached hereto as EXHIBIT S.

33. This Partial Guaranty of Payment provides that:

> The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

See, EXHIBIT S, at p. 2.

34. Wayne Tam had previously entered into a Negative Pledge Agreement, dated September 15, 2000, pledging that he would not sell, dispose of or allow any lien or additional financing on the real property listed in the Schedule A attached thereto. A copy of the Negative Pledge Agreement is attached hereto as EXHIBIT T.

### Jen-Hao Mao

35. In connection with the Modified Credit Agreement, defendant Jen-Hao Mao delivered to plaintiff a Partial Guaranty of Payment, dated May 2, 2005, guaranteeing payment of the Indebtedness to the extent of the lesser of (a) $3,150,000.00 of the principal balance, or (b) the entire principal balance. A copy of the Partial Guaranty of Payment is attached hereto as EXHIBIT U.

36. This Partial Guaranty of Payment provides that:

> The Guarantor agrees that, with or without notice or demand, the
> Guarantor will reimburse the Bank, to the extent that such reimbursement
> is not made by the Borrower, for all expenses (including counsel fees)
> incurred by the Bank in connection with the collection from the Guarantor
> in accordance with the provisions of this Guaranty of the Debt or any
> portion thereof.

See, EXHIBIT U, at p. 2.

37. Jen-Hao Mao had previously entered into a Negative Pledge Agreement, dated September 15, 2000, pledging that she would not sell, dispose of or allow any lien or additional financing on the real property listed in the Schedule A attached thereto. A copy of the Negative Pledge Agreement is attached hereto as EXHIBIT V.

### Sandy Liang

38. In connection with the Credit Agreement, defendant Sandy Liang delivered to plaintiff a Partial Guaranty of Payment, dated May 2, 2005, guaranteeing payment of the Indebtedness to the extent of the lesser of (a) $3,150,000.00 of the principal balance, or (b) the entire principal balance. A copy of the Partial Guaranty of Payment is attached hereto as EXHIBIT W.

39. This Partial Guaranty of Payment provides that:

> The Guarantor agrees that, with or without notice or demand, the
> Guarantor will reimburse the Bank, to the extent that such reimbursement
> is not made by the Borrower, for all expenses (including counsel fees)
> incurred by the Bank in connection with the collection from the Guarantor
> in accordance with the provisions of this Guaranty of the Debt or any
> portion thereof.

See, EXHIBIT W, at p. 2.

40. Sandy Liang had previously entered into a Negative Pledge Agreement, dated September 15, 2000, pledging that she would not sell, dispose of or allow any lien or

additional financing on the real property listed in the Schedule A attached thereto. A copy of the Negative Pledge Agreement is attached hereto as EXHIBIT X.

### Kuo Win Liu

41. In connection with the Modified Credit Agreement, defendant Kuo Win Liu delivered to plaintiff a Partial Guaranty of Payment, dated May 2, 2005, guaranteeing payment of the Indebtedness to the extent of the lesser of (a) $350,000.00 of the principal balance, or (b) the entire principal balance. A copy of the Partial Guaranty of Payment is attached hereto as EXHIBIT Y.

42. This Partial Guaranty of Payment provides that:

> The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

See, EXHIBIT Y, at p. 2.

### The Events of Default

43. By letter dated July 6, 2005, plaintiff informed Borrower that it had defaulted on the Modified Credit Agreement. A copy of the July 6, 2005 letter is attached hereto as EXHIBIT Z. Thereafter, the date upon which United Aluminum was to pay all outstanding debts to plaintiff was extended to November 30, 2005 by execution of a Loan Extension Agreement and Modification of Note dated July 6, 2005, a copy of which is attached hereto as EXHIBIT AA. The Loan Extension Agreement and Modification of Note was executed by Borrower and the Guarantors.

44. Section 3.10 of the Loan Extension Agreement and Modification of Note provides that:

> In the event any party of this Agreement shall be required to commence any action or proceeding against any other party by reason of any breach or claimed breach of any provision of this Agreement, to commence any action in any way connected with this Agreement, or to seek a judicial declaration of rights under this Agreement, the party prevailing in such action or proceeding shall be entitled to recover from the other party, or parties, the prevailing party's reasonable attorneys' fees and costs including, without limitation, all witness fees and associated expenses, including matters on appeal whether or not the proceeding or action proceeds to judgment.

See, EXHIBIT AA, at § 3.10.

45. United Aluminum failed to make payment by November 30, 2005. As of January 10, 2006, United Aluminum owed plaintiff $3,522,599.54, and demand for payment was made upon United Aluminum and the Guarantors on that date. A copy of the demand letter is attached hereto as EXHIBIT BB.

46. Despite the demand for payment, Borrower and the Guarantors neglected or refused to pay the Indebtedness. Thus, United Aluminum and the Guarantors were in default of the Modified Credit Agreement.

47. The Modified Credit Agreement provides that, in the event of default, plaintiff may:

(i) declare the Commitment to be terminated, whereupon the same shall forthwith immediately terminate, and no further utilization of the Credit Facility shall be permitted;

(ii) declare all outstanding principal of the Note, all interest thereon and all other amounts payable under [the Modified Credit Agreement] to be forthwith due and payable;

whereupon the Note, all such interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by [United Aluminum];

(iii) set-off against, appropriate and apply to any obligation of [United Aluminum] to [plaintiff] any debt owing from [plaintiff] to [United Aluminum] (whether or not then due), including without limitation, any deposit by [United Aluminum] with [plaintiff] (including any of its branches); or

(iv) exercise any other remedy available to [plaintiff] by law or in equity.

See, EXHIBIT A, at § 7.2.

48. Moreover, these remedies "may be exercised concurrently or separately and the exercise of any one remedy shall not be deemed to be an exclusive election of such remedy to preclude the exercise of any other remedy." Id.

49. Additionally, as set forth above, each defendant guaranteed payment of the costs of collecting the Indebtedness, including attorney fees.

50. United Aluminum being in default, plaintiff and defendants entered into a Forbearance Agreement. A copy of the Forbearance Agreement is attached hereto as EXHIBIT CC.

51. The Forbearance Agreement provides that:

The Borrower and each Guarantor hereby acknowledge, confirm and agree, that as of the date hereof, the Borrower is indebted to the Bank for loans, advances and other financial accommodations under the Loan Documents in the aggregate principal amount (as of November 30, 2005) of $3,522,599.54, which amount is unconditionally owing by the Borrower to the Bank, together with interest hereafter accruing and costs and expenses and other charges now or hereafter owed by the Borrower or the Guarantors to the Bank, all without offset, defense or counterclaim of any kind, nature or description whatsoever.

See, EXHIBIT CC, at § 2.1.

52. The Forbearance Agreement further provides that:

> The Borrower and each Guarantor hereby acknowledges, confirms and agrees that Bank has and shall continue to have valid, enforceable and perfected liens upon and security interests in the Collateral of the Borrower or each Guarantor heretofore granted to the Bank pursuant to the Loan Documents or otherwise granted to or held by the Bank.

See, EXHIBIT CC, at § 2.2.

53. At the time defendants entered into the Forbearance Agreement, Very-Tact also entered into a General Security Agreement, dated March 1, 2006, granting plaintiff a Security Interest in, *inter alia*, all of Very-Tact's equipment, fixtures, inventory, accounts, chattel papers, documents, instruments, general intangibles as collateral and security indebtedness. A copy of the General Security Agreement is attached as EXHIBIT DD.

54. Borrower and the Guarantors, with the exception of Kuo, also entered into a Compliance Agreement. A copy of the Compliance Agreement is attached hereto as EXHIBIT EE.

55. Furthermore, the Guarantors, with the exception of Kuo, executed an Acknowledgment and Consent by the Guarantors acknowledging the Forbearance Agreement. A copy of the Acknowledgement and Consent is attached hereto as Exhibit FF.

56. Borrower also delivered an Affidavit and Estoppel Certificate and a Certificate of Corporate Resolution. Copies of the Affidavit and Estoppel Certificate and Certificate of Corporate Resolution are attached hereto as EXHIBITS GG and HH, respectively.

57. Plaintiff filed UCC-1s respecting all security interests in property of Borrower and Guarantors granted by the above set-forth documents. The filing report is attached hereto as EXHIBIT II.

58.  In reliance on the representations and warranties of Borrower and the Guarantors, the Bank agreed to forbear from exercising its rights and remedies under the Modified Credit Agreement until December 31, 2006, or the date of any default or non-compliance with the terms of the Forbearance Agreement. See, EXHIBIT CC, at § 3.2.

59.  The conditions of forbearance included but were not limited to: (1) payment to plaintiff of 10% of any account receivable (see, EXHIBIT CC, at § 4.2); (2) payment of a $100,000.00 extension fee payable in $25,000.00 increments, including $25,000.00 on execution, $25,000.00 on August 1, 2006, $25,000.00 on October 1, 2006 and $25,000.00 on December 1, 2006 (see, EXHIBIT CC, at § 4.3); (3) the filing of certain weekly reports (see, EXHIBIT CC, at § 4.5); (4) Borrower agreeing to retain a turn-around consultant acceptable to plaintiff within thirty (30) days of the execution of the Forbearance Agreement (see, EXHIBIT CC, at § 4.7); (5) Borrower submitting to plaintiff a certain public accountant financial statement in a form acceptable to the Bank within thirty (30) days of execution of the Forbearance Agreement (see, EXHIBIT CC, at §§ 4.6 & 4.12); and (6) that Borrower's minimum adjusted tangible net worth would not fall below $4 million (see, EXHIBIT CC, at § 4.15).

60.  Borrower has not met these conditions.

61.  Moreover, Borrower failed to make payment in full by the Forbearance Agreement's Termination Date of December 31, 2006. (see, EXHIBIT CC, at § 4.15).

62.  Under the Modified Credit Agreement and Forbearance Agreement, defendants owe plaintiff principal and interest totaling $2,443,848.18, plus legal, accounting and collection fees of $232,066.14, through May 23, 2007. The total amount owed to date is $2,675,914.32.

63. A final notice of default was sent to Borrower and the Guarantors on May 24, 2007. A copy of that letter is attached hereto as EXHIBIT JJ. To date defendants have not complied with their obligations under the Modified Credit Agreement and Forbearance Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS

64. Plaintiff repeats, realleges and reiterates the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65. By virtue of the foregoing, there is now due and owing to plaintiff from defendant United Aluminum the sum of $2,675,914.32, through May 23, 2007, with interest accruing going forward as provided in paragraph 4 of the Fourth Modification of Credit Agreement as modified by the Forbearance Agreement, plus additional costs and attorney fees. See, EXHIBIT C. Defendants Very-Tact, Archivisions, Wayne Tam, Jen-Hao Mao, Sandy Liang and Kuo Win Liu guaranteed this Indebtedness to the degrees set forth above. Defendants United Aluminum, Very-Tact and Archivisions pledged, *inter alia*, all of their personal property, machinery, equipment and fixtures and accounts on this Indebtedness.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANTS UNITED ALUMINUM, VERY-TACT AND ARCHIVISIONS

66. Plaintiff repeats, realleges and reiterates the allegations set forth in paragraph 1 through 65 as if fully set forth herein.

67. Pursuant to the Modified Credit Agreement and New York Uniform Commercial Code § 9-503, and as a result of defendant United Aluminum's default in making

payment of outstanding sums due, plaintiff is entitled to possession of all of defendants' United Aluminum's, Very-Tact's and Archivisions' personal property in which plaintiff has a security interest, to wit: all inventory, chattel paper, accounts, equipment, and general intangibles.

68. At the time of the commencement of this action, defendants United Aluminum, Very-Tact and Archivisions are wrongfully withholding this personal property from plaintiff.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS

69. Plaintiff repeats, realleges and reiterates each and every allegation contained in paragraphs 1 through 68 as if fully set forth herein.

70. As set forth above, each defendant agreed to pay the costs associated with collecting the Indebtedness, including attorney fees.

71. By virtue of the foregoing, plaintiff is entitled to reimbursement from defendants, jointly and severally, of all attorney fees, disbursements, court costs and expenses incurred in connection with the prosecution of this action.

WHEREFORE, plaintiff demands judgment against defendants as follows:

a. On the First Cause of Action against defendants, jointly and severally, in the sum of $2,675,914.32 through May 23, 2007, plus interest thereon going forward in accordance with paragraph 4 of the Fourth Modification of Credit Agreement and the Amended and Restated Revolving Note, both dated May 2, 2005, as modified by the Forbearance Agreement, plus additional attorney fees and costs;

b. On the Second Cause of Action against defendants United Aluminum, Very-Tact and Archivisions, granting plaintiff immediate possession of all of said defendants' inventory,

chattel paper, accounts, equipment, and general intangibles as well as instruments, documents, chattel papers, securities, deposits and all proceeds, products, returns, additions, recessions and substitutions of the foregoing;

  c. On the Third Cause of Action against defendants, jointly and severally, for plaintiff's attorney fees, disbursements, court costs and expenses; and

  d. For such other, further and different relief as to this Court may deem just and proper.

Dated: New York, New York
   May 25, 2007

                /s/ Philip T. Simpson
                Philip T. Simpson (PS-9707)
                ROBINSON BROG LEINWAND GREENE
                GENOVESE & GLUCK P.C.
                1345 Avenue of the Americas
                New York, New York 10105-0143
                (212) 603-6313
                Attorneys for Plaintiff Cathay Bank

**ADDRESSES OF DEFENDANTS:**

United Aluminum Door Inc.
267 Vandervoort Avenue
Brooklyn, New York 11211-1718
Attn: Mr. Wayne Tam

Very-Tact International, Inc.
267 Vandervoort Avenue
Brooklyn, New York 11211-1718
Attn: Mr. Wayne Tam

Archivisions, Inc.
267 Vandervoort Avenue
Brooklyn, New York 11211-1718
Attn: Mr. Wayne Tam

Mr. Wayne Tam
90 West Broadway, Apt. 5A
New York, New York 10007-1009

Jen-Hao Mao
96 Schermerhorn, Apt. 5C
Brooklyn, New York 11201

Sandy Liang
24 Eugene Street
Melville, New York 11747

Kuo Win Liu
575 Summit Street
Englewood Cliffs, New Jersey 07632