# EXHIBIT B

## REVOLVING NOTE

**$1,500,000.00**                                    September 15, 2000
                                                     New York, New York

    **FOR VALUE RECEIVED, UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal place of business at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") promises to pay to the order of **CATHAY BANK, FLUSHING OFFICE** (the "Bank") at the Bank's office, 40-14/16 Main Street, Flushing, New York 11354, the principal sum of **ONE MILLION FIVE HUNDRED THOUSAND and 00/100 ($1,500,000.00) DOLLARS,** or, so much thereof as shall have actually been advanced and/or readvanced by the Bank to or on behalf of the Borrower pursuant to the Credit Agreement, together with interest on the unpaid principal amount outstanding from time to time as hereinafter set forth and all other obligations of the Borrower to the Bank under the Credit Agreement, in lawful money of the United States of America, on or before **September** *15* **, 2001** (the "Expiration Date").

    The Borrower promises also to pay the Bank interest monthly on the Payment Date, computed on the basis of actual days outstanding during the month (plus, with respect to interest on payments of principal, the number of days after such month to but not including the payment day, a year of 360 days), as provided in the Credit Agreement, in like money, at such office: (i) from the date each Advance is made until such principal amount is paid in full on Expiration Date (whether by acceleration or otherwise) at the Interest Rate equal at all times to one (1%) percent above the Wall Street Journal Prime Rate, any change in the Interest Rate shall take effect simultaneously with the corresponding change in the Prime Rate; and (ii) from the maturity of each Advance until paid or after and during the continuance of an Event of Default (as defined in the Credit Agreement), at the Default Rate per annum which shall be five (5%) percent above the applicable Interest Rate.

    Notwithstanding anything to the contrary contained herein, in no event shall the total of all charges payable under this Note and the Credit Agreement which are or could be held to be in the nature of interest, exceed the maximum rate permitted to be charged by applicable law. Should the Bank receive any payment which is or would be in excess of that permitted to be charged under any such applicable law, such payment shall have been, and shall be deemed to have been, made in error and shall automatically be applied to reduce the principal balance outstanding on this Note.

    This Note has been delivered by the Borrower to the Bank and shall be deemed to be a contract made under the laws of the State of New York and for all purposes shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflicts of laws.

    The Borrower and the Guarantor expressly waive any presentment, demand, protest or notice in connection with this Note, now or hereafter, required by applicable law. No failure to exercise, and no delay in exercising any rights hereunder on the part of the Bank shall operate as a waiver of such rights.

1

The Borrower and the Guarantor hereby expressly and unconditionally waive, in connection with any suit, action or proceeding brought by the Bank on this Note, any and every right it may have to (i) injunctive relief, (ii) a trial by jury, (iii) interpose any counterclaim therein and (iv) have the same consolidated with any other or separate suit, action or proceeding.   Nothing herein contained shall prevent or prohibit the Borrower from instituting or maintaining a separate action against the Bank with respect to any asserted claim.

This Note is secured by any and all of the Guaranty, Security and Collateral at any time granted to the Bank pursuant to Sections 3.9 and 3.10 of the Credit Agreement to secure any Indebtedness of the Borrower.

This Note is the Note referred to in, and is entitled to the benefits of, the Credit Agreement, dated the even date hereof (as may be further amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and between the Borrower and the Bank, to which reference is made hereinabove. In case an Event of Default shall occur and be continuing, the unpaid sum of the principal of this Note, together with all accrued but unpaid interest thereon shall be declared to be due and payable immediately in the manner and with the effect provided in the Credit Agreement.

The Borrower hereby agrees to pay and keep the Bank harmless from any liability for the expenses arising in connection with the enforcement by the Bank of any of its rights under this Note or the Credit Agreement.

(Corporate Seal)

Attest:

_____
SANDY LIANG, Secretary

BORROWER:

UNITED ALUMINUM DOOR INC.

By: _____
JEN-HAO MAO, Treasurer

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

On the  15th day of September, in the year 2000 before me, the undersigned, personally appeared JEN-HAO MAO,  personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

2

KWAN YU TAM
Notary Public - State of New York
No. 01TA6043428
Qualified in Queens County
My Commission Expires June 19, 20___

SCHEDULE  I

SCHEDULE OF ADVANCES/PAYMENTS

| Date | Advances | Payment | Unpaid Principal Balance | Name of Person Making Notation |
|------|----------|---------|--------------------------|--------------------------------|
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |

# EXHIBIT C

## FOURTH MODIFICATION OF CREDIT AGREEMENT

THIS MODIFICATION, dated this *2nd* day of May, 2005, between **UNITED ALUMINUM DOOR INC.**, a New York corporation, having its principal office at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") and **CATHAY BANK, NEW YORK REGION**, having its principal office at 40-14 Main Street, Flushing, New York 11354 (the "Bank").

### W I T N E S S E T H :

WHEREAS, the Bank has made available to the Borrower a revolving credit facility in the principal amount of $3,500,000.00 (the "Credit Facility") pursuant to the Credit Agreement, dated September 15, 2000, which was subsequently modified from time to time (the Credit Agreement and its subsequent modifications are collectively called the "Credit Agreement");

WHEREAS, the Credit Facility is evidenced by the Amended and Restated Revolving Note, dated May 1, 2003, made by the Borrower to the Bank in the said principal sum with interest thereon (the "Existing Note");

WHEREAS, the Credit Facility is secured by, among other things, the joint and several Guaranty of Payment dated November 12, 2002 (the "Guaranty") from Very-Tact International, Inc. (the "Existing Corporate Guarantor"), and Wah Woon Tam a/k/a Wayne Tam, Sandy Liang and Jen-Hao Mao (individually and collectively the "Existing Individual Guarantor") in the amount of $3,500,000.00;

WHEREAS, the Credit Facility will expire on April 30, 2005, the Borrower wishes to continuously borrow the Credit Facility, and has requested the Bank to extend the term thereof for a period of one year and reduce the amount of the Guaranty of the Existing Individual Guarantor;

WHEREAS, to induce the Bank to continue to extend the Credit Facility and reduce the amount guaranteed by the Existing Individual Guarantor, Bank has provided to the Bank two new guarantors, i.e., Archivisions, Inc. (the "New Corporate Guarantor") and Kuo Win Liu (the "New Individual Guarantor");

WHEREAS, the Bank is willing to accept the New Guarantors and grant such extension subject to the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein and for other good and valuable consideration, the parties hereto agree as follows:

1

1.    **Definitions.**

Except as otherwise defined   herein, all capitalized terms set forth in this Modification shall have the same meanings provided therefor in the Credit Agreement.

2.    **Credit Facility.**

The Bank and the Borrower hereby acknowledge and agree that, subject to the terms and conditions hereinafter set forth,  the aggregate principal amount of the Credit Facility be **THREE MILLION FIVE HUNDRED THOUSAND and 00/100 ($3,500,000.00) DOLLARS.**

Up to $3,500,000.00 is available to finance the Borrower's  Eligible Accounts Receivable based  upon a borrowing base formula of 80% of the Eligible Accounts Receivable (excluding all retainage receivable)  within 90 days from invoice date (excluding those Accounts outstanding for more than 90 days).

3.    **Expiration.**

The term of the Credit Facility shall be extended to May 31, 2005  (the "Expiration Date").

4.    **Interest Rate and Default Rate..**

The Interest Rate of the Credit Facility will maintain unchanged at a  fluctuating rate per annum equal at all times to seven-eighths of one percent (0.875%)  above  the Wall Street Journal Prime Rate ("WSJP").  Any change in the Interest Rate will take effect simultaneously with the corresponding change in WSJP.  The interest will be calculated on the basis of a 360-day year and days actually elapsed.

After maturity,  whether by acceleration, notice of intention to prepay or otherwise, or during the continuance of an "Event of Default" as specified in Section 7.1 of the Credit Agreement, the rate of interest shall be five (5%) percent  per annum in excess of  the applicable Interest Rate (the "Default Rate"), but in no event to exceed the maximum rate allowed by applicable law.

5.    **Repayment.**

Interest shall accrue from and including the date of any payment or disbursement to, but not including,  the date of any repayment of principal.   Interest shall be due and payable monthly in arrears on the first day of each month (the "Payment Date") until the principal balance of each Advance has been fully repaid.  If any Payment Date is not a Business Day, the interest shall be due and payable on the next succeeding Business Day and the amount of interest due shall be computed accordingly.

2

Principal of the Credit Facility shall be due on the Expiration Date or on demand. **It is expressly agreed and understood by the Borrower that any and all account receivable proceeds collected will be automatically applied to the repayment of the Advances outstanding under the Credit Facility.**

6.   **Note**.

To evidence the obligations of the Borrower to repay the Credit Facility, the Borrower shall execute and deliver to the Bank the Amended and Restated Revolving Note (the "Amended Note") to replace and substitute the Existing Note. The Amended Note shall be entitled to the benefits of the Credit Agreement. However, the execution and delivery of the Amended Note shall not be deemed to automatically release any and all outstanding obligations owed by the Borrower to the Bank under the Existing Note.

7.   **Guaranty**.

Subject to Section 3.10 of the original Credit Agreement dated September 15, 2000:

(a)   the Existing Corporate Guarantor (Very-Tact International, Inc.("VTII")) and the New Corporate Guarantor (Archivisions, Inc., a New York corporation and the Affiliate of the Borrower ("AI")) shall submit to the Bank the joint and several unconditional continuing Guaranty of Payment in the amount of $3,500,000.00;

(b)   the Existing Individual Guarantor (Wah Woon Tam a/k/a Wayne Tam, Sandy Liang and Jen-Hao Mao) shall submit to the Bank the joint and several unconditional continuing Partial Guaranty of Payment in the amount of $3,150,000.00; and

(c)   the New Individual Guarantor (Kuo Win Liu) shall submit to the Bank the joint and several unconditional continuing Partial Guaranty of Payment in the amount of $350,000.00.

8.   **Collateral**.

The Borrower and the Guarantors (i.e., VTII, AI, Wah Woon Tam a/k/a Wayne Tam, Sandy Liang, Jen-Hao Mao and Kuo Win Liu), hereby reinstate, reaffirm, covenant and warrant that the Credit Facility be continuously secured by, among other things, the following Collateral as more specifically described in Section 3.11 of the original Credit Agreement:

(a)   the General Security Agreement dated September 15, 2000 duly executed by the Borrower and VTII together with the Financing Statement on Form UCC-1 and Form UCC-3 duly filed under the Uniform Commercial Code in the State of New York to perfect the first priority position Security Interest created by the General Security Agreement on the general assets of the Borrower and VTII;

(b)   the General Security Agreement dated May        , 2005 duly executed by

3

AI together with the Financing Statement on Form UCC-1 to be duly filed under the Uniform Commercial Code in the State of New York to perfect the first priority position Security Interest created by the General Security Agreement on the general assets of AI;

(c)    the Negative Pledge Agreement, dated September 15, 2000, by Wah Woon Tam a/k/a Wayne Tam, Jen-Hao Mao and Sandy Liang respectively, each of them undertakes, covenants and agrees to the Bank that they will not sell, dispose or creating any lien or additional financing and mortgage on their real properties as listed in the Schedule A of the Negative Pledge Agreement (except that Wayne Tam and Sandy Liang have refinanced their real property with the consent of the Bank as disclosed in their financial statements most currently submitted to the Bank); and

(c)    the Assignment Agreement, dated September 15, 2000, to assign to the Bank all the Borrower's right, title and interest of accounts receivable proceeds to the extent available in and to all monies now due or which may hereafter become due to the Borrower under the Eligible Accounts Receivable; all monies due under the Eligible Accounts Receivable shall be remitted and deposited to a lock box account with the Bank.

9.    **Representation and Covenants**.

To induce the Bank to extend the Credit Facility, the Borrower further represents and warrants that:

(a)    the Borrower is a corporation duly organized and existing in good standing under the laws of the State of New York and has the corporate power to own its assets and to transact the business in which it is engaged;

(b)    the Borrower has full legal right, requisite power and authority to borrow from the Bank under the Credit Agreement, and to execute, deliver and perform its obligations under the Credit Agreement, the Amended Note and all instruments, documents and agreements to which it is or will be a party and it has duly authorized by all requisite corporate action the execution, delivery and performance of the Credit Agreement, the Amended Note and all such instruments, documents and agreements to which it is a party;

(c)    the execution, delivery and performance by the Borrower of the Credit Agreement, and the Amended Note and the payment by the Borrower of principal, interest and any other sums that may become due and owing under the Credit Agreement and the Amended Note do not: (i) conflict with the Certificate of Incorporation or by-laws of the Borrower; (ii) violate any provision of law, regulation, judgment, award, decree, order, writ, injunction or permit applicable to the Borrower; (iii) conflict with or result in default of the performance, observance or fulfillment of the material obligations, covenants, or agreements contained in any agreement or instrument to which the Borrower is a party or by which it or any of its properties or assets are bound; or (iv) constitute a breach of any restriction which will materially adversely affect its business, operation, creation or imposition of any lien, security interest, charge or encumbrance upon any property or assets of the Borrower;

(d)    there are no actions, suits or proceedings before any court, arbitral tribunal, governmental agency or administrative body pending or, to the best of the Borrower's knowledge, threatened against or affecting it, which if adversely determined would materially adversely affect the financial condition of the Borrower or its operations or would materially impact any of its rights or abilities to perform its business as now conducted or as contemplated to be conducted or the financial ability of the Borrower to pay, when due, the principal of and interest on the Credit Facility and any other sums that may become due and owing under the Credit Agreement, the Amended Note or any other document or instrument to which it is a party; and

(e)    the Borrower is conducting its business and operations in compliance with all applicable laws, all directives of governmental agencies and authorities having effect on the operations, business, property, assets or condition (financial or otherwise) of the Borrower.

10.    **Financial Statements**.

The Borrower shall submit to the Bank for review the following financial statements:

(a)    as soon as practicable, but in any event within **120 days** after the end of the fiscal year, a complete copy of the **CPA reviewed** consolidated annual financial statements of the Borrower, including the related reviewed statement of income, profit and loss statement, reconciliation of surplus statement, source and application of funds statement and shareholders equity for such year, and a balance sheet as of the end of such year, setting forth in each case in comparative form the corresponding figures for the previous fiscal year end, which shall be prepared in accordance with GAAP, applied on a consistent basis, and which shall be accompanied by a report of an independent certified public accountant, however, the Bank may, at its sole discretion, require such final statements to be certified by a certified public accountant approved by the Bank;

(b)    as soon as practicable, but in any event within **15 days** after filing of each year, a complete copy of the business income tax return of the Borrower, VTII and AI prepared by an independent certified public accountant;

(c)    as soon as practicable, but in any event within **30 days** prior to the Expiration Date of the Credit Facility, the updated and signed copy of the personal financial statement and within **15 days** after filing of each year, the signed copy of the most currently filed personal income tax return of each Individual Guarantor;

(d)    as soon as practicable, but in any event within **30 days** after the end of each month in each fiscal year:

(i)    the monthly financial statements prepared by an authorized officer of the Borrower;

(ii)    the monthly account receivable aging and account payable aging reports, in form and substance satisfactory to the Bank,

5

accompanied by a certificate to that effect executed by an authorized officer of the Borrower stating that the related receivable and payable are within the discretionary limit under the Collateral of the borrowing base formula as specified in Section 2.1 in the Credit Agreement;

(iii)     the monthly job status report and cash receipts journal,

(iv)     the monthly reconciliation statement of accounts receivable and accounts payable between the aging report and the general ledger; and

(v)     other related statements of the Borrower as may be reasonably required by the Bank.

(e)     as soon as practicable, but in any event within **15 days** after the end of each month the monthly Borrowing Base Certificate.

10.     **Financial Covenants.**

The Borrower shall, at all times during the term of the Credit Facility, maintain the following financial covenants:

(a)     the minimum adjusted Tangible Net Worth of not less than $4,000,000.00 (including the Subordinated Debt);

(b)     the Debt to adjusted Net Worth Ratio not higher than 2.5 : 1.00 (including the Subordinated Debt);   definition of the "Debt" shall exclude the deferred income tax liability of the Borrower;

(c)     the Current Ratio not less than 1.2 : 1;

(d)     each of the Existing Individual Guarantor undertakes that he/she will not sell or create additional mortgage and financing on his/her real property listed in the financial statements dated November 30, 2004 of Wah Woon Tam a/k/a Wayne Tam, the financial statements dated November 30, 2004 of Sandy Liang and the financial statements dated September 30, 2004 of Jen-Hao Mao, without the Bank's prior written consent.

(e)     the Borrower will not bid on any project or contract below its costs; and

(f)     any and all indebtedness and obligations of the Borrower to Summit Engineering Ltd., whether now existing or hereafter from time to time incurred, shall be subject and subordinated to any and all indebtedness and liabilities of the Borrower to the Bank according to the Subordination Agreement dated March 28, 2002.

6

11.    **Loan Restrictions.**

Without the bank's prior written consent, the Borrower shall not borrow, create or incur any additional loan, credit facility, or financial liability with other Person, factor, or lender except the normal trade credits in the Borrower's ordinary course of business.

12.    **Maintenance of Bank Accounts.**

The Borrower shall, at all times during the term of the Credit Facility, maintain with the Bank all its transactional and operating account for deposits, transfer of proceeds and collection of accounts receivable.

13.    **Books and Records; Field Audit.**

The Borrower shall permit any person or auditor designated by the Bank in writing, at the Borrower's sole cost and expense, at least once a year, during business hours upon reasonably advanced notice, to visit and inspect the operation and any of the properties of the Borrower, including, but not limited to, the examination of the corporate books, inventory, accounts receivable, and accounting and financial records of the Borrower and its Subsidiaries and make copies thereof or extracts therefrom and to discuss the affairs, finances and accounts of any of such corporations with their respective executive officers or with their respective independent accountants.

14.    **Right to Terminate.**

The Bank reserves the right to reduce the amount and utilization of the Credit Facility or suspend the availability of the Credit Facility, if, at the Bank's sole and absolute discretion, the terms and conditions of the Credit Agreement are not strictly complied with, or if the business of the Borrower has deteriorated materially since the date of the Credit Agreement or if there has been a material adverse change in the financial condition of the Borrower or the Guarantor since the date of the most recent financial statements submitted to the Bank.

15.    **Maintenance of Insurance.**

The Borrower shall maintain, at all times during the term of the Credit Facility, the following insurances:

(a)    the property insurance with "All-Risk" coverage be maintained on the Borrower's furniture, fixtures, equipment, cargo and inventory located at its principal place of business and its warehouse(s) as reasonably approved by the Bank for the full replacement cost, and/or such other insurance as is customary with companies in the same or similar businesses, in an amount as the Bank may reasonably require or deem appropriate, naming the Bank as additional insured and loss payee, and a marine insurance policy required for letter of credit issued on FOB, C&F and FAS basis;

7

(b) public liability insurance, which shall include product liability insurance, in the amount customary with companies in the same or similar business against claims for personal injury or death or properties owned, occupied or controlled by it; and

(c) such other insurance as may be required by law or as may be reasonably required in writing by the Bank.

The Borrower shall provide to the Bank promptly upon receipt of written request thereof, evidence of the annual renewal of each such policy.

16. **Fees and Expenses**.

The Borrower shall pay to the Bank a facility fee in an amount equal to one-fifth (0.2%) percent of the Credit Facility, or $7,000.00.   Such fee shall be paid on or before the execution of this Modification.  The Borrower shall also pay to the Bank any fees as computed at the Bank's standard rate at the time of such drawing, as the Bank's administrative charge.  The Bank reserves the right, at its sole and absolute discretion, to change such fees, commissions and expenses from time to time without any prior notice.  The Borrower shall also pay to the Bank the fees and expenses, including without limitation, recording fees, taxes, credit and lien searches and legal fees incurred by the Bank under the Credit Facility.

17. **Right of Set-off**.

The Bank is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final), at any time held and other Indebtedness at any time owing by the Bank to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note and although such obligations may be unmatured. The Bank agrees to promptly notify the Borrower after any such set-off and application, provided that the failure to give such notice shall not affect the validity of such set-off and application. The right of the Bank under this paragraph is in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Bank may have.

18. **Modification**.

Except as modified and amended by this Modification, the terms of the Credit Agreement are hereby ratified and confirmed in all respects and remain unchanged by reference as if fully set forth herein, and the parties hereto assume and agree to be bound by the provisions thereof with the same force and effect as if the Credit Agreement is herein set forth at length.

19. **Conflict**.

In the event of any conflict, ambiguity or inconsistency between the provisions of the Credit Agreement and the provisions of this Modification, then the terms, covenants and conditions

8

of this Modification shall control.

   20.   **Successors**.

         This Modification shall bind and inure to the benefit of each of the parties hereto and their respective successors and assigns and may not be changed or terminated orally.

         **IN WITNESS WHEREOF**, this Modification has been duly executed by the parties hereto as of the day and year first above written.

                                        BANK:

                                        CATHAY BANK, NEW YORK REGION

                                        By:    _____
                                               PEGGY CHAN,
                                               First Vice President & Manager

                                        By:    _____
                                               PIN TAI,
                                               Senior Vice President & Division Manager

                                        BORROWER:

                                        UNITED ALUMINUM DOOR INC.

(Corporate Seal)                        By:    _____
                                               WAYNE TAM, President

Attest:

_____
SANDY LIANG, Secretary

9