# EXHIBIT M

# GENERAL SECURITY AGREEMENT

Date: ~~August~~ *September* 15 , 2000

| |
|---|
| Name<br>VERY-TACT  INTERNATIONAL, INC., a New York corporation |
| Address<br>267 Vandervoort Avenue, Brooklyn, New York 11211 |
| Chief Executive Office (if different from Business address) |
| Lending Office, Department or Division<br>CATHAY BANK, FLUSHING OFFICE |
| Address<br>40-14/16 Main Street, Flushing, New York 11354 |

AGREE AS FOLLOWS:

    1.    **Security Interest.**

        Debtor hereby grants to Secured Party a security interest (Security Interest) in all property of the following types, wherever located and whether now owned or hereafter owned or acquired by Debtor, whether or not affixed to realty, in all Proceeds and Products thereof in any form, in all parts, accessories, attachments, special tools, additions, replacements, substitutions and accessions thereto or therefor, and in all increases or profits received therefrom, including, WITHOUT LIMITATION, all property described in any schedule from time to time delivered by Debtor to Secured Party: Equipment; Fixtures; Inventory; Accounts; Chattel Paper; Documents; Instruments; and General Intangibles (Collateral).

    2.    **Indebtedness Secured.**

        The Security Interest secures payment of any and all indebtedness (Indebtedness) of Debtor to Secured Party, whether now existing or hereafter incurred, of every kind and character, direct or indirect, and whether such Indebtedness is from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred, including, without limitation: (a) Indebtedness not yet outstanding, but contracted for, or with respect to which any other commitment by Secured Party exists: (b) all interest provided in any instrument, document, or agreement (including this Security Agreement) which accrues on any Indebtedness until payment of such Indebtedness in full; (c) any moneys payable as hereinafter provided; (d) any debts owed or to be owed by Debtor to others which Secured Party has obtained, or may obtain, by assignment or otherwise.

    3.    **Representations and Warranties of Debtor.**

Debtor represents and warrants, and, so long as this Security Agreement is in effect, shall be deemed continuously to represent and warrant that: (a) Debtor is the owner of the Collateral free of all security interests or other encumbrances, except the Security Interest and except as specified in an appropriate schedule hereto; (b) Debtor is authorized to enter into this Security Agreement; (c) any and all trade names, division names, assumed names or other names under which Debtor transacts any part of its business are specified in an appropriate schedule hereto; and Debtor's records concerning the Collateral are kept at one of the addresses specified above; (d) each Account, General Intangible and Chattel Paper constituting Collateral is genuine and enforceable in accordance with its terms against the party obligated to pay it (Account Debtor); and no Account Debtor has any defense, setoff, claim or counterclaim against Debtor which can be asserted against Secured Party, whether in any proceeding to enforce the Collateral or otherwise; (e) the amounts represented from time to time by Debtor to Secured Party as owing by each Account Debtor or by all Account Debtors will be and are the correct amounts actually and unconditionally owing by such Account Debtor or Debtors individually and in the aggregate, except for normal cash discounts where applicable; (f) each Instrument and each Document constituting Collateral is genuine and in all respects what it purports to be; and (g) any Collateral which is a Fixture is affixed to real property at Debtor's address specified above or as specified in an appropriate schedule hereto, and such real property is owned by Debtor or by the person or persons named in such schedule and is encumbered only by the mortgages listed in such schedule.

4.     **Covenants of Debtor.**

So long as this Security Agreement is in effect, Debtor:  (a) will defend the Collateral against the claims and demands of all other parties, including, without limitation, defenses, setoffs, claims and counterclaims asserted by any Account Debtor against Debtor or Secured Party, except, as to Inventory, purchasers and lessees in the ordinary course of Debtor's business; will keep the Collateral free from all security interests or other encumbrances, except the Security Interest and except as specified in an appropriate schedule hereto; and will not sell, transfer, lease, assign, deliver or otherwise dispose of any Collateral or any interest therein without the prior written consent of Secured Party, except that, until the occurrence of an event of default as specified in paragraph 10 hereof, Debtor may sell or lease Inventory in the ordinary course of Debtor's business; (b) will furnish to Secured Party financing statements in such form and at such intervals as Secured Party shall request; will keep, in accordance with generally accepted accounting principal consistently applied, accurate and complete books and records, including, without limitation, records concerning the Collateral; at Secured Party's request, will mark any and all such books and records to indicate the Security Interest; will permit Secured Party or its agents to inspect the Collateral and to audit and make extracts from or copies of such books and records an any of Debtor's ledgers, reports, correspondence or other books and records; and will duly account to Secured Party's satisfaction, at such time or times as Secured Party may require, for any of the Collateral; (c) will deliver to Secured Party upon demand, all Documents and all Chattel Paper (duly indorsed to Secured Party) constituting, representing, representing or relating to the Collateral, or any part hereof, and any schedules, invoices, shipping documents, delivery receipts, purchase orders, contracts or other documents representing or relating to the Collateral or any part thereof; (d) will notify Secured Party promptly in writing of any change in Debtor's business address or chief executive office, any change in the address at which records concerning the Collateral are kept and any change in Debtor's name, identity or corporate or other structure; (e) will not, without Secured Party's written consent, make or agree to make any alteration, modification or cancellation of, substitution for, or credits, adjustments or allowances on, Accounts, General Intangibles or Chattel Paper constituting Collateral; will furnish to Secured Party, on request, all credit and other information respecting the financial condition of any Account Debtor; and will notify Secured Party promptly of any default by any Account Debtor in payment or other performance of obligations with respect to any Collateral; (f) will keep the Collateral in

good condition and repair; and will not use the Collateral in violation of any provisions of this security Agreement, of any applicable statute, regulation or ordinance or of any policy insuring the Collateral; (g) will pay all taxes, assessments and other charges of every nature which may be imposed, levied or assessed against Debtor or any of Debtor's assets, prior to the date of attachment of any penalties or liens with respect thereto (other than liens attaching prior to payment becoming due, if payment is made when due), provided, however, Debtor shall not be required to pay any such tax, assessment or other charge so long as its validity is being contested in good faith by appropriate proceedings diligently conducted; (h) will insure the Collateral against risks, in coverage, form and amount, and by insurer, satisfactory to Secured Party, and, at Secured Party's request, will cause each policy to be payable to Secured Party as a named insured or loss payee, as its interest may appear, and deliver each policy or certificate of insurance to Secured Party; (i) will prevent the Collateral or any part thereof from being or becoming any accession to other goods not covered by this Security Agreement; (j) in connection herewith, will execute and deliver to Secured Party such financing statement, assignments and other documents and do such other things relating to the Collateral and the Security Interest as Secured Party may request, and pay all costs of title searches and filing financing statements, assignments and other documents in all public offices requested by Secured Party; and will not, without the prior consent of Secured Party, file or authorize or permit to be filed in any public office any financing statement naming Debtor as debtor and not naming Secured Party as secured party; (k) will not place the Collateral in any warehouse which may issue a negotiable document with respect thereto; and (l) if Secured Party in its sole discretion and at any time or from time to time determines that the liquidation value of the Collateral has become inadequate, will immediately on demand (i) deliver to Secured Party additional collateral of a kind and value satisfactory to Secured Party, or (ii) make payments of Indebtedness, sufficient to cause the relationship of the liquidation value of Collateral to Indebtedness (including Indebtedness for which a commitment to lend exists) to become satisfactory to Secured Party.

5.    **Verification of Collateral.**

Secured Party shall have the right to verify all or any Collateral in any manner and through any medium Secured Party may consider appropriate, and Debtor agrees to furnish all assistance and information and perform any acts which Secured Party may require in connection therewith and to pay all of Secured Party's costs therefore.

6.    **Notification and Payments.**

Before or after the occurrence of an Event of Default. Secured Party may notify all or any Account Debtors of the Security Interest and may also direct such Account Debtors to make all payments on Collateral to Secured Party. All payments on and from Collateral received by Secured Party directly or from Debtor shall be applied to the Indebtedness in such order and manner and at such time as Secured Party shall, in its sole discretion, determine. Secured Party may demand of Debtor in writing, before or after notification to Account Debtors and without waiving in any manner the Security Interest, that any payments on and from the Collateral received by Debtor: (i) shall be held by Debtor in trust for Secured Party in the same medium in which received; (ii) shall not be commingled with any assets of Debtor; and (iii) shall be delivered to Secured Party in the form received, properly indorsed to permit collection, not later than the next business day following the day of their receipt; and Debtor shall comply with such demand. Debtor shall also promptly notify Secured Party of the return to or repossession br Debtor of Goods underlying any Collateral, and Debtor shall hold the same in trust for Secured Party and shall dispose of the same as Secured Party directs.

7.    **Registered Holder of Collateral.**

If any Collateral consists of investment securities, Debtor authorizes Secured Party to transfer the same or any part thereof into its own name or that of its nominee or that Secured Party or its nominee may appear of record as the sole owner thereof; provided, that so long as no event of default has occurred Secured Party shall deliver promptly to Debtor all notices, statements or other communications received by it or its nominee as such registered owner, and upon demand and receipt of payment of necessary expenses thereof, shall give to Debtor or its designee a proxy or proxies to vote and take all action with respect to such securities. After the occurrence of any event of default, Debtor waives all rights to be advised of or to receive any notices, statements or communications received by Secured Party or its nominee as such record owner, and agrees that no proxy or proxies given by Secured Party to Debtor or its designee as aforesaid shall thereafter be effective.

8.    **Income from and Interest on Collateral Consisting of Instruments.**

(a)    Until the occurrence of an event of default, Debtor reserves the right to receive all income from or interest on the Collateral consisting of Instruments, and if Secured Party receives any such income or interest prior to such event of default, Secured Party shall pay the same promptly to debtor.

(b)    Upon the occurrence of an event of default, Debtor will not demand or receive any income from or interest on such Collateral, and if Debtor receives any such income or interest without any demand by it, same shall be held by Debtor in trust for Secured Party in the same medium in which received, shall not be commingled with any assets of Debtor and shall be delivered to Secured Party in the form received, properly indorsed to permit collection, not later than the next business day following the day of its receipt. Secured Party may apply the net cash receipts from such income or interest to payment of any of the Indebtedness, provided that Secured Party shall account for and pay over to debtor any such income or interest remaining after payment in full of the Indebtedness.

9.    **Increases, Profits, Payments or Distributions.**

(a)    Whether or not an event of default has occurred, Debtor authorizes Secured Party: (i) to receive any increase in or profits on the Collateral (including, without limitation, any stock issued as a result of any stock split or dividend, any capital distribution and the like), and to hold the same as part of the Collateral; and (ii) to receive any payment or distribution on the Collateral upon redemption by, or dissolution and liquidation of, the issuer, to surrender such Collateral or any part thereof in exchange therefor and to hold the net cash receipts from any such payment or distribution as part of the Collateral.

(b)    If Debtor receives any such increase, profits, payments or distributions, Debtor will receive and deliver same promptly to Secured Party on the same terms and conditions set forth in paragraph 8(b) hereof respecting income or interest, to be held by Secured Party as part of the Collateral.

10.    **Event of Default.**

(a)    Any of the following events or conditions shall constitute an event of default hereunder: (i) nonpayment when due, whether by acceleration or otherwise, of principal of any interest on any Indebtedness, or default by Debtor in the performance of any obligation, term or condition of this Security Agreement or any other agreement between Debtor and Secured Party; (ii) death or judicial declaration of incompetency of Debtor, if an individual; (iii) the filing by or against Debtor of a request or petition for liquidation, reorganization, arrangement, adjustment of debts, adjudication as a bankrupt,

relief as a debtor or other relief under the bankruptcy, insolvency or similar laws of the United States or any state or territory thereof or any foreign jurisdiction, now or hereafter in effect; (iv) the making of general assignment by Debtor for the benefit of creditors; the appointment of a receiver or trustee for Debtor or for any assets of Debtor, including, without limitation, the appointment of or taking possession by a "custodian", as defined in the federal Bankruptcy Code; the making of any, or sending notice of any intended, bulk sale; or the institution by or against Debtor of any other type of insolvency proceeding (under the federal Bankruptcy Code or otherwise) or of any formal or informal proceeding for the dissolution or liquidation of, settlement of claims against or winding up of affairs of, Debtor; (v) the sale, assignment, transfer or delivery of all or substantially all of the assets of Debtor; the cessation by Debtor as a going business concern; the entry of judgment against Debtor, other than a judgment for which Debtor is fully insured, if ten days thereafter such judgment is not satisfied, vacated, bonded or stayed pending appeal; or if Debtor is generally not paying Debtor's debts as such debts become due; (vi) the occurrence of any event described in paragraph 10(a) (ii), (iii), (iv) or (v) hereof with respect to any endorser, guarantor or any other party liable for, or whose assets or any interest therein secures, payment of any Indebtedness (Third Party), or the occurrence of any such event with respect to any general partner of Debtor, if Debtor is a partnership; (vii) if any certificate, statement, representation, warranty or audit heretofore or hereafter furnished by or on behalf of Debtor or any third Party, pursuant to or in connection with this Security Agreement , or otherwise (including, without limitation, representations and warranties contained herein) , or as an inducement to Secured Party to extend any credit to or to enter into this or any other agreement with Debtor, proves to have been false in any material respect at the time as of which the facts therein set forth were stated or certified, or to have omitted any substantial contingent or unliquidated liability or claim against Debtor or any such Third Party; or, if upon the date of execution of this Security Agreement, there shall have been any materially adverse change in any of the facts disclosed by any such certificate, statement, representation, warranty or audit, which change shall not have been disclosed in writing to Secured Party at or prior to the time of such execution; (viii) nonpayment by Debtor when due of any indebtedness for borrowed money owing to any third party, or the occurrence of any event which could result in acceleration of payment of any such indebtedness; or (ix) the reorganization, merger or consolidation of Debtor (or the making of any agreement therefor) without the prior written consent of Secured Party.

(b)    Secured Party , at its sole election, may declare all or any part of any Indebtedness not payable on demand to be immediately due and payable without demand or notice of any kind upon the happening of any event default (other than an event of default under either paragraph 10(a)(iii) or (iv) hereof), or if Secured Party in good faith believes that the prospect of payment of all or any part of the Indebtedness or performance of Debtor's obligations under this Security Agreement or any other agreement now or hereafter in effect between Debtor and Secured Party is impaired. All or any part of any Indebtedness not payable on demand shall be immediately due and payable without demand or notice of any kind upon the happening of one or more events of default under paragraph 10 (a)(iii) or (iv) hereof. The provisions of this paragraph are not intended in any way to affect any rights of Secured Party with respect to any Indebtedness which may now or hereafter be payable on demand.

(c)    Secured Party's rights and remedies with respect to the Collateral shall be those of a Secured Party under the Uniform commercial Code and under any other applicable law, as the same may from time to time be in effect, in addition to those rights granted herein and in any other agreement now or hereafter in effect between Debtor and Secured Party. Upon the existence or occurrence of an event of default, Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place or places designated by Secured Party, and Secured Party may use and operate the Collateral.

(d)    Without in any way requiring notice to be given in the following time and manner, Debtor agrees that any notice by Secured Party of sale, disposition or other intended action hereunder or in connection herewith, whether required by the Uniform Commercial Code or otherwise, shall constitute reasonable notice to Debtor if such notice is mailed by regular or certified mail, postage prepaid, at least five (5) days prior to such action, to either of Debtor's addresses specified above or to any other address which Debtor has specified in writing to Secured Party as the address to which notices hereunder shall be given to Debtor.

(e)    Debtor agrees to pay on demand all costs and expenses incurred by Secured Party in enforcing this Security Agreement, in realizing upon or protecting any Collateral and in enforcing and collecting any Indebtedness or any guaranty thereof, including, without limitation, if Secured Party retains counsel for advice, suit, appeal, insolvency or other proceeding under the federal Bankruptcy Code or otherwise, or for any of the above purpose, the actual attorneys' fees incurred by Secured Party. Payment of all sums hereunder is secured by the Collateral.

11.    **Miscellaneous**.

(a)    Debtor hereby authorizes Secured Party, at Debtor's expense, to file such financing statement or statements relating to the Collateral without Debtor's signature thereon as Secured Party at its option may deem appropriate, and appoints Secured Party as Debtor's attorney-in-fact (without requiring Secured Party) to execute any such financing statement or statements in Debtor's name and to perform all other acts which Secured Party deems appropriate to perfect and continue the Security Interest and to protect preserve and realize upon the Collateral. This power of attorney shall not be affected by the subsequent disability or incompetence of Debtor.

(b)    Secured Party may demand, collect and sue on any of the Accounts. Chattel Paper, Instruments and General Intangibles (in either Debtor's or Secured party's name at the latter's option); may enforce, compromise, settle or discharge such Collateral without discharging the Indebtedness or any part thereof; and may indorse Debtor's name on any and all checks, commercial paper, and any other Instruments pertaining to or constituting Collateral.

(c)    (i) As further security for payment of the Indebtedness, Debtor hereby grants to Secured Party a Security Interest in and lien on any and all property of Debtor which is or may hereafter be in the possession or control of Secured Party in any capacity or of any third party acting on its behalf including, without limitation, all deposit and other accounts and all moneys owed or to be owed by Secured Party to Debtor, and with respect to all of such property, Secured Party shall have the same rights hereunder as it has with respect to the Collateral; (ii) Without limiting any other right of Secured Party, whenever Secured Party has the right to declare any Indebtedness to be immediately due and payable (whether or not it has so declared). Secured Party at its sole election may set off against the Indebtedness any and all moves then or thereafter owed to Debtor by Secured Party in any capacity, whether or not the Indebtedness or the obligation to pay such moneys owed by Secured Party is then due, and Secured Party shall be deemed to have exercised such right of set off immediately at the time of such election even though any charge therefor is made or entered on Secured Party's record subsequent thereto.

(d)    Upon Debtor's failure to perform any of its duties hereunder, Secured Party may, but shall not be obligated to, perform any or all such duties, including, without limitation, payment of taxes assessments, insurance and other charges and expenses as herein provided, and Debtor shall pay an amount equal to the cost thereof to Secured Party on demand by Secured Party. Payment of all moneys hereunder shall be secured by the Collateral.

(e)     Unless any instrument, document, or agreement evidencing any Indebtedness expressly provides a rate for the accrual of interest after such Indebtedness becomes due, the rate at which interest on such Indebtedness shall accrue after such Indebtedness becomes due, whether by reason of default or otherwise and until such Indebtedness is paid in full, shall be the rate provided in such instrument document, or agreement which is in effect immediately prior to such Indebtedness becoming due.

(f)     No course of dealing between debtor and Secured Party and no delay or omission by Secured Party in exercising any right or remedy hereunder or with respect to any Indebtedness shall operate as a waiver thereof or of any other right or remedy, and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy. Secured Party may remedy any default, by Debtor hereunder or with respect to any Indebtedness in any reasonable manner without waiving the default remedied and without waiving any other prior or subsequent default by Debtor. All rights and remedies of Secured party hereunder are cumulative.

(g)     Secured Party shall have no obligation to take, and Debtor shall have the sole responsibility for taking, any and all steps to preserve rights against any and all prior parties to any Instrument or Chattel Paper constituting Collateral whether or not in Secured Party's possession. Secured Party shall not be responsible to Debtor for loss or damage resulting from Secured Party's failure to enforce or collect any such Collateral or to collect any moneys due to become due thereunder. Debtor waives protest of any Instrument constituting Collateral at any time held by Secured Party on which Debtor is in any way liable and waives notice of any other action taken by Secured party.

(h)     Debtor authorizes Secured Party, without notice or demand and without affecting Debtor's obligations hereunder, from time to time: (i) to exchange, enforce or release any collateral or any part thereof (other than the Collateral) taken from any party for payment of the Indebtedness or any part thereof; (ii) to release, substitute or modify any obligation of any endorser, guarantor or other party in any way obligated to pay the Indebtedness or any part thereof, or any party who has given any security, mortgage or other interest in any other collateral as security for the payment of the Indebtedness of any part thereof; (iii) upon the occurrence of any event of default as hereinabove provided, to direct the order or manner of disposition of the Collateral and any and all other collateral and the enforcement of any and all endorsements, guaranties and other obligations relating to the Indebtedness or any part thereof, as Secured Party, in its sole discretion, may determine; and (iv) to determine how, when and what application of payments and credits, if any, shall be made on the Indebtedness or any part thereof.

(i)     The rights and benefits of Secured Party hereunder shall, if Secured Party so directs, inure to any party acquiring any interest in the indebtedness or any part thereof.

(j)     Secured Party and Debtor as used herein shall include the heirs, executors or administrators, or successors or assigns of those parties.

(k)     If more than one Debtor executes this Secured Agreement, the term "Debtor" shall include

each as well as all of them and their obligations, warranties and representations hereunder shall be joint and several.

(l)     No modification, rescission, waiver, release or amendment of any provision of this Security Agreement shall be made, except by a written agreement subscribed by Debtor and by a duly authorized officer of Secured Party.

(m)     This Security Agreement and the transaction evidenced hereby shall be construed under the laws of New York State, as the same may from time to time be in effect.

(n)     All terms, unless otherwise defined in this Security Agreement, shall have the definitions set forth in the Uniform Commercial Code adopted in New York State, as the same may from time to time be in effect.

(o)     Debtor hereby irrevocably appoints Secured Party the Debtor's agent with full power, in the same manner, to the same extent and with the same effect as if debtor were to do the same: to receive and collect all mail addressed to Debtor; to direct the place of delivery thereof to any location designated by Secured Party; to open such mail; to remove all contents therefrom; to retain all contents thereof constituting or relating to the Collateral; and to perform all other acts which Secured Party deems appropriate to protect, preserve and realize upon the Collateral.    The agency hereby created is unconditional and shall not terminate until all of the Indebtedness is paid in full until all commitments by Secured Party to lend funds to Debtor have expired or been terminated. This power of attorney shall not be affected by the subsequent disability or incompetence of debtor.

(p)     This Security Agreement is and is intended to be a continuing Security Agreement and shall remain in full force and effect until the officer in charge of the Lending Office.  Department or Division of Secured Party indicated above shall actually receive from Debtor written notice of its discontinuance; provided, however, this Security Agreement shall remain in full force and effect thereafter until all of the Indebtedness outstanding, or contracted or committed for (whether or not outstanding), before the receipt of such notice by Secured Party, and extensions or renewals thereof (Whether made before or after receipt of such notice), together with interest accruing thereon after such notice, shall be finally and irrevocably paid in full.  If, after receipt of any payment of all or any part of the Indebtedness, Secured Party is for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible setoff, or a diversion of trust funds, or for any other reason, this Security Agreement shall continue in full force notwithstanding any contrary action which may have been taken by Secured Party in reliance upon such payment, and any such contrary action so taken shall be without prejudice to Secured Party's rights under this Security Agreement and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

(Corporate Seal)

Attest:

DEBTOR:

VERY-TACT INTERNATIONAL, INC.

_____ _Somefff_         By:    _____
SANDY LIANG, Secretary                              WAH WOON TAM, President

## SCHEDULE

1. Other encumbrances, if any (Paragraph 3a, 4a):

2. Other names under which Debtor transacts business (Paragraph 3c):

3. (a) Fixtures affixed to real property (Paragraph 3g):

   (b) Owner of such real property (Paragraph 3g):

   (c) Mortgages on real property (Paragraph 3g):

4. Additional schedules describing Collateral, if any, follow hereafter (Paragraph 1)

Uniform Commercial Code — FINANCING STATEMENT — Form UCC-1

JULIUS BLUMBERG, INC. N. Y. C. 10013

IMPORTANT — Read instructions on back before filling out form

| This FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code. | No. of Additional Sheets Presented: | 3. ☐ The Debtor is a transmitting utility. |
|---|---|---|
| 1. Debtor(s) (Last Name First) and Address(es): Very-Tact International, Inc. 267 Vandervoort Avenue Brooklyn, New York 11211 | 2. Secured Party(ies) Name(s) and Address(es) Cathay Bank, Flushing Office 40-14/16 Main Street Flushing, New York 11354 | 4. For Filing Officer: Date, Time, No. Filing Office |

5. This Financing Statement covers the following types (or items) of property:

See Schedule A attached hereto and made a part hereof.

☐ Products of the Collateral are also covered.

6. Assignee(s) of Secured Party and Address(es)

7. ☐ The described crops are growing or to be grown on:*
☐ The described goods are or are to be affixed to:*
☐ The lumber to be cut or minerals or the like (including oil and gas) is on:*
*(Describe Real Estate Below)

8. Describe Real Estate Here: ☐ This statement is to be indexed in the Real Estate Records:

9. Name of a Record Owner

| No. & Street | Town or City | County | Section | Block | Lot |
|---|---|---|---|---|---|

10. This statement is filed without the debtor's signature to perfect a security interest in collateral  (check appropriate box)
☐ under a security agreement signed by debtor authorizing secured party to file this statement, or
☐ which is proceeds of the original collateral described above in which a security interest was perfected, or
☐ acquired after a change of name, identity or corporate structure of the debtor, or ☐ as to which the filing has lapsed, or already subject to a security interest in another jurisdiction:
☐ when the collateral was brought into the state, or ☐ when the debtor's location was changed to this state.

VERY-TACT INTERNATIONAL, INC.                    CATHAY BANK, FLUSHING OFFICE

By _____                       By _____
Signature(s) of Debtor(s)                            Signature(s) of Secured Party(ies)
WAH WOON TAM, President                           PIN TAI, General Manager
(1) Filing Officer Copy-Numerical
(5/82)                    STANDARD FORM - FORM UCC-1 — Approved by Secretary of State of New York

Uniform Commercial Code — FINANCING STATEMENT — Form UCC-1

JULIUS BLUMBERG, INC. N.Y.C. 10013

**IMPORTANT — Read instructions on back before filing out form**

| This FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code. | No. of Additional Sheets Presented: | 3. ☐ The Debtor is a transmitting utility. |
|---|---|---|

1. Debtor(s) (Last Name First) and Address(es):

Very-Tact International, Inc.
267 Vandervoort Avenue
Brooklyn, New York 11211

2. Secured Party(ies) Name(s) and Address(es)

Cathay Bank, Flushing Office
40-14/16 Main Street
Flushing, New York 11354

4. For Filing Officer: Date, Time, No. Filing Office

5. This Financing Statement covers the following types (or items) of property:

See Schedule A attached hereto and made a part hereof.

6. Assignee(s) of Secured Party and Address(es)

☐ Products of the Collateral are also covered.

7. ☐ The described crops are growing or to be grown on:*
☐ The described goods are or are to be affixed to:*
☐ The lumber to be cut or minerals or the like (including oil and gas) is on:*
*(Describe Real Estate Below)

8. Describe Real Estate Here:    ☐ This statement is to be indexed in the Real Estate Records:

9. Name of a Record Owner

| No. & Street | Town or City | County | Section | Block | Lot |
|---|---|---|---|---|---|

10. This statement is filed without the debtor's signature to perfect a security interest in collateral  (check appropriate box)
☐ under a security agreement signed by debtor authorizing secured party to file this statement, or
☐ which is proceeds of the original collateral described above in which a security interest was perfected, or
☐ acquired after a change of name, identity or corporate structure of the debtor, or  ☐ as to which the filing has lapsed, or
☐ already subject to a security interest in another jurisdiction:
☐ when the collateral was brought into the state, or  ☐ when the debtor's location was changed to this state.

VERY-TACT INTERNATIONAL, INC.                    CATHAY BANK, FLUSHING OFFICE

By _____                       By _____
Signature(s) of Debtor(s)                            Signature(s) of Secured Party(ies)
WAH WOON TAI, President                           PIN TAI, General Manager
(1) Filing Officer Copy-Numerical
(5/82)    STANDARD FORM - FORM UCC-1 — Approved by Secretary of State of New York

## SCHEDULE A

All personal property, machinery, equipment, furniture and fixtures of the Debtor, whether now or hereafter existing or now owned or hereafter acquired and wherever located, of every kind of description, tangible or intangible, including, but not limited to, the balance of every deposit account, now or hereafter existing, of the Debtor with the Secured Party and any other claim of the Debtor against the Secured Party, now or hereafter existing, and all money, accounts receivable, inventory, goods, instruments, securities, documents, chattel paper, other property, rights and interests of the Debtor, and shall include the proceeds, products and accessions of and to any thereof.

DEBTOR:     VERY-TACT INTERNATIONAL, INC.


SECURED PARTY:  CATHAY BANK
                FLUSHING OFFICE

# EXHIBIT N

## GUARANTY OF PAYMENT

THIS GUARANTY, made as of this   *2nd*   day of May, 2005, by **VERY-TACT INTERNATIONAL, INC.,** a New York corporation, having its principal office   at 267 Vandervoort Avenue, Brooklyn, New York 11211 (hereinafter called the "Guarantor") to **CATHAY BANK, NEW YORK REGION,** having its principal office at 40-14 Main Street, Flushing, New York 11354 (hereinafter, together with its successors and assigns hereunder called the "Bank");

### W I T N E S S E T H:

WHEREAS, **UNITED ALUMINUM DOOR INC.,** a New York corporation, having its principal office at 267 Vandervoort Avenue, Brooklyn, New York 11211 (the "Borrower") is indebted to the Bank for a revolving credit facility in the aggregate principal sum of **THREE MILLION FIVE HUNDRED THOUSAND and 00/100 ($3,500,000.00) DOLLARS** (the "Credit Facility") pursuant to the Credit Agreement dated September 15, 2000, between the Borrower and the Bank, which was subsequently modified from time to time  (as the same may be further amended, extended,  supplemented or otherwise modified from time to time, the "Credit Agreement"), which Credit Facility is  evidenced by the Amended and Restated Revolving Note, May        , 2005 , made by the Borrower to the Bank in the principal sum of $3,500,000.00 (the "Note"), a copy of which is attached hereto and made a part hereof; and

WHEREAS, the Bank is willing to make the Credit Facility to the Borrower only if the Guarantor executes and delivers this Guaranty to the Bank of the Debt (as herein defined) in the manner hereinafter provided.

NOW, THEREFORE, in consideration of good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce the Bank to make the Credit Facility to the Borrower, the Guarantor hereby guarantees, absolutely and unconditionally, to the Bank the prompt and complete payment of the Debt and covenants and agrees with the Bank as follows:

The term "Debt" as used in this Guaranty shall mean all principal, interest, additional interest and other sums of any nature whatsoever which may or shall become due and payable pursuant to the provisions of the Note, the Credit Agreement or any other document now or hereafter executed and delivered in connection therewith.

The term "Principal Balance" as used in this Guaranty, shall mean the aggregate outstanding principal balance of the Note from time to time.

The Guarantor agrees that no portion of any sums applied, from time to time, in reduction of the outstanding Principal Balance shall be deemed to have been applied in reduction of the obligations and the liabilities of the Guarantor until such time as the earlier to occur of (a) the date upon which the entire Debt has been paid in full or (b) the date upon which all of the obligations and liabilities of the Guarantor hereunder have been fully performed and discharged by the Guarantor

1

in accordance with the provisions of this Guaranty.

The Guarantor agrees that, with or without notice or demand, the Guarantor will reimburse the Bank, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by the Bank in connection with the collection from the Guarantor in accordance with the provisions of this Guaranty of the Debt or any portion thereof.

The Guarantor hereby consents that from time to time, before or after any default by the Borrower, with or without further notice to or assent from the Guarantor, any security at any time held by or available to the Bank for any obligation of the Borrower, or any security at any time held by or available to the Bank for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Debt, may be exchanged, surrendered or released and any obligation of the Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and the Bank may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of the Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to the Borrower, and generally deal with the Borrower or any such security or other person or guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

In addition to its rights and interests as hereinabove set forth, the Bank, at its option, may at any time and from time to time, with or without notice to the Guarantor, appropriate and apply to the payment or reduction in whole or in part of the Debt, on and after the Expiration Date (as set forth in the Credit Agreement), and all moneys, securities, commercial paper, certificates of deposit, stocks, bonds, notes or other assets or security in any form whatsoever now or hereafter on deposit with or otherwise held by the Bank to the credit of or belonging to the Guarantor (hereinafter referred to as the "Collateral"), it being understood and agreed that the Bank shall not be obligated to assert or enforce any rights or the security interest hereunder or to take any action in reference thereto. Any cash held by the Bank as collateral and all cash proceeds received by the Bank in respect of interest or other distributions from, payment of, collection from, sale or exchange of, or other realization upon, all or any part of the Collateral may, in the discretion of the Bank, continue to be held by the Bank as part of the Collateral or may then and/or at any time thereafter, be applied in whole or in part by the Bank in payment of the Debt, in such order as the Bank shall desire. The Bank, in its discretion, at any time and from time to time, may release or relinquish its rights, remedies or the security interest hereunder as to any particular item of the Collateral without thereby affecting or invalidating its rights, remedies and security interest hereunder as to any other item of the Collateral.

All monies available to the Bank for application in payment or reduction of the Debt may be applied by the Bank in such manner and in such amounts and at such time or times and in such order and priority as the Bank may see fit to the payment or reduction of such portion of the Debt as the Bank may elect.

2

The Guarantor hereby waives (a) notice of acceptance of this Guaranty and of the making of the Credit Facility by the Bank to the Borrower; (b) presentment and demand for payment of the Debt or any portion thereof; (c) protest and notice of dishonor or default to the Guarantor or to any other person or party with respect to the Debt or any portion thereof; and (d) all other notices to which the Guarantor might otherwise be entitled.

This is a guaranty of payment and not of collection and the Guarantor further waives any right to require that any action be brought against the Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of the Bank in favor of the Borrower or any other person or party.

Each reference herein to the Bank shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to the Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the Guarantor, all of whom shall mean the "Guarantor or either of them".

No delay on the part of the Bank in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the Guarantor shall be deemed to be a waiver of the obligation of the Guarantor or of the right of the Bank to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which given.

Notwithstanding any payments made by the Guarantor pursuant to the provisions of this Guaranty, the Guarantor shall have no right of subrogation in and to the Credit Agreement, the Note or any other security held by or available to the Bank for the Debt or the payment thereof until all sums due to the Bank pursuant to the Credit Agreement and the Note have been paid in full to the Bank.

This is a continuing guaranty and shall remain in full force and effect (even though from time to time no Debt may be outstanding) until written notice of its termination signed by the Guarantor shall have been delivered to the Bank, but such termination shall in no way release, modify, or affect the liability of the Guarantor hereunder as to any and all Debts existing at the time such notice shall have been received by the Bank and as to such renewals and extensions of such then existing Debt or any parts thereof as the Bank may thereafter pursuant to the provisions hereof from time to time (and as often as the Bank may desire) in its sole discretion elect to grant to the Borrower, and as to such Debt and such renewals and extensions all of the provisions of this Guaranty shall be as operative and effective as if such notice of termination had never been given.

This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The Guarantor agrees to submit to

3

personal jurisdiction in the City and State of New York in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the Guarantor hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the Guarantor in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Guarantor by registered mail to or by personal service at the last known addresses of the Guarantor, whether such addresses be within or without the jurisdiction of any such court.

The Guarantor hereby irrevocably submits to the non-exclusive jurisdiction of the Federal and State courts in the City and State of New York. Nothing herein shall affect the right of the Bank to bring any action or proceeding against the Guarantor in the courts of any other jurisdiction in which it has assets or a place of business or in any other courts of competent jurisdiction.

**The Guarantor hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Guaranty or the transactions contemplated hereby in which the Bank shall be an adverse party, and the Guarantor, in addition, waives the right to interpose any defense based upon any statute of limitations or any claim of laches and any set-off or counterclaim of any nature or description in any such litigation.**

The Guarantor shall submit to the Bank, as soon as practicable, but in any event within **15 days** after filing of each year, the signed copy of the most currently filed income tax return prepared by an independent certified public account.

**IN WITNESS WHEREOF**, this Guaranty of Payment has been duly executed as of the day and year first above written.

(Corporate Seal)

Attest:

_____

SANDY LIANG, Secretary

GUARANTOR:

VERY-TACT INTERNATIONAL, INC.

By: _____

WAYNE TAM,   President

4

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF   QUEENS         )

On the *2nd* day of May in the year 2005,   before me, the undersigned, personally came WAYNE TAM, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

SEE YUN CHAN
Notary Public - State of New York  Notary Public
No. 01CH6100642
Qualified in Queens County
My Commission Expires Oct. 28, 20 07

# EXHIBIT O

{00339189.DOC;1}

# CERTIFIED CORPORATE RESOLUTION

## OF

## VERY-TACT INTERNATIONAL, INC.

The undersigned, Secretary of **VERY-TACT INTERNATIONAL, INC.** (the "Corporation"), **DOES HEREBY CERTIFY THAT:**

1.      At a meeting of the Board of Directors of the above mentioned Corporation, duly called and held on the      2nd      day of May, 2005  at which a quorum was present and acting throughout, the Board of Directors unanimously adopted the following resolution, which has not been modified or rescinded and is in full force and effect on the date of this Certificate:

"**RESOLVED,** that the Corporation execute and deliver to Cathay Bank, New York Region  (the "Bank")  the  joint and several unconditional continuing Guaranty of Payment (the "Guaranty") to guaranty the payment and performance of all the obligations under the  revolving credit facility in the principal amount  of $3,500,000.00 (the "Credit Facility") to be extended  by the Bank to United Aluminum Door Inc., a New York corporation (the "Borrower"); that the Guaranty be in such form and contain such terms, provisions, conditions, stipulations and agreements as the officer of the Corporation executing the same may deem proper and advisable; and that Wayne Tam, President of the Corporation, be and he hereby is, authorized, empowered and directed to perform all acts and do all things  on behalf of the Corporation and  to execute, attested by the Secretary, Sandy Liang, and deliver the Guaranty and such other instruments or documents as he may deem proper, necessary or advisable to consummate the transactions contemplated by the Credit Facility, and to affix the seal of the Corporation thereto."

2.      Neither the Certificate of Incorporation of the Corporation nor its By-laws contain any special requirement as to the number of directors required to pass such resolution.

3.      The Certificate of Incorporation of the Corporation does not require any vote or consent of shareholders to authorize the execution of the Guaranty.

4.      The undersigned further certifies that the following persons are the shareholders of the Corporation:

| Name | Percentage of Shares |
|------|----------------------|
| Wah Woon Tam a/k/a Wayne Tam | 50.67% |
| Sandy Liang | 34.67% |

1

Jen-Hao Mao                                    14.66%

5.     The undersigned further certifies that the following persons are officers of the Corporation referred to in the foregoing resolution with the capacity set opposite their names, and that the signatures set opposite such names are their signatures:

| Name | Office | Signature |
|------|--------|-----------|
| Wayne Tam | President | |
| Sandy Liang | Secretary | |

6.     This Certificate is made and delivered in order to induce the Bank to accept the Guaranty and continuously extend the Credit Facility referred to in the foregoing resolution to the Borrower.

**IN WITNESS WHEREOF**, the undersigned has hereto affixed her hand and the seal of the Corporation this    2nd   day of May, 2005.

(Corporate Seal)



UNITED ALUMINUM DOOR INC.
Corporate
1987
NEW YORK

SANDY LIANG,   Secretary

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF QUEENS       )

On the   2nd   day of May in the year 2005 before me, the undersigned, personally appeared SANDY LIANG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

SEE YUN CHAN
Notary Public - State of New York
No. 01CH6100642
Qualified in Queens County
My Commission Expires Oct. 20, 2007

Notary Public

2