Philip T. Simpson (PS-9707)
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
1345 Avenue of the Americas
New York, New York 10105-0143
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CATHAY BANK,                                                :
                                                            :  Civil Action No.
                              Plaintiff,                    :
                                                            :
     -against-                                              :
                                                            :
UNITED ALUMINUM DOOR INC., VERY-TACT                        :
INTERNATIONAL, INC., ARCHIVISIONS, INC.,                    :
WAH WOON TAM a/k/a WAYNE TAM, JEN-                          :
HAO MAO, SANDY LIANG, KUO WIN LIU,                          :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
TO COMPEL DEFENDANTS UNITED ALUMINUM DOOR INC.,
VERY-TACT INTERNATIONAL, INC. AND ARCHIVISIONS, INC.
TO DELIVER COLLATERAL TO PLAINTIFF, FOR A
PRELIMINARY INJUNCTION AND FOR OTHER RELIEF**

Philip T. Simpson (PS-9707)
Robinson Brog Leinwand Greene
   Genovese & Gluck P.C.
1345 Avenue of the Americas
New York, New York 10105
**Attorneys for Plaintiff**

{00294189.DOC;2}

## Preliminary Statement

Pursuant to a modified business loan agreement and promissory note ("Modified Credit Agreement"), defendant, United Aluminum Door Inc. ("Borrower") and the Guarantors (the other named defendants) owe plaintiff, Cathay Bank, (the "Bank") the sum of $2,675,914.32 through May 23, 2007, exclusive of costs, attorney fees, and interest accruing thereafter. As security for the Modified Credit Agreement, Borrower and the Guarantors signed commercial security agreements pledging as collateral certain of Borrower's and the Guarantors' property (the "Property") including, without limitation, inventory, bank accounts and accounts receivable. Borrower and the Guarantors have defaulted on the Modified Credit Agreement by, inter alia, failing to pay the Bank all sums due on or before December 31, 2006—the loan's maturity date as extended by a Forbearance Agreement executed in March, 2006.

The Modified Credit Agreement clearly provides that, in the event of default, plaintiff shall have all the rights of a secured party under the Uniform Commercial Code and may require Borrower and the Guarantors to deliver to the Bank the Property and any and all certificates of title and other documents related to the Property. In addition, defendants Very-Tact International, Inc. and Archivisions, Inc. entered into General Security Agreements with plaintiff which are attached to the Order to Show Cause and referenced in the Declaration of Michael Creith. Thus, under the Uniform Commercial Code and guarantees executed by the parties, plaintiff is clearly entitled to take possession of collateral.

This Court should grant plaintiff's application to compel defendants to deliver the Property to plaintiff. This Court should also issue an order of attachment, sequestration, and

1

{00294189.DOC;2}

garnishment of the Property, and enjoin and restrain defendants from selling, transferring, assigning, pledging, or otherwise disposing of the Property during the pendency of this litigation.

### Factual Background

The facts are set forth in the accompanying Declaration of Michael Creith ("Creith Decl.") and are specifically incorporated herein. All defined terms used herein shall have the same meaning ascribed to them in the Creith Decl.

### Argument

**I. THE SECURITY AGREEMENTS AND THE UCC PERMIT THE BANK TO TAKE IMMEDIATE POSSESSION OF THE PROPERTY UPON BORROWER'S AND GUARANTORS' DEFAULT.**

The Court should immediately be aware that Borrower and the Guarantors have defaulted on the Modified Credit and Forbearance Agreements and owe the Bank approximately $2,675,914.32 through May 23, 2007. Borrower and the Guarantors have no defense to the Bank's claim. Further, Borrower and the corporate Guarantors have pledged the Property as collateral for the Modified Credit Agreement. Pursuant to the Security Agreements, plaintiff's

> rights and remedies with respect to the Collateral shall be those of a Secured Party under the Uniform Commercial Code and under any other applicable law. . .. Upon the existence or occurrence of an event of default, Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place or places designated by Secured Party, and Secured Party may use and operate the Collateral.

Additionally, plaintiff may

> declare all or any part of any Indebtedness not payable on demand to be immediately due and payable without demand or notice of any kind upon the happening of any event of default.

Pursuant to New York U.C.C. § 9-609, after default, a secured party:

2

{00294189.DOC;2}

      1.      may take possession of the Collateral; and

      2.      without removal, may render equipment unusable and dispose of Collateral on a Debtor's premises under 9-610.

By reason of the Security Agreements and the Uniform Commercial Code, plaintiff has the absolute right to take immediate possession of the Property. Borrower and the Guarantors owe plaintiff $2,675,914.32 through May 23, 2007, exclusive or costs, attorney fees and interest accruing thereafter, and plaintiff's possession of the Property is required to secure plaintiff in the event defendants do not or cannot pay the outstanding balance. This Court should grant plaintiff's application to compel defendants to deliver the Property to plaintiff.

This Court should also issue an order of attachment, sequestration and garnishment.[1] Pursuant to CPLR § 6201 et seq. and Rule 64 of the Federal Rules of Civil Procedure, this Court can enter an order of attachment when (1) there is a probability that final judgment will be rendered in favor of plaintiff; (2) there are statutory grounds for the issuance of the writ; and (3) there is real or personal property of defendants at a specific location within this state which is subject to attachment.

In the present case, given the clear liability of Borrower and the Guarantors under the Modified Credit Agreement and Guaranties, judgment will be rendered in favor of plaintiff. Further, as stated above, the UCC provides a statutory basis for the issuance of the writ. Finally, as set forth in the Creith Decl., Borrower has property located in New York State at 267

---

[1] An order of garnishment is necessary because some of the Property (for example, bank accounts) is in the possession of third-parties.

Vandervoort Avenue, Brooklyn, New York. This Court should issue a writ of attachment against the Property in the amount of $2,800,000.00.[2]

## II. DEFENDANTS SHOULD BE ENJOINED AND RESTRAINED FROM TRANSFERRING, SELLING, ASSIGNING OR OTHERWISE DISPOSING OF ANY OF THE PROPERTY.

Pending the hearing and determination of plaintiff's Order to Show Cause, this Court should issue a temporary restraining order restraining and enjoining defendants from transferring, selling, assigning, pledging or otherwise disposing of the Property. A temporary restraining order is necessary to preserve the status quo until such time as the parties can be heard on the Order to Show Cause.

In addition, after said hearing, a preliminary injunction should be granted restraining and enjoining defendants from transferring, selling, assigning, pledging or otherwise disposing of the Property because, until such time as all of the Property is in plaintiff's possession, there is a real and substantial likelihood that the Property, or portions of it, will be disposed of by defendants. Borrower and the Guarantors owe plaintiff approximately $2,675,914.32 through May 23, 2007, and the Property was specifically pledged to secure this debt to plaintiff.

In order to obtain an injunction, the party seeking the injunction must show irreparable harm if the injunction is not granted and either (1) a likelihood of success on the merits or (2) the existence of serious questions going to the merits of its claim and a balance of hardships tipping decidedly in its favor. See, Conn. Dept. of Envt. Prot. v. Occupational Safety and Health Admin., 356 F.3d 226, 230 (2d Cir. 2004).

---

[2] This amount is appropriate since interest continues to accrue on the outstanding balance and Borrower is liable to the Bank for its attorney fees and other costs of collection.

In the present case, the loan documents and the accompanying declaration of Michael Creith, Vice President of Cathay Bank, demonstrate that defendants owe the Bank approximately $2,675,914.32 through May 23, 2007. Defendants have defaulted on the Modified Credit Agreement and have no defense to the Bank's claim. In light of same, the Bank has more than a reasonable probability that it will succeed on the merits. Further, the Bank will suffer irreparable harm if the injunction is not granted. The Security Agreements grant the Bank the right to take immediate possession of the Property after default. If defendants are not enjoined, some or all of the Property will be lost, as will the Bank's security. Moreover, the injunction will not result in greater harm to Borrower and the corporate Guarantors. Borrower has no right to possess the Property after its default. By agreement and under the UCC, that right belongs to the Bank. Defendants have failed to pay the Bank $2,675,914.32 through May 23, 2007 and have withheld the Property from the Bank. Finally, there is no strong public interest militating against an injunction. To the contrary, there is a strong public policy of enforcing contracts between commercial parties and ensuring that lending institutions and banks are not left without a remedy.

For the foregoing reasons, pending a hearing and determination on the Order to Show Cause, this Court should issue a temporary restraining order, and, after said hearing, should issue a preliminary injunction enjoining and restraining defendants from transferring, selling, assigning, pledging or otherwise disposing of the Property.

### III. THIS COURT SHOULD GRANT THE BANK AN IMMEDIATE INSPECTION OF THE PROPERTY WHEREVER IT IS LOCATED AND PERMISSION TO CONDUCT EXAMINATIONS OF DEFENDANTS.

Pursuant to the Security Agreements, the Bank has a right to inspect the Property. This Court should enforce the clear terms of the Security Agreements and grant the Bank an immediate inspection of the Property.

This Court should also grant the Bank immediate depositions of defendants. In order to ascertain the existence, identity and location of the Property, plaintiff needs to depose defendants immediately. Among the Property are Borrower's and corporate Guarantors' inventory and accounts receivables, as well as their bank accounts. Without deposing defendants, the Bank will not be able to identify or locate the Property and enforce its rights under the Security Agreements.

### Conclusion

For the foregoing reasons, this Court should grant plaintiff a temporary restraining order pending the hearing and determination of the Order to Show Cause and, after said hearing, grant plaintiff an order (i) compelling defendants to deliver the Property to plaintiff; (ii) attaching seizing, and garnishing the Property; (iii) preliminarily enjoining defendants from transferring, selling, assigning, pledging or otherwise disposing of the Property, (iv) permitting plaintiff to inspect the Property and to depose defendants, and grant plaintiff such other and further relief as this Court deems just, proper and equitable.

{00294189.DOC;2}

Dated:  May 25, 2007

                    Respectfully submitted,

                    ROBINSON BROG LEINWAND GREENE
                      GENOVESE & GLUCK P.C.
                    Attorney for Plaintiff

By: /s/ Philip T. Simpson
                    Philip T. Simpson, Esq. (PS-9707)

7

{00294189.DOC;2}