Philip T. Simpson (PS-9707)
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
1345 Avenue of the Americas
New York, New York 10105-0143
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CATHAY BANK,

                    Plaintiff,

   -against-

UNITED ALUMINUM DOOR INC., VERY-TACT
INTERNATIONAL, INC., ARCHIVISIONS, INC.,
WAH WOON TAM a/k/a WAYNE TAM, JEN-
HAO MAO, SANDY LIANG, KUO WIN LIU,

                    Defendants.
------------------------------------------------------------X

Civil Action No. 07CV4152 (DC) (MHD)

ECF CASE

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF APPLICATION
TO COMPEL DEFENDANTS UNITED ALUMINUM DOOR INC.,
VERY-TACT INTERNATIONAL, INC. AND ARCHIVISIONS, INC.
TO DELIVER COLLATERAL TO PLAINTIFF, FOR A
PRELIMINARY INJUNCTION AND FOR OTHER RELIEF**

                                          **Philip T. Simpson (PS-9707)
                                          Robinson Brog Leinwand Greene
                                            Genovese & Gluck P.C.
                                          1345 Avenue of the Americas
                                          New York, New York 10105
                                          Attorneys for Plaintiff**

**Preliminary Statement**

Plaintiff Cathay Bank submits this Reply Memorandum of Law in response to Defendants United Aluminum Door Inc., Very-Tact International, Inc. and Archivisions, Inc.'s ("the Corporate Defendants") Opposition to Plaintiff's application to compel the Corporate Defendants to deliver collateral to Plaintiff (the "Property"1), for a preliminary injunction and for other relief.2

This Court signed Plaintiff's proposed Order temporarily restraining the Corporate Defendants and their agents from, *inter alia*, selling, transferring or otherwise disposing of any of the Property other than in the ordinary course of business pending the hearing of Plaintiff's motion, scheduled for June 15th at 3:30 p.m.

The Corporate Defendants have submitted papers in Opposition to Plaintiff's motion asserting but one defense to Plaintiff's application. That defense can best be summarized as follows: Despite United Aluminum's professed financial stability, and admitted multiple defaults on its Loan Agreement3 with Plaintiff, this Court should deny Plaintiff's application to take possession of the Property because it might put the Corporate Defendants out of business. According to Sandy Liang, a United Aluminum executive and officer, Plaintiff's application for a preliminary injunction should be denied for the same reason: "Freezing" the Corporate Defendants' accounts and taking possession of their equipment and inventory might force them to close their doors.

Regardless of the fact that the Corporate Defendants pledged the Property on a Loan Agreement that they do not contest, and that the Corporate Defendants do not deny their default,

---

1 All defined terms are to be given the meaning afforded thereto in Plaintiff's moving papers.
2 The facts of this matter are fully set forth in the moving Declaration of Michael Creith and will not be repeated herein except as needed.
3 The term "Loan Agreement" will be used to describe the totality of loan and guarantee documents described in Plaintiff's Complaint and in the moving Declaration of Michael Creith.

2

Defendants have been given multiple opportunities to avoid the harsher remedies available to Plaintiff. As fully set forth in the moving Creith Declaration, Plaintiff has foregone foreclosure on multiple occasions, at considerable cost, only to have each good faith effort met with yet another default.

Despite repeated demands, United Aluminum's professed financial stability (See, Liang Aff., at ¶¶ 6-8), and multiple opportunities to cure its default, United Aluminum has failed to make payment. Through May 23, 2007, United Aluminum owes Plaintiff principal and interest totaling $2,443,848.18, plus legal, accounting and collection fees of $232,066.14, for a total of $2,675,914.32.

Under the terms of the General Security Agreements executed by the Corporate Defendants, in the event of default under the Loan Agreement, Plaintiff is expressly afforded the rights and remedies of a Secured Party under the Uniform Commercial Code and may require the Corporate Defendants to assemble any collateral—in this case, the Property—and make it available to Plaintiff at a place of its choosing. See, Exhibits E, M & P, to EXHIBIT 1 to the Creith Declaration, at ¶ 10(c).

Defendant having defaulted multiple times, Plaintiff has no choice but to seek possession of the Corporate Defendants' assets. This is no more than Plaintiff is entitled to under the terms of the Loan Agreement and under the Uniform Commercial Code.

Finally, contrary to United Aluminum's claim to be a profitable going concern, the Corporate Defendants—who are related entities—are in all likelihood unable to pay the outstanding balance. Plaintiff will in fact be irreparably harmed if its application for an Order preliminarily enjoining the Corporate Defendants from dissipating assets is not granted. Plaintiff's right to the collateral is a bargained for aspect of the Loan Agreement and attendant

Security Agreements. Without an Order preserving Plaintiff's ability to enforce that right, Plaintiff may very well be left with no viable remedy for Defendants' defaults.

Moreover, it appears that United Aluminum's president, Wayne Tam, attempted to have his personal mortgage payment made with United Aluminum funds *after this Court's TRO was issued*. See, E-Mail and Debit Instruction attached hereto as EXHIBIT A. A preliminary injunction preventing Corporate Defendants from dissipating assets pending a determination of the parties' rights must be Ordered.

As such, Plaintiff respectfully requests an Order preliminarily enjoining Defendants from dissipating assets as per the terms of the TRO; compelling the immediately deposition of the Corporate Defendants by Wayne Tam, and any other party Plaintiff deems necessary; allowing Plaintiff's representatives access to the Corporate Defendants' places of business to inspect the Property and Defendants' books and records; and leave to timely return to Court once discovery is completed to seek an Order compelling Defendants to deliver specific Property to Plaintiff.

## PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

This Court should extend the TRO it has imposed upon Defendants and preliminarily enjoin them from transferring, selling, assigning, pledging or otherwise disposing of the Property other than in the ordinary course of business. As stated, just this week an executive of United Aluminum may have attempted to dissipate company assets, and until all of the Property is in Plaintiff's possession, there is a real and substantial likelihood that the Property, or portions of it, will be disposed of by Defendants.

As noted in Plaintiff's moving Memorandum of Law, to obtain a preliminary injunction, a party must show that it will be irreparably harmed if relief is not granted and either (1) a likelihood of success on the merits or (2) the existence of serious questions going to the merits of its claim and a balance of hardships tipping decidedly in its favor. See, Conn. Dept. of Envt. Prot. v. Occupational Safety and Health Admin., 356 F.3d 226, 230 (2d Cir. 2004).

Contrary to the Corporate Defendants' implicit contention, Plaintiff need not show that its inability to collect Defendants' debt would threaten its financial existence or force it out of business. See, Augat, Inc. v. John Mezzalingua Assoc., 642 F. Supp. 506, 508-09 (N.D.N.Y. 1986) (on application for preliminary injunction, defendants argument that plaintiff will not suffer irreparable harm because plaintiff will continue to enjoy "large sales" if application denied was unavailing). Plaintiff merely must show that it will be financially harmed to some extent if its application is denied. See, id.

Plaintiff will in fact be irreparably harmed if no injunction is issued. Defendants' history of nonpayment without excuse makes it more than likely that the Corporate Defendants are unable to pay their debt to Plaintiff, and Plaintiff's only remedy will be to seize and sell the Property. Plaintiff's entitlement to collect the Property—collateral for United Aluminum's debts—is a bargained for aspect of the loan agreements. If the Corporate Defendants are not prevented from dissipating assets pending 1) Plaintiff's ability to discover and collect the Property; or 2) a final determination of the parties' rights, Plaintiff likely has no viable remedy. That is, an award of money damages to Plaintiff is likely to be inadequate, and Plaintiff will be irreparably harmed if Defendants are not prevented from dissipating assets. Computerland Corp. v. Batac, Inc., 1988 U.S. dist. LEXIS 14079 (S.D.N.Y. 1988) (granting, *inter alia*, preliminary injunction where "plaintiff [would] be irreparably harmed if it [could not] exercise its rights

under the [s]ecurity [a]greement to insect the collateral and to insure that the collateral is not disposed of in a way that would prevent an ultimate money judgment."); see also, Pahaian v. Eccelston Properties, Ltd., 88 F.3d 77, 87 (2d Cir. 1996); The Republic of the Philippines v. Marcos, 806 F.2d 344, 356 (2d Cir. 1986) ("preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible");

Moreover, the Corporate Defendants, including the Borrower, have in no way contested their default or liability for approximately $2,675,914.32 through May 23, 2007. Defendants have no defense to Plaintiff's claim. Plaintiff's success on the merits is virtually assured, and the Property—which Plaintiff is entitled to take immediate possession of—was specifically pledged to secure Defendants' debt to Plaintiff.

The Corporate Defendants claim that they will be forced out of business if enjoined and Plaintiff is allowed to collect collateral valued in an amount equal to the Defendants' debt to Plaintiff. Yet Corporate Defendant also state that they are a profitable, going concern, and that they had total revenue of $19 million in contracts last years and $9.2 million so far this year. See, Liang Aff., at ¶¶ 6-8  Defendants have made no showing of their inability to pay their debt to Plaintiff or that collecting collateral of approximate equal value to the outstanding debt—$2,675,914.32—will put them out of business.

Finally, there is no strong public interest militating against an injunction under the present circumstances. To the contrary, the Corporate Defendants do not contest their default, and there is a strong public policy of enforcing contracts between commercial parties and ensuring that lending institutions and banks are not left without a remedy.

Plaintiff has demonstrated that 1) it will be irreparably harmed if Defendants are not enjoined; 2) that it is virtually assured success on the merits; and 3) that the Property was

specifically pledged to secure a debt the Corporate Defendants admit they owe. The balance of the equities falls in Plaintiff's favor, and its application for a preliminary injunction should be granted.

## PLAINTIFF IS ENTITLED TO TAKE POSSESSION OF THE COLLATERAL

By the General Security Agreements, the Corporate Defendants granted Plaintiff a security interest in all of the Property: all of Corporate Defendants' personal property, machinery, equipment, furniture and fixtures, deposit accounts with Plaintiff, money, accounts receivable, inventory, goods, instruments, securities, documents, chattel paper, and other property, rights and interests. See, Exhibits E, M and P to EXHIBIT 1 to the Creith Declaration.

The Loan Agreement and General Security Agreements clearly provide that, in the event of default, Plaintiff shall have all the rights of a Secured Party under the Uniform Commercial Code and may require United Aluminum and the other Corporate Defendants to deliver to the Bank the Property and any and all certificates of title and other documents related to the Property. Id. at ¶ 10(c). 4 The Corporate Defendants have not contested or raised a single defense to their default and liability under the Loan Agreement.

---

4 Specifically, pursuant to the Security Agreements, Plaintiff's:

> rights and remedies with respect to the Collateral shall be those of a Secured Party under the Uniform Commercial Code and under any other applicable law. . ... Upon the existence or occurrence of an event of default, Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place or places designated by Secured Party, and Secured Party may use and operate the Collateral.4

See, Exhibits E, M & P, to EXHIBIT 1 to the Creith Declaration, at ¶ 10(c).

Additionally, Plaintiff may:

> declare all or any part of any Indebtedness not payable on demand to be

Under UCC section 9-609, after default, a Secured Party:

1. may take possession of the Collateral; and

2. without removal, may render equipment unusable and dispose of Collateral on a Debtor's premises under 9-610.

Pursuant thereto, Plaintiff may be granted an Order requiring the Corporate Defendants to immediately to turn over all of the Property to Plaintiff. Fleet National Bank v. B & E Ventures Ltd., 2005 N.Y. Misc. LEXIS 3510, *9-10 (Sup. Ct., Nassau Co., Nov. 1, 2005) (Ordering defendants to turn over all collateral to plaintiff pursuant to UCC 9-609(a)(1) on prima facie showing of failure to make payment on promissory note and guarantees).

The Corporate Defendants' sole defense to Plaintiff's right to compel delivery of the Property under UCC section 9-609 and the Loan Agreement is that Plaintiff has sent letters to account debtors of United Aluminum informing them that any monies due United Aluminum should be paid directly to Plaintiff.

Plaintiff has done nothing more than it is entitled to do under the terms of the Loan Agreement and the provisions of the UCC. After default, UCC section 9-607 expressly gives Plaintiff—a Secured Party under the terms of United Aluminum's loan—the right to:

> [N]otify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party.

See, N.Y. UCC § 9-607(a)(1).

Contrary to the Corporate Defendants' contentions, Plaintiff is not required to seek Court permission prior to notifying United Aluminum's account debtors that Plaintiff is the party to whom payment should be made.

---

immediately due and payable without demand or notice of any kind upon the happening of any event of default.

Id., at ¶ 10(b).

Defendants simply have no defense to Plaintiff's right to take possession of the Property and take any and all steps necessary to secure the application thereof to the Defendants' debts. Borrower and the Guarantors owe plaintiff $2,675,914.32 through May 23, 2007, exclusive or costs, attorney fees and interest accruing thereafter, and plaintiff's possession of the Property is required to secure Plaintiff in the event Defendants do not or cannot pay the outstanding balance.

### PLAINTIFF SHOULD BE ALLOWED TO INSPECT THE PROPERTY AND DEFENDANTS' BOOKS AND RECORDS, AND IMMEDIATELY DEPOSE THE CORPORATE DEFENDANTS BY WAYNE TAM

The Security Agreements provide that Plaintiff has the right to inspect the Corporate Defendants' Property and books and records. See, Exhibits E, M and P to EXHIBIT 1 to the Creith Declaration, at ¶ 4(b). In order for Plaintiff to ascertain the nature and location of all Property, this Court should grant the Bank leave to immediately depose the Defendants by Wayne Tam, president of the Corporate Defendants, and, should Mr. Tam not have full information, by any other Defendant or agent of a Defendant that Plaintiff deems necessary. Computerland Corp., 1988 U.S. Dist. LEXIS 14079, at *17 (granting expedited discovery regarding collateral and books and records of debtor and guarantors). Among the Property are Borrower's and corporate Guarantors' inventory and accounts receivables as well as their bank accounts. Without deposing Defendants, the Bank will not be able to identify or locate the Property and enforce its rights under the Loan and Security Agreements.

Plaintiff further requests that this Court Order Defendants to immediately provide Plaintiff with information showing the current locations of all collateral and the names and addresses of all purchasers, assignees and transferees of the collateral; and the names and

addresses of all account debtors of the Corporate Defendants; and information showing all accounts receivable of the Corporate Defendants. Id.

This Court should further grant Plaintiff leave to enter Defendants' places of business unimpeded to inspect the Property there located and to examine Defendants' books and records, as per Plaintiff's rights under the Security Agreements. See, Exhibits E, M and P to EXHIBIT 1 to the Creith Declaration, at ¶ 4(b).

Once the Property has been identified, unless the parties have reached an agreement with respect thereto, Plaintiff will return to Court to seek an Order compelling Defendants to turn over all Property to Plaintiff, as is Plaintiff's right under the Loan Agreement and UCC.

### Conclusion

For the foregoing reasons, this Court should grant Plaintiff's request for a preliminary injunction as per the terms of the TRO; permit Plaintiff to inspect the Property and depose Defendants by Wayne Tam, and if Mr. Tam does not have full information, to depose any other Defendant or agent of a Defendant that Plaintiff deems necessary; grant Plaintiff leave to return to Court once discovery is completed to seek an Order compelling Defendants to turn over all Property to Plaintiff; and granting such other and further relief as to this Court seems just, proper and equitable.

Dated: June 14, 2007

Respectfully submitted,

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
Attorneys for Plaintiff

By: /s/ Philip T. Simpson
Philip T. Simpson, Esq. (PS-9707)